Michael W. De Vries (S.B.N. 211001)
michael.devries@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

Adam R. Alper (S.B.N. 196834)
adam.alper@kirkland.com
Akshay S. Deoras (S.B.N. 301962, *pro hac to be filed*)
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Gianni Cutri (*pro hac to be filed*)
gianni.cutri@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

*Attorneys for Plaintiffs Omnitracs, LLC and XRS Corporation*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC AND XRS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> PLATFORM SCIENCE, INC., <br><br> Defendant. | CASE NO. **'20 CV0958 WQH MDD** <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> DEMAND FOR JURY TRIAL |

**COMPLAINT**

1.     Plaintiffs Omnitracs, LLC ("Omnitracs") and XRS Corporation ("XRS") (collectively, "Plaintiffs") are leading providers of fleet management solutions to transportation and logistics companies. They provide a variety of innovative hardware and software solutions, including: safety and compliance, vehicle routing, dispatch and navigation, and efficiency and data analytics.  For over three decades, Plaintiffs have invested hundreds of millions of dollars in real-time, customizable technologies that have transformed the fleet management and telematics industries.

2.     Plaintiffs' novel technologies have become critical to the transportation industry, helping customers maintain regulatory compliance, manage fleet activity, run more safely, and reduce the overall cost of operating a trucking fleet.  Plaintiffs' substantial investments of resources and time have culminated in the granting of nearly 200 patents to Plaintiffs.

3.     In 2014, almost thirty years after Omnitracs' first satellite mobile communications system revolutionized the fleet management and telematics industry, Omnitracs' then-President Jack Kennedy left the company and soon thereafter founded Defendant Platform Science, Inc. ("Platform Science" or "Defendant"), where he now serves as CEO.  In addition to Mr. Kennedy, much of Platform Science's leadership consists of former employees and senior managers of Plaintiffs.  For example, Michael Bray, the Chief Commercial Officer of Platform Science, is the former Partner Programs & Market Intelligence Director at Omnitracs.  Michael Baker, a Vice President of Customer Success at Platform Science, was a Senior Manager, Customer Experience at Omnitracs.

4.     Platform Science likewise has hired numerous technical employees from Plaintiffs.  For example, Allen Kenworthy, a Senior Support Engineer at Platform Science, is a former Technical Support Specialist at Omnitracs.  Debbie Sylvester, a Senior Technical Training Specialist at Platform Science, is a former Staff Business Process Analyst and Staff Technical Training Specialist at Omnitracs.  Shannon Monroe, a Support Specialist at Platform Science, is a former Technical Support Analyst at Omnitracs.

5.     Platform Science offers fleet management, safety, and compliance software applications and in-vehicle telematics hardware to capture vehicle data and driver activity information.  Rather than design and develop its own services and technologies to provide legitimate competition to Plaintiffs, however, Platform Science took shortcuts and used the innovative technologies designed, developed, and patented by Plaintiffs.  Platform Science copied Plaintiffs' products and patented technology by leveraging the knowledge of former Omnitracs employees.  It did so despite full knowledge of Plaintiffs' broad suite of patented technologies, and with full knowledge of the patents asserted by Omnitracs and XRS in this Complaint.

6.     As a result of Platform Science's continuing and willful conduct, Plaintiffs now find themselves competing for the same customers against the very technologies they invented and patented.

7.     Plaintiffs bring this lawsuit to protect their intellectual property investments and to hold Platform Science accountable for its willful infringement.  Platform Science's actions have caused harm to Plaintiffs, as alleged below, by incorporating Plaintiffs' patented technologies into Platform Science's products.  Platform Science's actions also significantly harm innovation and undermine the intent of the U.S. patent laws.  If Platform Science's improper copying and use of Plaintiffs' technologies allows it to avoid what is needed to develop new products, other companies will be encouraged to simply copy others' proprietary technologies rather than hire engineers, invest in innovation, and develop new technologies organically.  Plaintiffs therefore need injunctive relief to stop Platform Science's improper infringement of Plaintiffs' lawful patent rights.

## NATURE OF THE CASE

8.     Plaintiffs bring claims under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for the willful infringement of the following seven United States patents: U.S. Patent Nos. 9,262,934 (the "'934 patent"); 7,043,365 (the "'365 patent"); 8,626,568 (the "'568 patent"); 10,255,575 (the "'575 patent"); 6,925,308 (the "'308

patent"); 7,725,216 (the "'216 patent"); and 9,147,335 (the "'335 patent") (collectively, the "Patents-in-Suit").

## PARTIES

9.      Omnitracs is a Delaware limited liability company with its principal place of business at 717 North Harwood Street, Suite 1300, Dallas, Texas 75201.

10.     XRS is a Minnesota corporation and a wholly owned subsidiary of Omnitracs, and also maintains its principal place of business at 717 North Harwood Street, Suite 1300, Dallas, Texas 75201.

11.     Defendant Platform Science is a Delaware corporation with its principal place of business at 4225 Executive Square, Suite 1400, La Jolla, CA 92037.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

13.     The Court has personal jurisdiction over Platform Science because Platform Science maintains its principal place of business in this District at 4225 Executive Square, Suite 1400, La Jolla, CA 92037, and from that location conducts and/or directs the acts accused of infringement in this action.  Moreover, Platform Science conducts business in this District by making, shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and services in both the State of California and in this District.  Platform Science has, either directly or through intermediaries, purposefully and voluntarily placed one or more of its infringing products and/or services into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District.  For example, Platform Science has sold infringing products to Velocity Truck Rental & Leasing ("VTRL") at VTRL's place of business located at 6066 Miramar Road, San Diego, CA 92121.  (Platform Science Customer Spotlight, https://www.platformscience.com/vtrl (last visited May 1, 2020), attached                    as                **Ex.            8**;                VTRL                     Locations,

https://www.velocitytruckrentalandleasing.com/ourlocations/ (last visited May 1, 2020), attached as **Ex. 9**.)

14.   Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Platform Science regularly conducts business within this District, has a regular and established place of business in this District, and has committed acts of infringement within this District.  Platform Science's regular and established place of business in this District is located at 4225 Executive Square, Suite 1400, La Jolla, CA 92037.  That office consists of over 70 employees that are employed by Platform Science and whom are working on hardware and/or software that infringe one or more of the Patents-in-Suit.

## BACKGROUND

### Omnitracs and XRS

15.   For more than 30 years, Omnitracs has been a global pioneer of fleet management solutions for transportation and logistics companies.  It provides innovative fleet management solutions, including integrated systems, software-as-a-service (SaaS) applications, and analytics platforms designed for commercial trucking fleets.

16.   XRS is a wholly-owned subsidiary of Omnitracs and is also a leader in fleet management solutions for transportation and logistics companies.  It provides smartphone- and tablet-based solutions that enable trucking companies to manage their fleets, comply with regulations, and reduce operating costs.

17.   Plaintiffs are leading innovators of fleet management, compliance, and safety systems.  Their advanced technology services include solutions for regulatory compliance, safety compliance, GPS fleet tracking, route planning, and fleet communication that enable customers to solve common fleet problems and achieve their business objectives in a cost-effective manner.  Today, Plaintiffs deliver advanced technology services to more than 11,000 customers operating in approximately one million trucks and other transportation assets in more than 70 countries, including throughout the United States.  This technology includes, for example, hardware installed directly into fleet vehicles to track vehicle performance and location data and driver activity information.  Plaintiffs' customizable

4

software applications leverage that data and information to offer customers, such as fleet managers (and their drivers), a host of logistical planning tools. Plaintiffs' technology further includes unique solutions integrating hardware such as smartphones, tablets, and ruggedized handheld devices with electronic logging devices and applications. This enables carriers to use a suite of sophisticated, intuitive, fleet optimization tools in a portable device.

<div align="center">Platform Science</div>

18.    Platform Science was founded in 2015 by its current CEO, Jack Kennedy. Mr. Kennedy was a President at Omnitracs until he left the company in 2014.

19.    In addition to Mr. Kennedy, much of Platform Science's leadership is made up of former employees and senior managers of Plaintiffs. As discussed above, Michael Bray, the Chief Commercial Officer of Platform Science, is a former Partner Programs & Market Intelligence Director at Omnitracs. Michael Baker, a Vice President of Customer Success at Platform Science, was a Senior Manager, Customer Experience at Omnitracs.

20.    Similarly, Platform Science hired technical employees from Plaintiffs. Allen Kenworthy, a Senior Support Engineer at Platform Science, is a former Technical Support Specialist at Omnitracs. Debbie Sylvester, a Senior Technical Training Specialist at Platform Science, is a former Staff Business Process Analyst and Staff Technical Training Specialist at Omnitracs. Shannon Monroe, a Support Specialist at Platform Science, is a former Technical Support Analyst at Omnitracs.

21.    Platform Science directly competes with both Omnitracs and XRS.

22.    Platform Science offers fleet management and compliance solutions, sometimes referred to by Platform Science as its "Connected Vehicle Platform," to the trucking and logistics industries through the use of technology that captures vehicle data

and driver information.  (*See* figure below, Platform Science, Day in the Life of a Driver, https://www.youtube.com/watch?v=haXZ_L-wlAM (last visited April 21, 2020)).



23.     Platform Science uses that data and information to provide fleet managers and drivers various reports on the status of vehicles and drivers.  Platform Science, through its CEO and former Omnitracs President Mr. Kennedy, as well as the numerous former Omnitracs employees hired by Platform Science, had knowledge of and was aware of the Patents-in-Suit since as early as the company was founded and began operation, and on information and belief had knowledge of its infringement of the Patents-in-Suit during its development of the infringing products.

## THE PATENTS-IN-SUIT

### The '934 Patent

24.     On February 16, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '934 patent, entitled "Commercial Transportation Information Presentation Techniques."  XRS owns all rights, title, and interest in and to the '934 patent, and possess all rights of recovery under the '934 patent.  A true and accurate copy of the '934 patent is attached hereto as **Ex. 1**.

25.     The '934 patent is valid and enforceable.

<div align="center">The '365 Patent</div>

26.     On May 9, 2006, the USPTO duly and legally issued the '365 patent, entitled "System for Local Monitoring."  XRS owns all rights, title, and interest in and to the '365 patent, and possess all rights of recovery under the '365 patent.  A true and accurate copy of the '365 patent is attached hereto as **Ex. 2**.

27.     The '365 patent is valid and enforceable.

<div align="center">The '568 Patent</div>

28.     On January 7, 2014, the USPTO duly and legally issued the '568 patent, entitled "Fleet Vehicle Management Systems and Methods."  XRS owns all rights, title, and interest in and to the '568 patent, and possess all rights of recovery under the '568 patent.  A true and accurate copy of the '568 patent is attached hereto as **Ex. 3**.

29.     The '568 patent is valid and enforceable.

<div align="center">The '575 Patent</div>

30.     On April 9, 2019, the USPTO duly and legally issued the '575 patent, entitled "Fleet Vehicle Management Systems and Methods."  XRS owns all rights, title, and interest in and to the '575 patent, and possess all rights of recovery under the '575 patent.  A true and accurate copy of the '575 patent is attached hereto as **Ex. 4**.

31.     The '575 patent is valid and enforceable.

<div align="center">The '308 Patent</div>

32.     On August 2, 2005, the USPTO duly and legally issued the '308 patent, entitled "Auto-Fill Message Fields in a Communication Terminal."  Omnitracs owns all rights, title, and interest in and to the '308 patent, and possess all rights of recovery under the '308 patent.  A true and accurate copy of the '308 patent is attached hereto as **Ex. 5**.

33.     The '308 patent is valid and enforceable.

<div align="center">The '216 Patent</div>

34.     On May 25, 2010, the USPTO duly and legally issued the '216 patent, entitled "Critical Event Reporting."  Omnitracs owns all rights, title, and interest in and to the '216

patent, and possess all rights of recovery under the '216 patent.  A true and accurate copy of the '216 patent is attached hereto as **Ex. 6**.

35.     The '216 patent is valid and enforceable.

<u>The '335 Patent</u>

36.     On September 29, 2015, the USPTO duly and legally issued the '335 patent, entitled "System and Method for Generating Real-Time Alert Notifications in an Asset Tracking System."  Omnitracs owns all rights, title, and interest in and to the '335 patent, and possess all rights of recovery under the.  A true and accurate copy of the '335 patent is attached hereto as **Ex. 7**.

37.     The '335 patent is valid and enforceable.

## **ACCUSED PRODUCTS**

38.     The accused products in this case include, but are not limited to, Platform Science's Connected Vehicle Platform, Platform Science Express, and Platform Science Enterprise and the associated hardware and/or software (collectively, the "Accused Products").

## **FIRST CAUSE OF ACTION**

### **Infringement of the '934 Patent by Platform Science**

39.     Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1-38 above as though fully set forth herein.

40.     Platform Science's products and/or services that infringe the '934 patent include, but are not limited to, the Accused Products and use thereof.

41.     Platform Science makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States.

42.     Platform Science directly infringes—literally and/or under the doctrine of equivalents—at least claim 1 of the '934 patent by making, using, selling, offering for sale, and/or importing into the United States its Accused Products and components thereof.

43.     For example, claim 1 of the '934 patent recites:

1. A portable wireless data transfer and display device comprising:

a user interface;

a display;

a processor; and

a short-range wireless communication module configured to wirelessly receive vehicle data, in real-time, from a data acquisition device mounted inside a vehicle when in close proximity to the data acquisition device, the portable wireless data transfer and display device being associated with a driver of the vehicle, wherein the data acquisition device is in communication with an engine control module of the vehicle and automatically adapts to a detected type of communication protocol employed by the engine control module,

wherein the portable wireless data transfer and display device is configured to receive an input of driver information and driver communications from the driver via the user interface,

wherein the portable wireless data transfer and display device is configured to communicate, in real-time, the driver communications to a remote network device via a long-range wireless network,

wherein the portable wireless data transfer and display device is configured to process into a trip schedule at least one of: the vehicle data, the driver information, and the driver communications via the processor, and

wherein the portable wireless data transfer and display device is further configured to present the trip schedule and the driver communications to the driver via the display.

44.    The Accused Products practice each limitation of claim 1 of the '934 patent.

45.    To the extent the preamble is construed to be limiting, Platform Science's Connected Vehicle Platform includes a "portable wireless data transfer and display device" (*see, e.g.*, Platform Science Connected Vehicle Platform, *available at* https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex. 10**):



46.    The Accused Products include "a user interface [e.g., the In-Vehicle Display/Tablet touch screen]," as required by claim 1 of the '934 patent.  Platform Science apps allow the user (e.g., driver), via the In-Vehicle Display/Tablet user interface, to input information and select various on-screen options.

47.    The Accused Products include "a display [e.g., the In-Vehicle Display/Tablet display]," as required by claim 1 of the '934 patent.

48.    The Accused Products include "a processor," as required by claim 1 of the '934 patent.  The Platform Science In-Vehicle Display/Tablet is an "Android Tablet," which has a processor.  This component is depicted in the image below (Platform Science, Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):



49.    The Accused Products include "a short-range wireless communication module [e.g., the Wi-Fi and Bluetooth transceivers in the In-Vehicle Display/Tablet] configured to wirelessly receive vehicle data [e.g., vehicle position], in real-time, from a data acquisition device mounted inside a vehicle [e.g., the Connected Vehicle Device ("CVD")] when in close proximity to the data acquisition device, the portable wireless data transfer and display device being associated with a driver of the vehicle," as required by claim 1 of the '934 patent.

50.    The In-Vehicle Display/Tablet is configured to wirelessly receive vehicle data from the CVD when in close proximity (e.g., the automatic pairing zone is 330 feet for Wi-Fi and 115 feet for Bluetooth), as depicted in the images below (Platform Science, Connected Vehicle Platform, https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex. 10**):



CONNECTED VEHICLE DEVICE

Turn your vehicle into an IoT hub with the connected vehicle device. All devices on the vehicle can be unified on a single data plan and can communicate with each other via the device Wi-Fi/BT/IO connectivity. Also provides optional camera support.

- Provides 4G connectivity to the vehicle and mobile devices
- Supports dual mode Wi-Fi to receive, store, process or transmit large data volumes
- Connects to vehicle bus and supports edge computing to allow real-time monitoring of critical events and key performance metrics

51. The Connected Vehicle Device is mounted inside the vehicle, as depicted in the image below (Platform Science, Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):

52. The In-Vehicle Display/Tablet is associated with a driver of the vehicle as, for example, depicted in the image below (Platform Science, Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):



53.     The Platform Science Connected Vehicle Platform comprises a "data acquisition device [e.g., CVD]" that "is in communication with an engine control module of the vehicle," as required by claim 1 of the '934 patent.

54.     The CVD "automatically adapts to a detected type of communication protocol employed by the engine control module," as required by claim 1 of the '934 patent.  For example, the CVD is part of Platform Science's "[o]ut-of-the-box solution" that allows it to communicate with different vehicles (Platform Science, Connected Vehicle Platform,

https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex. 10**):



**PLATFORM SCIENCE EXPRESS**

Out-of-the-box solution that offers core telematics
functionality; includes applications for Compliance, Safety and
Productivity

55.    The CVD communicates with the engine control module using a vehicle bus cable and adapter to connect with the vehicle diagnostic port.   The CVD detects combination and/or signal levels implemented over the data bus via the the vehicle bus adapter connected to the engine control module, and analyzes incoming data traffic and/or queries the engine control module in order to determine the protocol used by the engine control module.

56.    The Connected Vehicle Platform's "portable wireless data transfer and display device is configured to accept inputs of driver information [e.g., driver ID, login information, duty status] and driver communications [e.g., instant messages to a fleet manager] from a user via the user interface," as required by claim 1 of the '934 patent. This is depicted in the images below (*see* Day in the Life of a Driver Video, *supra*):

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21





22    57.    The Connected Vehicle Platform's "portable wireless data transfer and

23  display device is configured to communicate, in real-time, the driver communications to a

24  remote network device via a long-range wireless network," as required by claim 1 of the

25  '934 patent.  For example, the In-Vehicle Display/Tablet is configured to communicate,

26  via the All-In-One Antenna, instant messages to a fleet manager network device via a 4G

27

28

LTE network, as depicted in the images below (*see* Day in the Life of a Driver Video, *supra*):







58. The Connected Vehicle Platform's "portable wireless data transfer and display device is configured to process into a trip schedule at least … the vehicle data [e.g., vehicle location] via the processor," as required by claim 1 of the '934 patent. For example,

the In-Vehicle Display/Tablet will process into a trip schedule a vehicle's current location to generate an estimated time of arrival (ETA) at a destination, a trip route, and a trip map, as depicted in the images below (*see* Day in the Life of a Driver Video, *supra*):





59.     The Connected Vehicle Platform's "wireless data transfer and display device is further configured to present the trip schedule and the driver communications to the driver via the display," as required by claim 1 of the '934 patent.

60.     For example, the In-Vehicle Display/Tablet can present the trip schedule on its display, as depicted in the image below (*see* Day in the Life of a Driver Video, *supra*):



61.     The In-Vehicle Display/Tablet can also present the driver communications on its display, as depicted in the image below (*see* Day in the Life of a Driver Video, *supra*):

62.     Each claim in the '934 patent recites an independent invention.  Neither claim 1, described above, nor any other individual claim is representative of all claims in the '934 patent.

21

63.     Platform Science was aware of the '934 patent since approximately the date of its issuance on February 16, 2016.  Numerous former employees of Omnitracs who had knowledge of Omnitracs' and XRS's patented technology and patents, including the '934 patent, now work at Platform Science in a wide variety of roles across the company. *See supra*, paragraphs 3-5. These employees were aware of Omnitracs' and XRS's patented technology and patents, including the '934 patent, when Platform Science was developing the Accused Products.

64.     Platform Science has further been aware of the '934 patent since at least the filing date of this Complaint.

65.     Platform Science actively induced and is actively inducing infringement of at least claim 1 of the '934 patent, in violation of 35 U.S.C. § 271(b).

66.     Platform Science's customers and end-users of the Accused Products directly infringe claim 1 of the '934 patent, at least by using the Accused Products, as described above in Paragraphs 42-61.

67.     Platform Science knowingly induces infringement of at least claim 1 of the '934 patent by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

68.     Platform Science instructs customers and end users, at least through its marketing, promotional, and instructional materials, to use the infringing Accused Products, as described in detail above in Paragraphs 42-61.

69.     For example, Platform Science publicly shares a "Quick Installation Guide" to instruct customers on how to install the Accused Products, explaining "[b]efore hitting the road with the PS ELD application, confirm these quick reference steps to ensure your hardware is setup and ready to go" (Platform Science, Enterprise ELD Manual - 2018, *supra*, attached as **Ex. 11**):



70.     Platform Science advertises and instructs third parties on how to use the In-Vehicle Display/Tablet to communicate, via the All-In-One Antenna, instant messages to a fleet manager network device via a 4G LTE network, as depicted in the images below (*see* Day in the Life of a Driver Video, *supra*; Platform Science Connected Vehicle Platform, *available at* https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex. 10**):





71.   Platform Science further advertises and instructs that the In-Vehicle Display/Tablet can be used to process into a trip schedule a vehicle's current location to generate an estimated time of arrival (ETA) at a destination, a trip route, and a trip map, as depicted in the images below (*see* Day in the Life of a Driver Video, *supra*):



72.     Platform Science also posts videos on video-sharing websites, such as YouTube.com, that instruct third parties on how to use the Accused Products. (*See, e.g.*, Day in the Life of a Driver Video, *supra*).  These videos explain, *inter alia*, how drivers can input information and messages via the user interface and send that information, in real-time, to fleet managers.  (*Id.*)

73.     Further, Platform Science markets the Accused Products for third-party customers and installs said Accused Products for those customers with the specific intent to induce infringement.  For example, Platform Science produces "Customer Spotlights" on its YouTube page highlighting infringing uses of the Accused Products by third-party customers, and encouraging additional infringing uses by those customers and other potential customers.  (*See* Platform Science Customer Spotlight: Velocity Truck Rental and Leasing, https://www.youtube.com/watch?v=yyPSw8vNdac (last visited April 21, 2020)).

74.     In addition to marketing the Accused Products for use in an infringing manner, Platform Science also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.  For example, Platform Science provides an installation program with an "intuitive, step-by-step wizard" that enables use of the Accused Products in an infringing manner, as depicted in the image below (Platform Science, Fleet Management Apps,  https://www.platformscience.com/application-suite  (last visited April 21, 2020), attached as **Ex. 12**):



75.     Further, Platform Science invites customers to "[c]ontact us today to configure your suite of platform, 3rd party and internal applications," and explains that "[w]e're committed to customer success that extends to all aspects of the customer journey

with Platform Science," and offers to "work together" with customers (*id.*; Platform Science, Contact Us, https://www.platformscience.com/contact-us (last visited April 21, 2020), attached as **Ex. 13**):

**PLANNING FUTURE TECHNOLOGY FOR YOUR FLEET?**
Contact us today to configure your suite of platform, 3rd party and internal applications today.

CONTACT US

## Contact Us

We're committed to customer success that extends to all aspects of the customer journey with Platform Science. And, we are passionate about the transportation industry, to work with customers and partners in bringing innovations to the industry. **Connect with us here and let us know how we can work together.**

76.     Platform Science has sales and technical support staff that assist Platform Science's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

77.     Platform Science provides its customers and end users with additional instructions that direct the customers and end users to use the Accused Products in an infringing manner.   Such instructions include, for example, data sheets, technical specifications, customer support services, product sheets, and technical support services.

78.     Platform Science contributed and is contributing to infringement of at least claim 1 of the '934 patent, in violation of 35 U.S.C. § 271(c).

79.     Platform Science's customers and end-users of the Accused Products directly infringe claim 1 of the '934 patent, at least by using the Accused Products, as described in detail above in Paragraphs 42-61.

80.     Platform Science contributes to infringement of the '934 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including, for example, the In-Vehicle Display/Tablet and associated software applications and firmware, the CVD, and the All-In-One Antenna.  Such components are substantial, material parts of the claimed inventions of the '934 patent and have no substantial non-infringing use.

81.     The In-Vehicle Display/Tablet and associated software applications and firmware supplied by Platform Science, the CVD, and the All-In-One Antenna, are especially made and especially adapted for use in infringing the '934 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

82.     Platform Science's infringement of the '934 patent is without license or other authorization.

83.     Because Platform Science had knowledge of the '934 patent and proceeded to knowingly directly and indirectly infringe, Platform Science's infringement has been and continues to be willful.

84.     Platform Science's continued infringement of the '934 patent has damaged and will continue to damage Plaintiffs.

85.     Unless and until enjoined by this Court, Platform Science will continue to directly infringe as well as induce and contribute to infringement of the '934 patent. Platform Science's infringing acts are causing and will continue to cause at least Plaintiffs irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

86.     This case is exceptional, entitling Plaintiffs to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## SECOND CAUSE OF ACTION

### Infringement of the '365 Patent by Platform Science

87.     Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1-86 above as though fully set forth herein.

88.   Platform Science's products and/or services that infringe the '365 patent include, but are not limited to, the Accused Products and use thereof.

89.   Platform Science makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States.

90.   Platform Science directly infringes—literally and/or under the doctrine of equivalents—at least claim 1 of the '365 patent, at least by using its Accused Products and components thereof in the United States.

91.   For example, claim 1 of the '365 patent recites:

1. A method of monitoring, comprising:

receiving position information related to a notification point;

determining a position of a mobile client by said mobile client;

comparing said position with an area encompassing said notification point;

transmitting a message in response to said position being within said area encompassing said notification point; and

setting a state of an entrance flag by said client to a value representing that said entrance flag is set in response to said position being within said area encompassing said notification point.

92.   Platform Science, at least by using the Accused Products, performs each step of claim 1.

93.   To the extent the preamble is construed to be limiting, Platform Science, at least by using the Accused Products, performs the requirements of the preamble.  For example, the Platform Science Connected Vehicle Platform helps "[m]onitor assets and drivers with real-time communication, two-way messaging, and location tracking," as depicted in the image below (Platform Science Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):





**COMMUNICATION & TELEMATICS**

Monitor assets and drivers with real-time communication, two-way messaging, and location tracking.

· Driver messaging/chat

· Asset tracking

· Vehicle disable

**CERTIFIED ELD**

Comply with regulatory mandates for electronic logs, driver hours, state time tracking, and fuel tax.

· Activity & State time tracking

· IFTA state tax reporting

· Contextual UDT management

**DRIVER SAFETY & PERFORMANCE**

Proactively manage driver safety and performance with real-time driver behavior monitoring.

· Critical event reporting

· Driver performance monitoring

· Collision mitigation

94.    Platform Science, at least when using its Connected Vehicle Platform, performs the step of "receiving position information related to a notification point," as required by claim 1 of the '365 patent.  For example, the In-Vehicle Display/Tablet receives position information related to a notification point, such as a trip destination.  A driver can preview a trip destination in the Platform Science workflow application.  This is depicted in the images below (MarketWaves18 Demo: Platform Science, https://youtu.be/VP2Y3mEzbyI (last visited April 21, 2020)):





95.     Platform Science, at least when using its Connected Vehicle Platform, performs the step of "determining a position of a mobile client by said mobile client," as required by claim 1 of the '365 patent.  For example, the CVD determines a position of the

1   mobile client using a GPS (global positioning system), as shown in the image below

2   (Platform                Science                Connected                Vehicle                Platform,

3   https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex.**

4   **10**):



CONNECTED VEHICLE DEVICE

Turn your vehicle into an IoT hub with the connected vehicle device. All devices on the vehicle can be unified on a single data plan and can communicate with each other via the device Wi-Fi/BT/IO connectivity. Also provides optional camera support.

· Provides 4G connectivity to the vehicle and mobile devices

· Supports dual mode Wi-Fi to receive, store, process or transmit large data volumes

· Connects to vehicle bus and supports edge computing to allow real-time monitoring of critical events and key performance metrics

96.    The position of the mobile client determined by the CVD is displayed on the In-Vehicle Display/Tablet, as depicted in the images below (MarketWaves18 Demo: Platform Science, https://youtu.be/VP2Y3mEzbyI (last visited April 21, 2020)):



33



97.    Platform Science, at least when using its Connected Vehicle Platform, performs the step of "comparing said position with an area encompassing said notification point," as required by claim 1 of the '365 patent.   For example, Platform Science's Connected Vehicle Platform compares the mobile client's position with an area encompassing the trip destination in order to determine remaining trip time, miles remaining, and ETA (estimated time of arrival).   This is depicted in the image below (MarketWaves18 Demo: Platform Science, *available at* https://youtu.be/VP2Y3mEzbyI (last visited April 21, 2020)):



98.   Further, for example, the Connected Vehicle Platform compares the mobile client's position with an area encompassing a destination so that, if the mobile client is sufficiently close to the trip destination, the navigation application prepares a trip summary which is displayed on the In-Vehicle Tablet/Display, as shown in the image below

(Platform Science, Day in the Life of a Driver, *available at* https://www.youtube.com/watch?v=haXZ_L-wlAM (last visited April 21, 2020)):



99.     Platform Science, at least when using its Connected Vehicle Platform, performs the step of "transmitting a message in response to said position being within said area encompassing said notification point."   For example, the Connected Vehicle Platform's navigation application prepares a trip summary which is displayed to the driver and transmitted in a message (e.g., to a fleet manager) in response to the mobile client's position being within a certain area encompassing the trip destination, shown below (*id.*; Platform Science Customer Spotlight: Velocity Truck Rental and Leasing, *available at* https://youtu.be/yyPSw8vNdac (last visited April 21, 2020)):





100.   Platform Science, at least when using its Connected Vehicle Platform, performs the step of "setting a state of an entrance flag by said client to a value representing that said entrance flag is set in response to said position being within said area encompassing said notification point," as required by claim 1 of the '365 patent.   For example, the Connected Vehicle Platform sets a state of an entrance flag by the client to a value representing that the entrance flag is set, and that indicates that the navigation application should prepare a trip summary in response to the mobile client's position being within an area encompassing the destination, as depicted in paragraph 99, *supra*.

101.   Each claim in the '365 patent recites an independent invention.  Neither claim 1, described above, nor any other individual claim is representative of all claims in the '365 patent.

102.   Platform Science was aware of the '365 patent since approximately the date of Platform Science's founding.  Numerous former employees of Omnitracs who had knowledge of Omnitracs's and XRS's patented technology and patents now work at Platform Science in a wide variety of roles across the company. *See supra*, paragraphs 3-5. These employees were aware of Omnitracs's and XRS's patented technology and patents, including the '365 patent, when Platform Science was developing the Accused Products.

103.   Platform Science has further been aware of the '365 patent since at least the filing date of this Complaint.

104.   Platform Science actively induced and is actively inducing others to infringe at least claim 1 of the '365 patent, in violation of 35 U.S.C. § 271(b).

105.   Platform Science's customers and end-users of the Accused Products directly infringe at least claim 1 of the '365 patent, at least by using the Accused Products, as described above in Paragraphs 90-100.

106.   Platform Science knowingly induces infringement of at least claim 1 of the '365 patent by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce

infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

107. Platform Science markets the Accused Products for use in an infringing manner. For example, Platform Science advertises and instructs that the Connected Vehicle Platform's navigation application prepares a trip summary in response to the mobile client's position being within a certain area encompassing the trip destination. This is depicted in the image below (*id.*):



108. Further, Platform Science advertises and instructs that the Accused Products compare the mobile client's position with an area encompassing the trip destination in order to determine remaining trip time, miles remaining, and ETA (estimated time of arrival) (MarketWaves18 Demo: Platform Science, *available at* https://youtu.be/VP2Y3mEzbyI (last visited April 21, 2020)):



109.  Platform Science further instructs customers and end users, at least through its marketing, promotional, and instructional materials, to use the claimed system and perform the claimed methods, as described in detail above in Paragraphs 90-100.

110.  Platform Science also posts videos on video-sharing websites, such as YouTube.com, that show how to use the Accused Products in an infringing manner. (*See, e.g.*, Day in the Life of a Driver Video, *supra*).

111.  Further, Platform Science markets the Accused Products for third-party customers and installs said Accused Products for those customers with the specific intent to induce infringement.  For example, Platform Science produces "Customer Spotlights" on its YouTube page highlighting infringing uses of the Accused Products by third-party customers, and encouraging additional infringing uses by those customers and other potential customers.  (*See* Platform Science Customer Spotlight: Velocity Truck Rental and Leasing, https://www.youtube.com/watch?v=yyPSw8vNdac (last visited April 21, 2020)).

112.    In addition to marketing the Accused Products for use in an infringing manner, Platform Science also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.  For example, Platform Science provides an installation program with an "intuitive, step-by-step wizard" that enables use of the Accused Products in an infringing manner, as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



113. Further, Platform Science invites customers to "[c]ontact us today to configure your suite of platform, 3rd party and internal applications," and explains that "[w]e're committed to customer success that extends to all aspects of the customer journey

41

with Platform Science," and offers to "work together" with customers (*id.*; Platform Science, Contact Us, https://www.platformscience.com/contact-us (last visited April 21, 2020), attached as **Ex. 13**):

**PLANNING FUTURE TECHNOLOGY FOR YOUR FLEET?**

Contact us today to configure your suite of platform, 3rd party and internal applications today.

CONTACT US

## Contact Us

We're committed to customer success that extends to all aspects of the customer journey with Platform Science. And, we are passionate about the transportation industry, to work with customers and partners in bringing innovations to the industry. **Connect with us here and let us know how we can work together.**

114.   Platform Science has sales and technical support staff that assist Platform Science's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

115.   Platform Science provides its customers and end users with additional instructions that direct the customers and end users to use the Accused Products in an infringing manner in the United States.  Such instructions include, for example, data sheets, technical specifications, customer support services, product sheets, and technical support services.

116.   Platform Science actively contributed to and is actively contributing to infringement of at least claim 1 of the '365 patent, in violation of 35 U.S.C. § 271(c).

117.   Platform Science's customers and end-users of the Accused Products directly infringe claim 1 of the '365 patent, at least by using the Accused Products in the manner described above in Paragraphs 90-100.

118.   Platform Science contributes to infringement of the '365 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including the In-Vehicle Display/Tablet and associated software applications and firmware, and the CVD.  Such components are substantial, material parts of performing the inventions claimed in the '365 patent and have no substantial non-infringing use.

119.   The In-Vehicle Display/Tablet, the software applications and firmware supplied by Platform Science with the In-Vehicle Display/Tablet and the CVD are especially made and especially adapted for use in infringing the '365 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

120.   Platform Science markets the Accused Products and one or more components thereof as software and associated hardware which is not intended to and does not enable any substantial non-infringing use, as described in detail above in Paragraphs 90-100. Indeed, the sole intended function of the Accused Products is for use in infringing fleet management applications.

121.   Platform Science's infringement of the '365 patent is without license or other authorization.

122.   Because Platform Science had knowledge of the '365 patent rights and proceeded to knowingly directly and indirectly infringe, Platform Science's infringement has been and continues to be willful.

123.   Platform Science's continued infringement of the '365 patent has damaged and will continue to damage Plaintiffs.

124.   Unless and until enjoined by this Court, Platform Science will continue to directly infringe as well as induce and contribute to infringement of the '365 patent. Platform Science's infringing acts are causing and will continue to cause Plaintiffs

irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

125. This case is exceptional, entitling Plaintiffs to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## THIRD CAUSE OF ACTION

### Infringement of the '568 Patent by Platform Science

126. Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1-125 above as though fully set forth herein.

127. Platform Science's products and/or services that infringe the '568 patent include, but are not limited to, the Accused Products and use thereof.

128. Platform Science makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States.

129. Platform Science directly infringes—literally and/or under the doctrine of equivalents—at least claim 23 of the '568 patent, at least by using its Accused Products and components thereof in the United States.

130. For example, claim 23 of the '568 patent recites:

23. A computer-implemented method for providing a driver summary electronic report, comprising:

wirelessly receiving, at a portable wireless display unit, vehicle usage information from an electronic onboard recorder unit mounted to a vehicle and having a wired connection to the vehicle;

generating a driver summary electronic report at the portable wireless display unit in response to wirelessly receiving the vehicle usage information from the electronic onboard recorder unit mounted to the vehicle, the driver summary electronic report including identification information for a driver and hours of service information for the driver;

storing the driver summary electronic report in a computer-readable memory module of the portable wireless display unit, the portable wireless display unit being

configured to wirelessly communicate with the electronic onboard recorder unit mounted to the vehicle;

receiving user input on the portable wireless display unit indicative of a request to export the driver summary electronic report from the electronic onboard recorder unit mounted to the vehicle; and

wirelessly transferring the driver summary electronic report from the portable wireless display unit to the electronic onboard recorder unit mounted to the vehicle for exporting the driver summary electronic report via a removable data cable to a remote computer device.

131.   Platform Science, at least when using the Accused Products, performs every step of claim 23 of the '568 patent.

132.   To the extent the preamble is construed to be limiting, Platform Science, at least when using its Connected Vehicle Platform, performs a "computer-implemented method for providing a driver summary electronic report." For example, the Connected Vehicle Platform provides a driver's daily log when sending daily logs to driver's email, wireless web services, the FMCSA, or a fleet manager, as depicted in the images below (06 Transfer Logs, https://youtu.be/4Aa4FF5Pz2w (last visited April 21, 2020); Platform Science, Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):

## Email / Wireless Web Services

If requested, the driver can easily email or use wireless web services to send HOS logs.

To wirelessly transfer logs:

1. Within the HOS tab, tap SEND HOS LOGS
2. Choose to either email or use the wireless web service feature
3. Add any comments and allow the DOT officer to add necessary comments
4. Tap SEND LOGS

133. Platform Science, at least when using its Connected Vehicle Platform, performs the step of "wirelessly receiving, at a portable wireless display unit [e.g., the In-Vehicle Display/Tablet], vehicle usage information [e.g., odometer and engine hour readings] from an electronic onboard recorder unit [e.g., CVD] mounted to a vehicle and having a wired connection to the vehicle [e.g., wired connection to the vehicle diagnostic

port],” as required by claim 23 of the ’568 patent. For example, the In-Vehicle Display/Tablet receives odometer and engine hour readings from the CVD via wireless connection to determine “Distance Driven” and “Start-End Engine Hours,” as depicted in the image below (07 How To Present Elogs To DOT Officer During Inspection, https://www.youtube.com/watch?v=xzHGUw75t88 (last visited April 21, 2020)):



134.   The CVD is mounted to a vehicle and has a wired connection to the vehicle via the vehicle diagnostic port, as depicted in the image below (Platform Science Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):

47



135.   The In-Vehicle Display/Tablet displays a red indicator to alert the driver as to whether the In-Vehicle Display/Tablet is receiving data from the vehicle, as depicted in the image below (01 How To Login, https://youtu.be/TvLV-Cs_P9E (last visited April 15, 2020)):



136.    Platform Science, at least when using its Connected Vehicle Platform, performs the step of "generating a driver summary electronic report at the portable wireless display unit in response to wirelessly receiving the vehicle usage information from the electronic onboard recorder unit mounted to the vehicle, the driver summary electronic report including identification information for a driver and hours of service information for the driver," as required by claim 23 of the '568 patent.

137.    The Connected Vehicle Platform generates a driver's daily log at the In-Vehicle Display/Tablet in response to wirelessly receiving vehicle usage information from the CVD mounted to the vehicle.

138.    The driver's daily log includes identification information for a driver (e.g., driver's name and/or ID number) and hours of service information for the driver (e.g., recorded duty hours), as depicted in the image below (07 How To Present Elogs To DOT

Officer   During   Inspection,   https://www.youtube.com/watch?v=xzHGUw75t88   (last visited April 21, 2020)):



139.   Platform Science, at least when using its Connected Vehicle Platform, performs the step of "storing the driver summary electronic report in a computer-readable memory module of the portable wireless display unit [e.g., the computer-readable memory of the In-Vehicle Display/Tablet], the portable wireless display unit being configured to wirelessly communicate with the electronic onboard recorder unit [e.g., the CVD] mounted to the vehicle," as required by claim 23 of the '568 patent.  As depicted in the image below, the In-Vehicle Display/Tablet is an "Android Tablet," which has a computer-readable memory module for storing the driver's daily logs (Platform Science Enterprise ELD Manual   -   2018,   https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):



140.   The In-Vehicle Display/Tablet connects to the CVD via wireless connection, as depicted in the image below (*Id.*):



51

141.   Platform Science, at least when using its Connected Vehicle Platform, performs the step of "receiving user input [e.g., touchscreen input] on the portable wireless display unit indicative of a request to export the driver summary electronic report from the electronic onboard recorder unit mounted to the vehicle," as required by claim 23 of the '568 patent.

142.   For example, the Connected Vehicle Platform receives touchscreen input on the In-Vehicle Display/Tablet indicative of a request to export the driver's daily log from the CVD to the driver's email or the FMCSA, as depicted in the image below (06 Transfer Logs, https://youtu.be/4Aa4FF5Pz2w (last visited April 21, 2020)):



143.   Platform Science, at least when using its Connected Vehicle Platform, performs the step of "wirelessly transfering the driver summary electronic report from the portable wireless display unit [e.g., the In-Vehicle Display/Tablet] to the electronic

onboard recorder unit [e.g., the CVD] mounted to the vehicle for exporting the driver summary electronic report via a removable data cable [e.g., removable data cable connecting the CVD to the All-In-One Antenna] to a remote computer device," as required by claim 23 of the '568 patent.

144. For example, the Connected Vehicle Platform transfers, via wireless connection, the driver's daily logs from the In-Vehicle Display/Tablet to the CVD mounted to the vehicle when sending the driver's daily logs to, for example, the FMCSA. This is depicted in the image below (Platform Science ELD, https://www.youtube.com/watch?v=1Ny5uVNvvU8 (last visited April 21, 2020)):



145. The CVD exports the driver's daily logs via a removable data cable connecting the CVD to the All-In-One Antenna, as depicted in the images below (Platform Science, Connected Vehicle Platform, https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex. 10**; Platform Science, Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):



CONNECTED VEHICLE DEVICE

Turn your vehicle into an IoT hub with the connected vehicle device. All devices on the vehicle can be unified on a single data plan and can communicate with each other via the device Wi-Fi/BT/IO connectivity. Also provides optional camera support.

· Provides 4G connectivity to the vehicle and mobile devices

· Supports dual mode Wi-Fi to receive, store, process or transmit large data volumes

· Connects to vehicle bus and supports edge computing to allow real-time monitoring of critical events and key performance metrics



146.   The All-In-One Antenna sends the driver's daily log to a remote computer device, such as a computer associated with the driver's email, the FMCSA, or a fleet manager.

147.   Each claim in the '568 patent recites an independent invention.  Neither claim 23, described above, nor any other individual claim is representative of all claims in the '568 patent.

148.   Platform Science was aware of the '568 patent since approximately the date of Platform Science's founding.   Numerous former employees of Omnitracs who had knowledge of Omnitracs' and XRS's patented technology and patents now work at Platform Science in a wide variety of roles across the company. *See supra*, paragraphs 3-5. These employees were aware of Omnitracs' and XRS's patented technology and patents, including the '568 patent, when Platform Science was developing the Accused Products.

149.   Platform Science has further been aware of the '568 patent since at least the filing date of this Complaint.

150.   Platform Science actively induced and is actively inducing others to infringe at least claim 23 of the '568 patent, in violation of 35 U.S.C. § 271(b).

151.   Platform Science's customers and end-users of the Accused Products directly infringe at least claim 23 of the '568 patent, at least by using the Accused Products in the manner described in detail above in Paragraphs 129-146.

152.   Platform Science knowingly induces infringement of at least claim 23 of the '568 patent by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

153.   Platform Science markets the Accused Products for use in an infringing manner. For example, Platform Science's website states that customers can use the Accused Products to "[c]omply with regulatory mandates for electronic logs, driver hours, state time tracking, and fuel tax," as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



CERTIFIED ELD

Comply with regulatory mandates for electronic logs, driver hours, state time tracking, and fuel tax.

- Activity & State time tracking
- IFTA state tax reporting
- Contextual UDT management

154.   Platform Science advertises and instructs that a driver's daily log, which includes identification information for a driver (e.g., driver's name and/or ID number) and hours of service information for the driver (e.g., recorded duty hours), can be displayed on the In-Vehicle Display/Tablet, as depicted in the image below (07 How To Present Elogs To DOT Officer During Inspection, https://www.youtube.com/watch?v=xzHGUw75t88 (last visited April 21, 2020)):



155.   As another example, Platform Science advertises and instructs that the Connected Vehicle Platform receives touchscreen input on the In-Vehicle Display/Tablet indicative of a request to export the driver's daily log from the CVD to the driver's email or the FMCSA, as depicted in the image below (06 Transfer Logs, https://youtu.be/4Aa4FF5Pz2w (last visited April 21, 2020)):

156.   Platform Science advertises and instructs that the Driver's Daily Log can then be transmitted wirelessly by the CVD to a remote computer device.

157.   Platform Science further instructs customers and end users, at least through its marketing, promotional, and instructional materials, to perform the claimed methods, as described in detail above in Paragraphs 129-146.

158.   Platform Science also posts videos on video-sharing websites, such as YouTube.com, that show how to use the Accused Products in an infringing manner. (*See, e.g.*, Day in the Life of a Driver Video, *supra*).

159.   Further, Platform Science markets the Accused Products for third-party customers and installs said Accused Products for those customers with the specific intent to induce infringement.  For example, Platform Science produces "Customer Spotlights" on its YouTube page highlighting infringing uses of the Accused Products by third-party

59

customers, and encouraging additional infringing uses by those customers and other potential customers. (*See* Platform Science Customer Spotlight: Velocity Truck Rental and Leasing, https://www.youtube.com/watch?v=yyPSw8vNdac (last visited April 21, 2020)).

160.   In addition to marketing the Accused Products for use in an infringing manner, Platform Science also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.  For example, Platform Science provides an installation program with an "intuitive, step-by-step wizard" that enables use of the Accused Products in an infringing manner, as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



## INSTALLATION & ROLLOUT

Installer mobile software with intuitive, step-by-step wizard, increased quality and back office visibility

- Digitally verified installs
- Real-time rollout dashboard
- Installer tracking/scoring

161. Further, Platform Science invites customers to "[c]ontact us today to configure your suite of platform, 3rd party and internal applications," and explains that "[w]e're committed to customer success that extends to all aspects of the customer journey with Platform Science," and offers to "work together" with customers (*id.*; Platform Science, Contact Us, https://www.platformscience.com/contact-us (last visited April 21, 2020), attached as **Ex. 13**):

**PLANNING FUTURE TECHNOLOGY FOR YOUR FLEET?**

Contact us today to configure your suite of platform, 3rd party and internal applications today.

CONTACT US

## Contact Us

We're committed to customer success that extends to all aspects of the customer journey with Platform Science. And, we are passionate about the transportation industry, to work with customers and partners in bringing innovations to the industry. **Connect with us here and let us know how we can work together.**

162.   Platform Science has sales and technical support staff that assist Platform Science's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

163.   Platform Science provides its customers and end users with additional instructions that direct the customers and end users to use the Accused Products in an infringing manner.   Such instructions include, for example, data sheets, technical specifications, customer support services, product sheets, and technical support services.

164.   Platform Science actively contributed to and is actively contributing to others' infringement of at least claim 23 of the '568 patent, in violation of 35 U.S.C. § 271(c).

165.   Platform Science's customers and end-users of the Accused Products directly infringe at least claim 23 of the '568 patent, at least by using the Accused Products in the manner described in detail above in Paragraphs 129-146.

166.   Platform Science contributes to infringement of the '568 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including the In-Vehicle Display/Tablet and associated software applications and

62

firmware, the CVD, and the All-In-One Antenna.  Such components are substantial, material parts of performing the claimed inventions of the '568 patent and have no substantial non-infringing use.

167.   The In-Vehicle Display/Tablet and associated software applications and firmware, CVD, and All-In-One Antenna supplied by Platform Science are especially made and especially adapted for use in infringing the '568 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

168.   Platform Science markets the Accused Products and one or more components thereof as software and associated hardware which is not intended to and does not enable any substantial non-infringing use, as described in detail above in Paragraphs 129-146. Indeed, the sole intended function of the Accused Products is for use in infringing fleet management applications.

169.   Platform Science's infringement of the '568 patent is without license or other authorization.

170.   Because Platform Science had knowledge of the '568 patent rights and proceeded to knowingly directly and indirectly infringe, Platform Science's infringement has been and continues to be willful.

171.   Platform Science's continued infringement of the '568 patent has damaged and will continue to damage Plaintiffs.

172.   Unless and until enjoined by this Court, Platform Science will continue to directly infringe as well as induce and contribute to infringement of the '568 patent. Platform Science's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

173.   This case is exceptional, entitling Plaintiffs to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## FOURTH CAUSE OF ACTION

### Infringement of the '575 Patent by Platform Science

174. Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1-173 above as though fully set forth herein.

175. Platform Science's products and/or services that infringe the '575 patent include, but are not limited to, the Accused Products and use thereof.

176. Platform Science makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States.

177. Platform Science directly infringes—literally and/or under the doctrine of equivalents—at least claim 19 of the '575 patent, at least by using its Accused Products and components thereof in the United States.

178. For example, claim 19 of the '575 patent recites:

19. A method comprising:

wirelessly receiving, at a mobile device, vehicle usage information from an electronic onboard recorder mounted to a vehicle and having a connection to the vehicle for gathering vehicle data during operation of the vehicle, wherein the electronic onboard recorder is in communication with an engine control module of the vehicle and automatically adapts to one or more detected types of communication protocols employed by the engine control module;

transmitting, to the electronic onboard recorder, a copy of a hours of service information generated by the mobile device, the hours of service information based on at least some of the vehicle usage data;

storing, in a computer-readable memory of the mobile device, at least some of the vehicle data gathered during operation of the vehicle, the vehicle data gathered during operation of the vehicle including hours of service information for a driver of the vehicle; and

transferring, with a wireless communication device of the mobile device, the vehicle usage information from the mobile device to a remote system via a wireless communication link with the remote system.

179.   Platform Science, at least when using the Accused Products, performs every step of claim 19 of the '575 patent.

180.   Platform Science, at least when using its Connected Vehicle Platform, performs the step of "wirelessly receiving, at a mobile device [e.g., the In-Vehicle Display/Tablet], vehicle usage information [e.g., odometer and engine hour readings] from an electronic onboard recorder [e.g., the CVD] mounted to a vehicle and having a connection to the vehicle [e.g., wired connection to the vehicle diagnostic port] for gathering vehicle data during operation of the vehicle," as required by claim 19 of the '575 patent. For example, the In-Vehicle Display/Tablet receives odometer and engine hour readings from the CVD via wireless connection to determine "Distance Driven" and "Start-End Engine Hours," as depicted in the image below (Platform Science, 07 How To Present Elogs To DOT Officer During Inspection, https://www.youtube.com/watch?v=xzHGUw75t88 (last visited April 21, 2020)):



181.   The CVD is mounted to a vehicle and connected to the vehicle via the vehicle diagnostic port, as depicted in the images below (Day in the Life of a Driver Video, *supra*; Platform Science Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):



182. The In-Vehicle Display/Tablet displays a red indicator light to alert the driver as to whether the In-Vehicle Display/Tablet is receiving data from the vehicle, as depicted

in the image below (01 How To Login, https://youtu.be/TvLV-Cs_P9E (last visited April 15, 2020)):



183.   The "electronic onboard recorder [e.g., the CVD] is in communication with an engine control module of the vehicle and automatically adapts to one or more detected types of communication protocols employed by the engine control module," as required by claim 19 of the '575 patent.  For example, the CVD is part of Platform Science's "[o]ut-of-the-box solution" that allows it to communicate with multiple vehicles (Platform Science, Connected Vehicle Platform, https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex. 10**):



184. The CVD communicates with the engine control module using a vehicle bus cable and adapter to connect with the vehicle diagnostic port. The CVD detects combination and/or signal levels implemented over the data bus via the the vehicle bus adapter connected to the engine control module, and analyzes incoming data traffic and/or queries the engine control module in order to determine the protocol used by the engine control module.

185. Platform Science, at least when using its Connected Vehicle Platform, performs the step of "transmiting, to the electronic onboard recorder [e.g., CVD], a copy of a hours of service information generated by the mobile device, the hours of service information based on at least some of the vehicle usage data [e.g., 'Distance Driven' and 'Start-End Engine Hours']," as required by claim 19 of the '575 patent.

186. For example, the In-Vehicle Display/Tablet transfers a copy of a driver's daily log to the CVD when sending daily logs to the driver's email, as depicted in the images below (Platform Science, Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):

## 2  Email / Wireless Web Services

If requested, the driver can easily email or use wireless web services to send HOS logs.

To wirelessly transfer logs:

1. Within the HOS tab, tap SEND HOS LOGS
2. Choose to either email or use the wireless web service feature
3. Add any comments and allow the DOT officer to add necessary comments
4. Tap SEND LOGS



187.   For example, the In-Vehicle Display/Tablet transfers a copy of the driver's daily logs to the CVD via wireless connection.  The CVD uses the All-In-One Antenna to send the daily logs to a remote network device, which routes the daily logs to the selected destination.  This is depicted in the images below (Platform Science, Connected Vehicle Platform, https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex. 10**):



**CONNECTED VEHICLE DEVICE**

Turn your vehicle into an IoT hub with the connected vehicle device. All devices on the vehicle can be unified on a single data plan and can communicate with each other via the device Wi-Fi/BT/IO connectivity. Also provides optional camera support.

· Provides 4G connectivity to the vehicle and mobile devices

· Supports dual mode Wi-Fi to receive, store, process or transmit large data volumes

· Connects to vehicle bus and supports edge computing to allow real-time monitoring of critical events and key performance metrics

188.    The hours of service information is based in-part on vehicle usage data.  For example, "Distance Driver" and "Start-End Engine Hours" are based on odometer and engine hour readings from the engine control module, as depicted in the image below (Platform Science, 07 How To Present Elogs To DOT Officer During Inspection, https://www.youtube.com/watch?v=xzHGUw75t88 (last visited April 21, 2020):



189.  Platform Science, at least when using its Connected Vehicle Platform, performs the step of "storing, in a computer-readable memory of the mobile device, at least some of the vehicle data gathered during operation of the vehicle, the vehicle data gathered during operation of the vehicle including hours of service information for a driver of the vehicle," as required by claim 19 of the '575 patent.  As shown in the image below, the In-Vehicle Display/Tablet is an "Android Tablet," which has a computer-readable memory for storing vehicle data gathered during operation of the vehicle (Platform Science Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):



190.   The In-Vehicle Display/Tablet stores vehicle data including hours of service information, such as odometer values and engine hours, gathered during operation of the vehicle (e.g., "Distance Driven" and "Start-End Engine Hours," as provided in a "Driver's Daily Logs"), as required by claim 19 of the '575 patent.  This is depicted in the image below (07 How To Present Elogs To DOT Officer During Inspection, https://www.youtube.com/watch?v=xzHGUw75t88 (last visited April 21, 2020)):

191. Platform Science, at least when using its Connected Vehicle Platform, performs the step of "transfering, with a wireless communication device of the mobile device, the vehicle usage information from the mobile device to a remote system via a wireless communication link [e.g., 4G LTE Network] with the remote system," as required by claim 19 of the '575 patent.

192. For example, the In-Vehicle Display/Tablet wirelessly transfers vehicle usage information in the form of a driver's daily log to a driver's email, wireless web services, the FMCSA, or a fleet manager over a 4G LTE network.

193. Each claim in the '575 patent recites an independent invention. Neither claim 19, described above, nor any other individual claim is representative of all claims in the '575 patent.

194.   Platform Science was aware of the '575 patent since approximately the date of its issuance on April 9, 2019.  Numerous former employees of Omnitracs who had knowledge of Omnitracs' and XRS's patented technology and patents now work at Platform Science in a wide variety of roles across the company. *See supra*, paragraphs 3-5. These employees were aware of Omnitracs' and XRS's patented technology and patents, including the '575 patent, which was filed on November 4, 2013, when Platform Science was developing the Accused Products.

195.   Platform Science has further been aware of the '575 patent since at least the filing date of this Complaint.

196.   Platform Science actively induced and is actively inducing others to infringe at least claim 19 of the '575 patent, in violation of 35 U.S.C. § 271(b).

197.   Platform Science's customers and end-users of the Accused Products directly infringe at least claim 19 of the '575 patent, at least by using the Accused Products in the manner described in detail above in Paragraphs 177-192.

198.   Platform Science knowingly induces infringement of at least claim 19 of the '575 patent by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

199.   Platform Science markets the Accused Products for use in an infringing manner. For example, Platform Science's website states that customers can use the Accused Products to "[c]omply with regulatory mandates for electronic logs, driver hours, state time tracking, and fuel tax," as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



200.   For example, Platform Science advertises and instructs that the In-Vehicle Display/Tablet receives odometer and engine hour readings from the CVD via wireless connection to determine "Distance Driven" and "Start-End Engine Hours," as depicted in the image below (Platform Science, 07 How To Present Elogs To DOT Officer During Inspection, https://www.youtube.com/watch?v=xzHGUw75t88 (last visited April 21, 2020)):



201.   As another example, Platform Science advertises and instructs that the CVD is mounted to a vehicle and connected to the vehicle via the vehicle diagnostic port, as depicted in the images below (Day in the Life of a Driver Video, *supra*; Platform Science Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):





202.   Further, for example, Platform Science advertises and instructs that the In-Vehicle Display/Tablet stores vehicle data including hours of service information, such as odometer values and engine hours, gathered during operation of the vehicle (e.g., "Distance Driven" and "Start-End Engine Hours," as provided in a "Driver's Daily Logs").  This is

depicted in the image below (07 How To Present Elogs To DOT Officer During Inspection, https://www.youtube.com/watch?v=xzHGUw75t88 (last visited April 21, 2020)):



203.   Additionally, Platform Science advertises and instructs that the In-Vehicle Display/Tablet wirelessly transfers vehicle usage information in the form of a driver's daily log to a driver's email, wireless web services, the FMCSA, or a fleet manager over a 4G LTE network.

204.   Platform Science further advertises and instructs customers and end users, at least through its marketing, promotional, and instructional materials, to perform the claimed methods, as described in detail above in Paragraphs 177-192.

205.   Platform Science also posts videos on video-sharing websites, such as YouTube.com, that show how to use the Accused Products in an infringing manner. (*See, e.g.*, Day in the Life of a Driver Video, *supra*).

206.   Further, Platform Science markets the Accused Products for third-party customers and installs said Accused Products for those customers with the specific intent to induce infringement.  For example, Platform Science produces "Customer Spotlights" on its YouTube page highlighting infringing uses of the Accused Products by third-party customers, and encouraging additional infringing uses by those customers and other potential customers.  (*See* Platform Science Customer Spotlight: Velocity Truck Rental and Leasing, https://www.youtube.com/watch?v=yyPSw8vNdac (last visited April 21, 2020)).

207.   In addition to marketing the Accused Products for use in an infringing manner, Platform Science also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.  For example, Platform Science provides an installation program with an "intuitive, step-by-step wizard" that enables use of the Accused Products in an infringing manner, as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):

## INSTALLATION & ROLLOUT

Installer mobile software with intuitive, step-by-step wizard, increased quality and back office visibility

- Digitally verified installs
- Real-time rollout dashboard
- Installer tracking/scoring

208. Further, Platform Science invites customers to "[c]ontact us today to configure your suite of platform, 3rd party and internal applications," and explains that "[w]e're committed to customer success that extends to all aspects of the customer journey with Platform Science," and offers to "work together" with customers (*id.*; Platform Science, Contact Us, https://www.platformscience.com/contact-us (last visited April 21, 2020), attached as **Ex. 13**):

**PLANNING FUTURE TECHNOLOGY FOR YOUR FLEET?**

Contact us today to configure your suite of platform, 3rd party and internal applications today.

CONTACT US

## Contact Us

We're committed to customer success that extends to all aspects of the customer journey with Platform Science. And, we are passionate about the transportation industry, to work with customers and partners in bringing innovations to the industry. **Connect with us here and let us know how we can work together.**

209. Platform Science has sales and technical support staff that assist Platform Science's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

210. Platform Science provides its customers and end users with additional instructions that direct the customers and end users to use the Accused Products in an infringing manner.  Such instructions include, for example, data sheets, technical specifications, customer support services, product sheets, and technical support services.

211. Platform Science actively contributed to and is actively contributing to others' infringement of at least claim 19 of the '575 patent, in violation of 35 U.S.C. § 271(c).

212. Platform Science's customers and end-users of the Accused Products directly infringe at least claim 19 of the '575 patent, at least by using the Accused Products in the manner described in detail above in Paragraphs 177-192.

213. Platform Science contributes to infringement of the '575 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including the In-Vehicle Display/Tablet and associated software applications and

firmware, the CVD, and the All-In-One Antenna.   Such components are substantial, material, material parts of the claimed inventions of the '575 patent and have no substantial non-infringing use.

214.   The In-Vehicle Display/Tablet and associated software applications and firmware, the CVD, and the All-In-One Antenna are especially made and especially adapted to for use in infringing the '575 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

215.   Platform Science markets the Accused Products and one or more components thereof as software and associated hardware which is not intended to and does not enable any substantial non-infringing use, as described in detail above in Paragraphs 177-192. Indeed, the sole intended function of the Accused Products is for use in infringing fleet management applications.

216.   Platform Science's infringement of the '575 patent is without license or other authorization.

217.   Because Platform Science had knowledge of the '575 patent rights and proceeded to knowingly directly and indirectly infringe, Platform Science's infringement has been and continues to be willful.

218.   Platform Science's continued infringement of the '575 patent has damaged and will continue to damage Plaintiffs.

219.   Unless and until enjoined by this Court, Platform Science will continue to directly infringe as well as induce and contribute to infringement of the '575 patent. Platform Science's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.   Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

220.   This case is exceptional, entitling Plaintiffs to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## FIFTH CAUSE OF ACTION

### Infringement of the '308 Patent by Platform Science

221.   Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1-220 above as though fully set forth herein.

222.   Platform Science's products and/or services that infringe the '308 patent include, but are not limited to, the Accused Products and use thereof.

223.   Platform Science makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States.

224.   Platform Science directly infringes—literally and/or under the doctrine of equivalents—at least claim 1 of the '308 patent by making, using, selling, offering for sale, and/or importing into the United States its Accused Products and components thereof.

225.   For example, claim 1 of the '308 patent recites:

1. A communication terminal, comprising:

a receiver for receiving a formatted message out of a number of pre-defined formatted messages, comprising a message identification code and a plurality of information fields;

an output device for presenting said formatted message to a user of said communication terminal;

an input device for responding to said formatted message;

a memory for storing said formatted message and for storing field-mapping information, said field-mapping information for indicating information to be copied from said formatted message to a response message based on which one of said pre-defined formatted messages was received;

a processor for creating said response message in response to an indication from said input device of a request to respond to said formatted message, said response message comprising at least one response message information field, wherein information from at least one of said plurality of information fields of said formatted message is copied

into at least one of said response message information fields based on said field-mapping information; and

a transmitter for transmitting said information relating to said response message.

226. The Accused Products practice each limitation of claim 1 of the '308 patent. To the extent the preamble is construed to be limiting, the Platform Science Connected Vehicle Platform comprises "a communication terminal," made up of a Connected Vehicle Device ("CVD"), In-Vehicle Display/Tablet, and All-In-One Antenna.

227. The Accused Products include a "receiver [e.g., the All-In-One Antenna's receiver] for receiving a formatted message out of a number of pre-defined formatted messages [e.g., the formatted messages containing Tasks from a fleet manager application in the Platform Science workflow application]," as required by claim 1 of the '308 patent.

228. The "number of pre-defined formatted messages" comprise "a plurality of information fields," as depicted in the images below (the first image is available at 09 Workflow App, *available at* https://www.youtube.com/watch?v=8Oy9i5b1y0E (last visited April 21, 2020); the second image is available at MarketWaves18 Demo: Platform Science, *available at* https://youtu.be/VP2Y3mEzbyI (last visited April 21, 2020)):





229.   The pre-defined formatted messages comprise "a message identification code."  Specifically, the Connected Vehicle Platform uses a "message identification code" to select a particular response message defined by a Form Schema.  For example, the Form Schema shown below defines a response message in the Connected Vehicle Platform's workflow application (MarketWaves18 Demo: Platform Science, *available at* https://youtu.be/VP2Y3mEzbyI (last visited April 21, 2020)):

88



```
36                    }
37          },
38          "then": {
39              "exclude": [
40                  "Weight",
41                  "PickUpNumber",
42                  "CustomerSignedBLWithSealNumber"
43              ]
44          },
45          "continue": true
46      }
47  ],
48  "properties": {
49      "PlanId": {
50          "type": "string",
51          "default": "$stop.external_id"
52      },
53      "StopId": {
54          "type": "string"
55      },
56      "DocumentCapture1": {
57          "type": "string",
58          "format": "document_capture",
59          "title": "Document scan 1",
60          "default": "Click to scan"
61      },
62      "PickupTrailerNumber": {
63          "type": "string",
64          "title": "Pickup Trailer #",
65          "default": "$job.external_data[1].value",
66          "setParam": {
67              "$job.trailer_number": "$this"
68          }
69      },
70      "PickupTrailerLicenseNumber": {
71          "type": "string",
72          "title": "License #"
73      },
74      "PickupTrailerNeedsMaintenance": {
75          "title": "Trailer needs maintenance?",
76          "type": "string",
77          "enum": [
78              "Yes",
79              "No"
80          ],
81          "field_type": "radio"
82      },
83      "DroppedEmptyTrailerNumber": {
84          "type": "string",
85          "title": "Dropped Empty Trailer #"
86      },
87      "DroppedEmptyLicenseNumber": {
88          "type": "string",
89          "title": "License #"
```

90

230. The Accused Products include "an output device [e.g., the In-Vehicle Display/Tablet's display screen] for presenting said formatted message [e.g., messages containing tasks] to a user of said communication terminal," as required by claim 1 of the '308 patent.

231.   The Accused Products include "an input device for responding to said formatted message," as required by claim 1 of the '308 patent.  For example, drivers can select "View" or otherwise provide an input indicating a request to respond to a message using the In-Vehicle Display/Tablet's touch screen, as depicted in the image below (09 Workflow App, https://www.youtube.com/watch?v=8Oy9i5b1y0E (last visited April 21, 2020)):



232.   The Accused Products include "a memory for storing said formatted message and for storing field-mapping information," as required by claim 1 of the '308 patent.  For example, the In-Vehicle Display/Tablet is an "Android Tablet," which has a memory, in the form of local storage, for storing formatted messages and field-mapping information (Platform         Science,         Enterprise         ELD         Manual         -         2018,

https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b            (last visited April 21, 2020), attached as **Ex. 11**).



233.    The field-mapping information is "for indicating information to be copied from said formatted message to a response message based on which one of said pre-defined formatted messages was received," as required by claim 1 of the '308 patent.  For example, in the Form Schema depicted below, the Platform Science Connected Vehicle Platform copies a pickup trailer number into a response message. As another example, the Connected Vehicle Platform can also copy a bill of lading number into a response message. (MarketWaves18 Demo: Platform Science, *available at* https://youtu.be/VP2Y3mEzbyI (last visited April 21, 2020).)



234.   The Accused Products include "a processor for creating said response message in response to an indication from said input device of a request to respond to said formatted message," as required by claim 1 of the '308 patent.   For example, drivers can select "View" or otherwise provide an input indicating a request to respond to a message, as depicted in the image below:



235.   The driver's response message includes "at least one response message information field [e.g., 'PickupTrailer #' or 'BillOfLading #'], wherein information from at least one of said plurality of information fields of said formatted message is copied into at least one of said response message information fields based on said field-mapping information," as required by claim 1 of the '308 patent.

236.   For example, the Connected Vehicle Platform can copy a pickup trailer number into a response message. (*See* Form Schema depicted *supra* ¶ 233.) As another example, the Platform Science Connected Vehicle Platform can copy a bill of lading number into the response message. (*See* Form Schema depicted *supra* ¶ 233.)

237.   The Accused Products include "a transmitter [e.g., the All-In-One Antenna's transmitter] for transmitting said information relating to said response message," as required by claim 1 of the '308 patent.

238.   Each claim in the '308 patent recites an independent invention.  Neither claim 1, described above, nor any other individual claim is representative of all claims in the '308 patent.

239.   Platform Science was aware of the '308 patent at least since Platform Science's founding.   Numerous former employees of Omnitracs and XRS who had knowledge of Omnitracs' and XRS's patented technology and patents, including the '308 patent, now working at Platform Science in a wide variety of roles across the company. *See supra*, paragraphs 3-5.   These employees were aware of Omnitracs' and XRS's patented technology and patents, including the '308 patent, when Platform Science was developing the Accused Products.

240.   Platform Science has further been aware of the '308 patent since at least the filing date of this Complaint.

241.   Platform Science actively induced and is actively inducing others to infringe at least claim 1 of the '308 patent, in violation of 35 U.S.C. § 271(b).

242.   Platform Science's customers and end-users of the Accused Products directly infringe claim 1 of the '308 patent, at least by using the Accused Products, as described in detail in Paragraphs 224-237.

243.   Platform Science knowingly induced and continues to knowingly induce infringement of the '308 patent by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

244.   For example, Platform Science advertises and instructs that drivers can select "View" or otherwise provide an input indicating a request to respond to a message using the In-Vehicle Display/Tablet's touch screen, as depicted in the image below (09 Workflow App, https://www.youtube.com/watch?v=8Oy9i5b1y0E (last visited April 21, 2020)):



245.   Platform Science further advertises and instructs that customers have the ability to generate pre-formatted messages when using the Accused Products, and can input information into the pre-formatted messages once they are generated using an input device on the tablet, as shown below. *See* MarketWaves18 Demo: Platform Science, *supra*; *see also* Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12** ("[m]odify your field/layout any time while optimizing your driver's day by delivering the context relevant workflow experience they deserve").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



246. Platform Science further instructs customers and end users, at least through its marketing, promotional, and instructional materials, to use the claimed system and perform the claimed methods, as described in detail above in Paragraphs 224-237.

247. Platform Science also posts videos on video-sharing websites, such as YouTube.com, that show how to use the Accused Products in an infringing manner. (*See, e.g.*, Day in the Life of a Driver Video, *supra*).

248. Further, Platform Science markets the Accused Products for third-party customers and installs said Accused Products for those customers with the specific intent to induce infringement. For example, Platform Science produces "Customer Spotlights" on its YouTube page highlighting infringing uses of the Accused Products by third-party customers, and encouraging additional infringing uses by those customers and other

potential customers.  (*See* Platform Science Customer Spotlight: Velocity Truck Rental and Leasing, https://www.youtube.com/watch?v=yyPSw8vNdac (last visited April 21, 2020)).

249.   In addition to marketing the Accused Products for use in an infringing manner, Platform Science also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.  For example, Platform Science provides an installation program with an "intuitive, step-by-step wizard" that enables use of the Accused Products in an infringing manner, as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



## INSTALLATION & ROLLOUT

Installer mobile software with intuitive, step-by-step wizard, increased quality and back office visibility

- Digitally verified installs
- Real-time rollout dashboard
- Installer tracking/scoring

250.   Further, Platform Science invites customers to "[c]ontact us today to configure your suite of platform, 3rd party and internal applications," and explains that "[w]e're committed to customer success that extends to all aspects of the customer journey with Platform Science," and offers to "work together" with customers (*id.*; Platform Science, Contact Us, https://www.platformscience.com/contact-us (last visited April 21, 2020), attached as **Ex. 13**):

**PLANNING FUTURE TECHNOLOGY FOR YOUR FLEET?**

Contact us today to configure your suite of platform, 3rd party and internal applications today.

CONTACT US

## Contact Us

We're committed to customer success that extends to all aspects of the customer journey with Platform Science. And, we are passionate about the transportation industry, to work with customers and partners in bringing innovations to the industry. **Connect with us here and let us know how we can work together.**

251.   Platform Science has sales and technical support staff that assist Platform Science's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

252.   Platform Science provides its customers and end users with additional instructions that direct the customers and end users to use the Accused Products in an infringing manner.   Such instructions include, for example, data sheets, technical specifications, customer support services, product sheets, and technical support services.

253.   Platform Science contributed and is contributing to others' infringement of at least claim 1 of the '308 patent, in violation of 35 U.S.C. § 271(c).

102

254.   Platform Science's customers and end-users of the Accused Products directly infringe claim 1, at least by using the Accused Products, as described in detail in Paragraphs 224-237.

255.   Platform Science contributes to infringement of the '308 patent by offering to sell, selling, and importing into the United States the Accused Products and components thereof, including the In-Vehicle Display/Tablet and associated software applications and firmware, and the All-In-One Antenna.  Such components are substantial, material parts of the claimed inventions of the '308 patent and have no substantial non-infringing use.

256.   The In-Vehicle Display/Tablet and associated software applications and firmware supplied by Platform Science, and the All-In-One Antenna, are especially made and especially adapted for use in infringing the '308 Patent, and  are not staple articles or commodities of commerce suitable for substantial non-infringing use.

257.   Platform Science's infringement of the '308 patent is without license or other authorization.

258.   Because Platform Science had knowledge of the '308 patent rights and proceeded to knowingly directly and indirectly infringe, Platform Science's infringement has been and continues to be willful.

259.   Platform Science's continued infringement of the '308 patent has damaged and will continue to damage Plaintiffs.

260.   Unless and until enjoined by this Court, Platform Science will continue to directly infringe as well as induce and contribute to infringement of the '308 patent. Platform Science's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

261.   This case is exceptional, entitling Plaintiffs to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## SIXTH CAUSE OF ACTION

### Infringement of the '216 Patent by Platform Science

262.   Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1-261 above as though fully set forth herein.

263.   Platform Science's products and/or services that infringe the '216 patent include, but are not limited to, the Accused Products and use thereof.

264.   Platform Science makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States.

265.   Platform Science directly infringes—literally and/or under the doctrine of equivalents—at least claim 1 of the '216 patent by making, using, selling, offering for sale, and/or importing into the United States its Accused Products and components thereof.

266.   For example, claim 1 of the '216 patent recites:

1. A management system for monitoring a remotely located vehicle, the management system comprising:

a data receiver configured to wirelessly receive location information from the remotely located vehicle; and

a display configured to simultaneously present a planned route configured for the remotely located vehicle before travel and a driven route of the vehicle determined from the location information from the vehicle.

267.   Platform Science infringes claim 1 at least by using the Accused Products in the United States.

268.   To the extent the preamble is construed to be limiting, Platform Science's Connected Vehicle Platform is a "management system for monitoring a remotely located vehicle."   For example, the Connected Vehicle Platform allows fleet managers to "[m]onitor assets and drivers with real-time communication, two-way messaging, and location tracking," as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):

104





**COMMUNICATION & TELEMATICS**

Monitor assets and drivers with real-time communication, two-way messaging, and location tracking.

- Driver messaging/chat
- Asset tracking
- Vehicle disable

**CERTIFIED ELD**

Comply with regulatory mandates for electronic logs, driver hours, state time tracking, and fuel tax.

- Activity & State time tracking
- IFTA state tax reporting
- Contextual UDT management

**DRIVER SAFETY & PERFORMANCE**

Proactively manage driver safety and performance with real-time driver behavior monitoring.

- Critical event reporting
- Driver performance monitoring
- Collision mitigation

269.   The Accused Products include a "data receiver configured to wirelessly receive location information from the remotely located vehicle," as required by claim 1 of the '216 patent.   For example, the Accused Products use GPS to determine location information and cellular connectivity to send that location data from an All-In-One Antenna on a remotely located vehicle to a data receiver of Platform Science's Connected Vehicle Platform, as depicted in the images below (Platform Science, Connected Vehicle Platform, https://www.platformscience.com/platform (last visited April 21, 2020), attached as **Ex. 10**):



270. The All-In-One Antenna is a component of the Connected Vehicle Platform's "Truck In-Cab Hardware," as depicted in the image below (Day in the Life of a Driver Video, *supra*):

271.    Platform Science's All-In-One Antenna is a custom-made "Ultramax Glass" antenna supplied by Airgain which has GPS and cellular connectivity, as depicted in the image below (Airgain, Ultramax Glass brochure, https://www.airgain.com/wp-content/uploads/2018/12/ULTRAMAX-GLASS.pdf (last visited April 21, 2020), attached as **Ex. 14**):



272.    A data receiver receives, via the All-In-One Antenna, the information sent by the remotely located vehicle, as depicted in the image below (Platform Science, 2019 Connect MIP Awards - Smart City & Transportation Finalists, https://www.youtube.com/watch?v=N-rbZ5hYgVc (last visited April 21, 2020)):



273. Platform Science's Connected Vehicle Platform includes a "display configured to simultaneously present a planned route configured for the remotely located vehicle before travel and a driven route of the vehicle," as required by claim 1 of the '216 patent.  For example, the Platform Science fleet manager application works with an associated display to present a planned route configured for the remotely located vehicle before travel and a driven route of the vehicle determined from the location information from the vehicle, and provides Trip Summaries on the fleet manager application, as depicted in the images below:



274. The Connected Vehicle Platform determines the driven route [e.g., "Actual Route"] using GPS location information from the Platform Science All-In-One Antenna

on the vehicle, and likewise displays the planned and actual routes. Below is an example of this capability as shown on the In-Vehicle Display/Tablet (Day in the Life of a Driver Video, *supra*):



275.   Each claim in the '216 patent recites an independent invention.  Neither claim 1, described above, nor any other individual claim is representative of all claims in the '216 patent.

276.   Platform Science was aware of the '216 patent at least since approximately the date of Platform Science's founding.  Numerous former employees of Omnitracs and XRS who had knowledge of Omnitracs' and XRS's patented technology and patents, including the '216 patent, now work at Platform Science in a wide variety of roles across the company.  *See supra*, paragraphs 3-5.  These employees were aware of Omnitracs' and XRS's patented technology and patents, including the '216 patent, when Platform Science was developing the Accused Products.

277.   Platform Science has further been aware of the '216 patent since at least the filing date of this Complaint.

278.   Platform Science actively induced and is actively inducing others to infringe at least claim 1 of the '216 patent, in violation of 35 U.S.C. § 271(b).

279.   Platform Science's customers and end-users of the Accused Products directly infringe claim 1 of the '216 patent, at least by using the Accused Products, as described in detail in Paragraphs 265-274

280.   Platform Science knowingly induces infringement of the '216 patent, including at least claim 1, by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

281.   Platform Science markets the Accused Products for use in an infringing manner. For example, Platform Science's website states that customers can use the Accused Products to "[m]onitor assets and drivers with real-time communication, two-way messaging, and location tracking," as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):

## COMMUNICATION & TELEMATICS

Monitor assets and drivers with real-time communication, two-way messaging, and location tracking.

- Driver messaging/chat
- Asset tracking
- Vehicle disable

282. Platform Science advertises to and instructs customers and end users to use the Accused Products to display, in real-time, the location of vehicles from data that is wirelessly transmitted to fleet managers (Connect MIP Awards - Smart City & Transportation Finalists, *supra*):



283.   Platform Science further instructs customers and end users, at least through its marketing, promotional, and instructional materials, to use the claimed system and perform the claimed methods, as described in detail above in Paragraphs 265-274.

284.   Platform Science also posts videos on video-sharing websites, such as YouTube.com, that show how to use the Accused Products. (*See, e.g.*, Day in the Life of a Driver Video, *supra*).

285.   Further, Platform Science markets the Accused Products for third-party customers and installs said Accused Products for those customers with the specific intent to induce infringement.  For example, Platform Science produces "Customer Spotlights" on its YouTube page highlighting infringing uses of the Accused Products by third-party customers, and encouraging additional infringing uses by those customers and other potential customers.  (*See* Platform Science Customer Spotlight: Velocity Truck Rental and Leasing, https://www.youtube.com/watch?v=yyPSw8vNdac (last visited April 21, 2020)).

286.   In addition to marketing the Accused Products for use in an infringing manner, Platform Science also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.  For example, Platform Science provides an installation program with an "intuitive, step-by-step wizard" that enables use of the Accused Products in an infringing manner, as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020):



287.  Further, Platform Science invites customers to "[c]ontact us today to configure your suite of platform, 3rd party and internal applications," and explains that "[w]e're committed to customer success that extends to all aspects of the customer journey with Platform Science," and offers to "work together" with customers (*id.*; Platform

Science, Contact Us, https://www.platformscience.com/contact-us (last visited April 21, 2020), attached as **Ex. 13**):

## PLANNING FUTURE TECHNOLOGY FOR YOUR FLEET?

Contact us today to configure your suite of platform, 3rd party and internal applications today.

CONTACT US

# Contact Us

We're committed to customer success that extends to all aspects of the customer journey with Platform Science. And, we are passionate about the transportation industry, to work with customers and partners in bringing innovations to the industry. **Connect with us here and let us know how we can work together.**

288.   Platform Science has sales and technical support staff that assist Platform Science's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

289.   Platform Science provides its customers and end users with additional instructions that direct the customers and end users to use the Accused Products in an infringing manner.   Such instructions include, for example, data sheets, technical specifications, customer support services, product sheets, and technical support services.

290.   Platform Science contributed to and is actively contributing to others' infringement of at least claim 1 of the '216 patent, in violation of 35 U.S.C. § 271(c).

291.   Platform Science's customers and end-users of the Accused Products directly infringe claim 1 of the '216 patent, at least by using the Accused Products, as described in detail in Paragraphs 265-274.

292.   Platform Science contributes to infringement of the '216 patent by offering to sell, selling, and importing into the United States the Accused Products and the Platform Science Fleet Manager application.  Such components are substantial, material parts of the claimed inventions of the '216 patent and have no substantial non-infringing use.

293.   The Accused Products and Fleet Manager application supplied by Platform Science are especially made and especially adapted for use in infringing the '216 Patent., and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

294.   Platform Science markets the Accused Products and one or more components thereof, including the Fleet Manager application, as elements of a platform which is not intended to and does not enable any substantial non-infringing use, as described in detail above in Paragraphs 265-274.  Indeed, the sole intended function of the Accused Products is for use in infringing fleet management applications.

295.   Platform Science's infringement of the '216 patent is without license or other authorization.

296.   Because Platform Science had knowledge of the '216 patent rights and proceeded to knowingly directly and indirectly infringe, Platform Science's infringement has been and continues to be willful.

297.   Platform Science's continued infringement of the '216 patent has damaged and will continue to damage Plaintiffs.

298.   Unless and until enjoined by this Court, Platform Science will continue to directly infringe as well as induce and contribute to infringement of the '216 patent. Platform Science's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

299.   This case is exceptional, entitling Plaintiffs to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## SEVENTH CAUSE OF ACTION

### Infringement of the '335 Patent by Platform Science

300.   Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1-299 above as though fully set forth herein.

301.   Platform Science's products and/or services that infringe the '335 patent include, but are not limited to, the Accused Products and use thereof.

302.   Platform Science makes, uses, sells, offers for sale, and/or imports the Accused Products and components thereof in the United States.

303.   Platform Science directly infringes—literally and/or under the doctrine of equivalents—at least claim 1 of the '335 patent by making, using, selling, offering for sale, and/or importing into the United States its Accused Products and components thereof.

304.   For example, claim 1 of the '335 patent recites:

1. A system for generating real-time alert notifications, comprising:

a database for receiving in real-time at least one event; and

a processing engine for analyzing the at least one event with respect to a plurality of stored events, the processing engine being further for:

determining whether the at least one event meets a defined condition;

if the at least one event meets the defined condition, selecting a prescriptive action from a directory of prescriptive actions, and generating in real-time a proactive alert notification with the prescriptive action for a user, wherein the prescriptive action is tailored based on a user role and contextual data related to the at least one event; and

forwarding the prescriptive action to the user.

305.   The Accused Products practice each limitation of claim 1 of the '335 patent.

306.   To the extent the preamble is construed to be limiting, the Accused Products include a "system for generating real-time alert notifications."  For example, the Accused Products provide "real-time driver behavior monitoring" and "critical event reporting," as depicted in the image below (Platform Science, Fleet Management Apps,

117

https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



307.   Platform Science also promotes that the "PS ELD communicates with each other to notify the driver whenever there is a driving violation, which include anything from expired timers to excessive speed," as depicted in the image below (Platform Science, Enterprise ELD Manual - 2018, https://eld.fmcsa.dot.gov/File/Index/734aeb65-8ae7-784a-e053-0100007ff85b (last visited April 21, 2020), attached as **Ex. 11**):



308.   The Accused Products include "a database for receiving in real-time at least one event," as required by claim 1 of the '335 patent.  For example, the Platform Science fleet management application receives and stores indications of a plurality of driving events, such as "hard braking," "excessive speed," and "excessive RPM," as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



309.   Platform Science advertises that fleet managers can "[p]roactively manage driver safety and performance with real-time driver behavior monitoring," as depicted in the images below (*Id.*):



310.  The In-Vehicle Display/Tablet includes a database for receiving in real-time at least one event, such as excessive speed, as depicted in the image below (Day in the Life of a Driver Video, *supra*):



311.  The Accused Products include "a processing engine [e.g., the In-Vehicle Display/Tablet processor] for analyzing the at least one event with respect to a plurality of stored events," as required by claim 1 of the '335 patent.  For example, Platform Science advertises that the Connected Vehicle Platform analyzes a plurality of events, including, as non-limiting examples, events indicative of "hard braking," "over speed," and "excessive RPM," and does so with respect to each other.

312.  With respect to speeding, for example, events are analyzed with respect to "MODERATE" and "LOW" speeding violations depending on the severity of the infraction, as depicted in the images below (Day in the Life of a Driver Video, *supra*):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



27    313.   The Accused Products determines "whether the at least one event meets a

28  defined condition," as required by claim 1 of the '335 patent.  For example, the Connected

Vehicle Platform determines whether one event (e.g., a vehicle speed) meets a defined condition (e.g., a speed limit), as shown above in Paragraph 312.

314.   The Platform Science Connected Vehicle Platform's processing engine selects a "prescriptive action from a directory of prescriptive actions [e.g., 'MODERATE,' 'LOW,' 'REDUCE SPEED']" "if the at least one event meets the defined condition [e.g., a speeding violation]," as required by claim 1 of the '335 patent.

315.   The Connected Vehicle Platform also generates "in real-time a proactive alert notification [e.g., a speeding violation alert] with the prescriptive action [e.g., 'REDUCE SPEED'] for a user," as required by claim 1 of the '335 patent.

316.   The "prescriptive action is tailored based on a user role [e.g., driver/fleet manager] and contextual data [e.g., the degree and duration of the speeding and the speed limit in the geographic area] related to the at least one event," as required by claim 1 of the '335 patent. (*See* Platform Science, Day in the Life of a Driver, *available at* https://www.youtube.com/watch?v=haXZ_L-wlAM (last visited April 21, 2020).)



317.   For example, above prescriptive actions are displayed to a driver user and the below view is displayed to a fleet manager user.  (*See* Fleet Management Apps, *available at* https://www.platformscience.com/application-suite  (last visited April 21, 2020), attached as **Ex. 12**.)



318.   Platform Science's Accused Products forward "the prescriptive action to the user," as required by claim 1 of the '335 patent.  For example, the user for the image in Paragraph 316 is a driver.

319.   Each claim in the '335 patent recites an independent invention.  Neither claim 1, described above, nor any other individual claim is representative of all claims in the '335 patent.

320.   Platform Science was aware of the application that issued as the '335 patent at least since it's approximately the date of Platform Science's founding.  Numerous former employees of Omnitracs who had knowledge of Omnitracs' and XRS's patented technology and patents, including the '335 patent, now work at Platform Science in a wide variety of roles across the company.  *See supra*, paragraphs 3-5.  These employees were aware of Omnitracs' and XRS's patented technology and patents, including the '335 patent, when Platform Science was developing the Accused Products.

321.   Platform Science has further been aware of the '335 patent since at least the filing date of this Complaint.

322.   Platform Science actively induced and is actively inducing others to infringe at least claim 1 of the '335 patent, in violation of 35 U.S.C. § 271(b).

323.   Platform Science's customers and end-users of the Accused Products directly infringe claim 1 of the '335 patent, at least by using the Accused Products, as described in detail above in Paragraphs 303-318.

324.   Platform Science knowingly induces infringement of at least claim 1 of the '335 patent by customers and end-users of the Accused Products with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the Accused Products in the United States.

325.   Platform Science markets the Accused Products for use in an infringing manner. For example, Platform Science's website states that customers can use the Accused Products to "manage driver safety and performance with real-time driver behavior monitoring," as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



## DRIVER SAFETY & PERFORMANCE

Proactively manage driver safety and performance with real-time driver behavior monitoring.

- Critical event reporting
- Driver performance monitoring
- Collision mitigation

326.   Platform Science advertises to and instructs users to operate the Connected Vehicle Platform to receive real-time alert notifications and prescriptive action when an event meets a defined condition (*e.g.*, speeding) (Day in the Life of a Driver Video, *supra*):



327.   Platform Science further instructs customers and end users, at least through its marketing, promotional, and instructional materials, to use the claimed system and perform the claimed methods, as described in detail above in Paragraphs 303-318.

328.   Platform Science also posts videos on video-sharing websites, such as YouTube.com, that show how to use the Accused Products. (*See, e.g.*, Day in the Life of a Driver Video, *supra*).

329.   Further, Platform Science markets the Accused Products for third-party customers and installs said Accused Products for those customers with the specific intent to induce infringement.  For example, Platform Science produces "Customer Spotlights" on its YouTube page highlighting infringing uses of the Accused Products by third-party customers, and encouraging additional infringing uses by those customers and other potential customers.  (*See* Platform Science Customer Spotlight: Velocity Truck Rental

127

and Leasing, https://www.youtube.com/watch?v=yyPSw8vNdac (last visited April 21, 2020)).

330.    In addition to marketing the Accused Products for use in an infringing manner, Platform Science also provides customer service to purchasers of the Accused Products that directs and encourages customers of the Accused Products to use the Accused Products in an infringing manner.  For example, Platform Science provides an installation program with an "intuitive, step-by-step wizard" that enables use of the Accused Products in an infringing manner, as depicted in the image below (Platform Science, Fleet Management Apps, https://www.platformscience.com/application-suite (last visited April 21, 2020), attached as **Ex. 12**):



331.  Further, Platform Science invites customers to "[c]ontact us today to configure your suite of platform, 3rd party and internal applications," and explains that

128

"[w]e're committed to customer success that extends to all aspects of the customer journey with Platform Science," and offers to "work together" with customers (*id.*; Platform Science, Contact Us, https://www.platformscience.com/contact-us (last visited April 21, 2020), attached as **Ex. 13**):

**PLANNING FUTURE TECHNOLOGY FOR YOUR FLEET?**

Contact us today to configure your suite of platform, 3rd party and internal applications today.

CONTACT US

## Contact Us

We're committed to customer success that extends to all aspects of the customer journey with Platform Science. And, we are passionate about the transportation industry, to work with customers and partners in bringing innovations to the industry. **Connect with us here and let us know how we can work together.**

332.   Platform Science has sales and technical support staff that assist Platform Science's customers and end users and provide instructions for the use of the Accused Products in an infringing manner in the United States.

333.   Platform Science provides its customers and end users with additional instructions that direct the customers and end users to use the Accused Products in an infringing manner.   Such instructions include, for example, data sheets, technical specifications, customer support services, product sheets, and technical support services.

334.   Platform Science actively contributed to and is actively contributing to others' infringement of at least claim 1 of the '335 patent, in violation of 35 U.S.C. § 271(c).

129

335.   Platform Science's customers and end-users of the Accused Products directly infringe claim 1 of the '335 patent, at least by using the Accused Products, as described in detail above in Paragraphs 303-318.

336.   Platform Science contributes to infringement of the '335 patent by offering to sell, selling, and/or importing into the United States the Accused Products and components thereof, including the In-Vehicle Display/Tablet and associated software applications and firmware, and the CVD.  Such components are substantial, material parts of the claimed inventions of the '335 patent and have no substantial non-infringing use.

337.   The In-Vehicle Display/Tablet and associated software applications and firmware supplied by Platform Science, and the CVD, are especially made and especially adapted for use in infringing the '335 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

338.   Platform Science's infringement of the '335 patent is without license or other authorization.

339.   Because Platform Science had knowledge of the '335 patent rights and proceeded to knowingly directly and indirectly infringe, Platform Science's infringement has been and continues to be willful.

340.   Platform Science's continued infringement of the '335 patent has damaged and will continue to damage Plaintiffs.

341.   Unless and until enjoined by this Court, Platform Science will continue to directly infringe as well as induce and contribute to infringement of the '335 patent. Platform Science's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

342.   This case is exceptional, entitling Plaintiffs to an award of attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**DEMAND FOR JURY TRIAL**

343.   Plaintiffs respectfully request a jury trial on any issues so triable by right.

**PRAYER FOR RELIEF**

344.   WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

A. A judgment that Platform Science infringes, directly and indirectly, the Patents-in-Suit;

B. An order permanently enjoining Platform Science, its affiliates and subsidiaries, and each of its officers, agents, servants and employees and those acting in privity or concert with them, from making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the '934, '365, '568, '575, '308, '216, and '335 patents; using or performing methods claimed in any of the claims of the '934, '365, '568, '575, '308, '216, and '335 patents; inducing others to use and perform methods that infringe any claim of the '934, '365, '568, '575, '308, '216, and '335 patents; inducing others to make, offer, sell, use or import into the United States articles that infringe, or are made by a process that infringes, any claim of the '934, '365, '568, '575, '308, '216, and '335 patents; and contributing to others infringing any claim of the '934, '365, '568, '575, '308, '216, and '335 patents, until after the expiration of the '934, '365, '568, '575, '308, '216, and '335 patents, respectively, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

C. An order awarding damages under 35 U.S.C. §§ 154 & 284 in an amount sufficient to compensate Plaintiffs for their damages arising from infringement by Platform Science, including, but not limited to, lost profits and/or a reasonable royalty;

D. A judgment that Platform Science's infringement of the Patents-in-Suit was and continues to be willful and an order awarding Plaintiffs treble damages under 35 U.S.C. § 284;

131

E. A judgment and order requiring Platform Science to pay Plaintiffs the prejudgment and post-judgment interest to the fullest extent allowed under the law, as well as their costs;

F. An order finding that this is an exceptional case and awarding Plaintiffs their reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

G. Such other relief as the Court may deem appropriate and just under the circumstances.

Dated:  May 26, 2020                    Respectfully submitted,


                                        */s/ Michael W. De Vries*
                                        Michael W. De Vries (S.B.N. 211001)
                                        KIRKLAND & ELLIS LLP
                                        555 South Flower Street, Suite 3700
                                        Los Angeles, CA 90071
                                        Telephone: (213) 680-8400
                                        michael.devries@kirkland.com

                                        Adam R. Alper (S.B.N. 196834)
                                        Akshay S. Deoras (S.B.N. 301962, *pro hac to
                                        be filed*)
                                        KIRKLAND & ELLIS LLP
                                        555 California Street
                                        San Francisco, CA 94104
                                        Telephone: (415) 439-1400
                                        adam.alper@kirkland.com
                                        akshay.deoras@kirkland.com

                                        Gianni Cutri *(pro hac to be filed)*
                                        KIRKLAND & ELLIS LLP
                                        300 North LaSalle
                                        Chicago, IL 60654
                                        Telephone: (312) 862-2000
                                        gianni.cutri@kirkland.com

                                        Leslie M. Schmidt (*pro hac to be filed*)
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, NY 10022
                                        Telephone: (212) 446-4800
                                        leslie.schmidt@kirkland.com

                                        *Counsel for Plaintiffs Omnitracs, LLC and
                                        XRS Corporation*

**TABLE OF EXHIBITS TO COMPLAINT**

| Exhibit | Description | Page Numbers |
|---|---|---|
| 1 | United States Patent No. 9,262,934 | 001 - 044 |
| 2 | United States Patent No. 7,043,365 | 045 - 058 |
| 3 | United States Patent No. 8,626,568 | 059 - 082 |
| 4 | United States Patent No. 10,255,575 | 083 - 105 |
| 5 | United States Patent No. 6,925,308 | 106 - 115 |
| 6 | United States Patent No. 7,725,216 | 116 - 132 |
| 7 | United States Patent No. 9,147,335 | 133 - 145 |
| 8 | Platform Science + Velocity: Customer Success Story | 146 |
| 9 | Velocity Locations | 147 - 148 |
| 10 | Platform Science Connected Vehicle Platform | 149 - 150 |
| 11 | Platform Science Enterprise ELD Manual 2.0 | 151 - 167 |
| 12 | Platform Science Fleet Management Apps Website | 168 - 172 |
| 13 | Platform Science Contact Us Website | 173 |
| 14 | Antennaplus Ultramaxx Glass Specification Sheet | 174 - 175 |