UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC and XRS CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>PLATFORM SCIENCE, INC.<br><br>    Defendant. | Case No.: 20-cv-0958-JLS-MDD<br><br>**ORDER (1) GRANTING PLAINTIFFS LEAVE TO FILE SUR-REPLY; (2) GRANTING MOTIONS TO SEAL; (3) GRANTING IN PART MOTION TO STAY PENDING *INTER PARTES* REVIEW; AND (4) DENYING WITHOUT PREJUDICE MOTION TO DISMISS**<br><br>(ECF Nos. 20, 22, 39, 50, 53, 57, 59) |

Presently before the Court is Defendant Platform Science, Inc.'s Motion to Stay Pending *Inter Partes* Review ("Mot.," ECF No. 39). Also before the Court is Plaintiffs Omintracs, LLC and XRS Corporation's Opposition to the Motion ("Opp'n," ECF No. 52) and Motion for Leave to File Documents Under Seal ("Pls.' Mot. to Seal," ECF No. 50), and Defendant's Reply in Support of the Motion ("Reply," ECF No. 54) and Motion for Leave to File Documents Under Seal ("Def.'s Mot. to Seal," ECF No. 53). Plaintiffs also have submitted an Unopposed *Ex Parte* Motion to File a Sur-Reply ("Sur-Reply Mot.," ECF No. 59), and an associated Motion to File Documents Under Seal ("Sur-Reply Mot.

to Seal," ECF No. 57). The Court took these matters under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See generally* ECF No. 56. Having carefully considered the totality of the circumstances, the papers filed in connection with this matter, and the relevant law, the Court rules as follows.

## BACKGROUND

Plaintiffs "are leading providers of fleet management solutions to transportation and logistics companies and provide a variety of innovative hardware and software solutions, including: safety and compliance, vehicle routing, dispatch and navigation, and efficiency and data analytics." ECF No. 1 ("Compl.") ¶ 2. Plaintiffs' "customizable software applications leverage [vehicle performance and location] data and information to offer customers, such as fleet managers (and their drivers), a host of logistical planning tools include[ing] unique solutions integrating hardware such as smartphones, tablets, and ruggedized handheld devices with electronic logging devices [("ELDs")] and applications." *Id.* ¶ 17. Defendant "offers fleet management, safety, and compliance software applications and in-vehicle telematics hardware to capture vehicle data and driver activity information." *Id.* ¶ 5.

On October 26, 2017, Plaintiffs filed a complaint alleging willful infringement of the following seven United States patents: U.S. Patent Nos. 9,262,934 (the "'934 patent"); 7,043,365 (the "'365 patent"); 8,626,568 (the "'568 patent); 10,255,575 (the "'575 patent"); 6,925,308 (the "'308 patent"); 7,725,216 (the "'216 patent"); and 9,147,335 (the "'335 patent") (collectively, the "Patents-in-Suit"). The Patents-in-Suit generally claim technology related to fleet management. *See id.* ¶¶ 24–37. Defendant filed a Motion to Dismiss, which is presently pending. *See generally* ECF No. 22. On January 5, 2021, Defendant filed the instant Motion to stay this litigation pending the issuance of final written decisions on nine *inter partes* review ("IPR") petitions filed by Defendant on the seven Patents-in-Suit. *See generally* ECF No 39-1 ("Mot. Mem.") at 1. The Patent Trial and Appeal Board ("PTAB") has not yet to issued decisions whether it will institute trial on the claims challenged by Defendant's IPR petitions. *See* Mot. Mem. at 3–4.

## MOTION TO FILE SUR-REPLY

Plaintiffs moved *ex parte* to file a sur-reply to Defendant's Motion to Stay and Plaintiffs attached their proposed sur-reply ("Sur-Reply") to the Motion. *See generally* Sur-Reply Mot. The Civil Local Rules do not allow for sur-replies. "District courts have the discretion to either permit or preclude the filing of a sur-reply." *Estate of Alvarado v. Tackett*, No. 13-CV-1202 W (JMA), 2018 WL 1141502, at *1 (S.D. Cal. Mar. 2, 2018) (citing *Johnson v. Wennes*, No. 08-CV-1798-L (JMA), 2009 WL 1161620, at *2 (S.D. Cal. Apr. 28, 2009)). Courts generally exercise discretion when a valid reason exists, such as where the movant raises new arguments in the Reply brief. *Id.* (citation omitted). Because the Court finds Plaintiffs' discussion of the relationship between the Parties and the competitive landscape helpful, the Court **GRANTS** Plaintiffs' Sur-Reply Motion.

## MOTIONS TO SEAL

Plaintiffs contend that their Opposition to Defendant's Motion to Stay and the supporting Declaration of Omnitracs's Chief Commercial Officer Greg Nelson incorporate Plaintiffs' "highly sensitive and confidential business information." Pls.' Mot. to Seal at 3. Additionally, Plaintiffs request portions of Exhibit A and Exhibits 7–8 be filed under seal because the documents contain the Parties' "highly confidential business information." Sur-Reply Mot. to Seal at 1. Similarly, Defendant contends that its Reply in support of its Motion to Stay contains "confidential, proprietary and highly sensitive business information." Def.'s Mot. to Seal at 2.

Sealing court records implicates the "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978). A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of public access. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted). The showing required to meet the burden depends upon whether the documents relate to a motion that is "more than tangentially related to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp. LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). A party need only show good cause to seal documents

related to non-dispositive motions. *See Kamakana*, 447 F.3d at 1180 (citation omitted). Rule 26(c) of the Federal Rules of Civil Procedure provides broad discretion for a trial court to permit sealing of documents for, *inter alia*, the protection of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G).

For purposes of the present motion to stay, which is a non-dispositive motion, the Court finds good cause to seal portions of Plaintiffs' Opposition, Defendant's Reply, the Declaration of Greg Nelson, and Exhibit A. The Court similarly finds good cause to seal Exhibits 7 and 8 in their entirety. *See In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (applying the good cause standard under Fed. R. Civ. P. 26(c) to non-dispositive motions). Accordingly, the Court **GRANTS** Plaintiffs and Defendant's motions to seal (ECF Nos. 50, 53, 57). The Clerk of Court **SHALL FILE** an unredacted version of Plaintiffs' Opposition, Defendant's Reply, the Declaration of Greg Nelson, Exhibit A, Exhibit 7, Exhibit 8 under seal (seals lodged at ECF Nos. 51, 54, 58). The Clerk of Court **SHALL FILE** a redacted version of the same documents on the publicly available docket.

## MOTION TO STAY

### I.  Legal Standard

"District courts have inherent authority to stay proceedings before them." *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003), *abrogated on other grounds by Ryan v. Gonzales*, 568 U.S. 57 (2013). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

In evaluating whether to stay an action pending IPR, courts apply the same framework as motions to stay pending patent reexamination and consider the following three factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a

stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *DMF, Inc. v. AMP Plus, Inc.*, No. 2:18-cv-07090-CAS(GJSx), 2019 WL 9077477, at *6 (C.D. Cal. Dec. 13, 2019) (quoting *Universal Elecs., Inc. v. Universal Remote Control*, 943 F. Supp. 2d 1028, 1030–31 (C.D. Cal. 2013)). These considerations are nonexhaustive, and "the totality of the circumstances governs." *Universal Elecs., Inc.*, 943 F. Supp. 2d at 1035 (quoting *Allergan Inc. v. Cayman Chem. Co.*, No. SACV 07-01316-JVS (RNBx), 2009 WL 8591844, at *2 (C.D. Cal. Apr. 9, 2009)) (internal quotation marks omitted). "The moving party bears the burden of demonstrating that a stay is appropriate." *Apple Inc. v. IXI IP, LLC*, No. 19-CV-06769-HSG, 2021 WL 389214, at *1 (N.D. Cal. Jan. 26, 2021) (citing *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at *2 (N.D. Cal. May 1, 2015)).

"There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of re-examination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery." *Masimo Corp. v. Wireless*, No. 19-CV-01100-BAS-NLS, 2021 WL 321481, at *2 (S.D. Cal. Feb. 1, 2021) (quoting *Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, No. SACV 09–0843 AG (MLGx), 2010 WL 1462110, at *6 (C.D. Cal. Apr. 12, 2010)). "While case law supplies these general considerations, the Court ultimately must decide whether to issue a stay on a case-by-case basis." *Masimo Corp.*, 2021 WL 321481, at *2 (citing *Asetek Holdings, Inc. v. Cooler Master Co., Ltd.*, No. 13–cv–00457–JST, 2014 WL 1350813, at *1 (N.D. Cal. Apr. 3, 2014)).

## II. Analysis

### A. *Stage of the Proceedings*

First, the Court considers "the stage of litigation, i.e., whether discovery is almost complete and whether a trial date has been set." *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, No. 16-CV-1544 JLS (NLS), 2016 WL 9047159, at *2 (S.D. Cal. Oct. 7, 2016) (quoting *Wave Loch, Inc. v. Am. Wave Machs., Inc.*, No. 08cv928-MMA (WMc), 2009 WL 9102848, at *1 (S.D. Cal. Feb. 19, 2009)). "The early stage of a litigation weighs in favor

of a stay pending reexamination." *Wireless Recognition Techs. v. A9.com Inc.*, No. 5:12-CV-01217-EJD et al., 2012 WL 4005459, at *2 (N.D. Cal. Sept. 11, 2012). As to discovery, the concern is not so much how much discovery has already occurred as "whether discovery is nearing completion." *DNA Genotek Inc.*, 2016 WL 9047159, at *2 (quoting *Sorensen ex rel. Sorensen Research & Dev. Tr. v. Black & Decker Corp.*, No. 06cv1572-BTM (CAB), 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007)).

Defendant contends that the case is still in its infancy because the parties are in their first wave of discovery and are still negotiating discovery orders. *See* Mot. Mem. at 6–7. Defendant argues that "given the vast amount of work ahead in this case, and in light of the expected scheduling delays, the first factor weighs heavily in favor of a stay." *Id.* at 7. Defendant further contends that Plaintiffs are "entirely responsible for the discovery delay," as Plaintiffs requested a Rule 26(f) conference more than six months after filing the case. Reply at 2. Plaintiffs counter that "[h]aving reached agreement on most portions of the schedule, the parties will make significant headway on discovery well before any institution decision is issued, let alone before all institution decisions are due." Opp'n at 28. Plaintiffs further contend that the discovery delay was due to Defendant's filing of a partial motion to dismiss, which suspended the time for Defendant to file an answer. *See id.* at 30. The filing of an answer is what triggers the Rule 26(f) conference. *See id.*; *see also* S.D. Cal. Civ. R. 16.1.c.1 (stating parties and counsel must appear for the assigned magistrate judge for an Early Neutral Evaluation and Case Management Conference ("ENE/CMC") within forty-five days of the filing of an answer).

The Court agrees with Defendant that the case is still in its infancy. Since Plaintiff instituted this action, the Parties have had their Rule 26(f) conference, exchanged initial disclosures, and served and responded to their first round of document requests and interrogatories. *See* Opp'n at 21. A trial date has not been set, pretrial deadlines are still being negotiated, and the Parties are in the early stages of discovery, which started in the third week of December. *See* Mot. Mem. at 6–7; *see also ASCII Corp.*, 844 F. Supp. at 1381 (granting stay where "the parties are in the initial stages of the lawsuit and have

undertaken little or no discovery"). Although Plaintiffs could have requested a Rule 26(f) conference after Defendant's first appearance on June 15, 2020, it was not required. *See Zavala v. Kruse-W., Inc.*, No. 119CV00239DADSKO, 2019 WL 3219254, at *3 (E.D. Cal. July 17, 2019) (holding "[t]he Rule 26(f) conference shall occur 'as soon as practicable' following the Court's ruling on Defendants' motion to dismiss").

Further, courts have held much later stages in litigation have weighed towards a stay. *See Tierravision, Inc. v. Google, Inc.*, 2012 WL 559993, *1–*3 (S.D. Cal. Feb. 21, 2012) (finding this factor favored a stay where the parties had already exchanged infringement and invalidity contentions and prepared claim construction briefs because "there [was] more work ahead of the parties and the Court than behind the parties"); *SAGE Electrochromics, Inc. v. View, Inc.*, No. 12-CV-06441-JST, 2015 WL 66415, at *2 (N.D. Cal. Jan. 5, 2015) (finding this factor favored a stay where the parties had "exchanged documents, responded to discovery requests, litigated a discovery dispute, underwent claim construction for four patents, and briefed claim construction on the remaining five patents"); *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. EDCV 14-01153 VAP, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015) (finding the stage of litigation weighed in favor of stay where "fact discovery [was] not yet complete, expert discovery ha[d] not yet begun, and a trial date ha[d] not yet been set"). Accordingly, the Court finds that the current stage of the proceeding weighs in favor of a stay.

### B. Undue Prejudice or Clear Disadvantage to Plaintiffs

Second, the Court considers "whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party." *Sorensen*, 2009 WL 5184497, at *2. The "delay inherent in the reexamination process does not constitute, by itself, undue prejudice." *ProtectConnect*, 2011 WL 1559762, at *3 (quoting *Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635 SBA, 2009 WL 3078463, at *3 (N.D. Cal. Sept. 28, 2009)) (internal quotation marks omitted). "Rather, proper considerations include whether the nonmovant will be prejudiced 'by delaying access to discovery and allowing Defendant's alleged infringement to continue in the interim.'" *DNA Genotek Inc.*, 2016

WL 9047159, at *3 (quoting *George Kessel Int'l Inc. v. Classic Wholesales, Inc.*, 544 F. Supp. 2d 911, 912 (D. Ariz. 2008). "In making this evaluation, courts have considered factors which include: (1) the timing of the reexamination request; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties." *Wi-LAN, Inc. v. LG Elecs., Inc.*, No. 317CV00358BENMDD, 2018 WL 2392161, at *2 (S.D. Cal. May 22, 2018) (citations omitted).

### 1. Timing of Requests for Reexamination and Stay

"Because of the delay that may accrue by virtue of the PTO instituting an IPR trial on a patent-in-suit, this Court expects defendants to evaluate whether to file, and then to file, IPR petitions as soon as possible after learning that a patent may be asserted against them." *TPK Touch Solutions*, 2013 WL 6021324, at *4. "[T]he less time that a party waits to file a motion to stay pending reexamination, the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012).

Plaintiffs filed the Complaint on May 26, 2020, and Defendant subsequently filed the first IPR petition on September 23, 2020 and the last petition on December 15, 2020. *See* Mot. Mem. at 3; *see also Lodge Mfg. Co. v. Gibson Overseas, Inc.*, No. CV188085PSGGJSX, 2019 WL 9443180, at *4 (C.D. Cal. Sept. 24, 2019) ("A party may not file IPR proceedings more than one year after that party has been served with a complaint." (citing 35 U.S.C. § 315(b)).  Defendant contends that "it prepared and filed its IPRs promptly when sued" and "[t]here is nothing from the timing of the IPR petitions to suggest dilatory motives or tactics." Mot. Mem. at 9.  The Court finds Defendant's actions reasonable and not intended to cause undue delay or prejudice in the proceedings. *See Evolutionary Intelligence LLC v. Yelp Inc.*, No. C–13–03587 DMR, 2013 WL 6672451, at *9 (N.D. Cal. Dec. 18, 2013) (finding that petitioning for IPR five months after being served preliminary infringement contentions was reasonable timing); *SAGE Electrochromics*, 2015 WL 66415, at *4 ("[The defendant] acted with reasonable diligence in filing its IPR petitions within six months of being served with [the plaintiff's] revised

infringement contentions."). Additionally, Defendant filed the instant Motion to Stay on January 5, 2021. *See generally* Mot. Accordingly, this sub-factor does not support a finding of undue delay because Defendant filed the Motion to Stay shortly after filing the last IPR petition. This sub-factor thus weighs in favor of a stay.

### 2. Status of Reexamination Proceedings

"[T]his sub-factor weighs against issuing a stay when the PTO has not yet decided whether to grant IPR." *SAGE Electrochromics, Inc.*, 2015 WL 66415, at *4 (citing *TPK Touch Solutions*, 2013 WL 6021324, at *5). Because the IPRs are in the pre-institution phase until June 2021, this sub-factor weighs against a stay at this time.

### 3. Relationship of the Parties

"Courts are hesitant to grant a stay if the parties are direct competitors." *See Tric Tools, Inc. v. TT Techs., Inc.*, No. 12-CV-3490 YGR, 2012 WL 5289409, at *2–3 (N.D. Cal. Oct. 25, 2012) (collecting cases); *see also VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) ("[C]ompetition between parties can weigh in favor of finding undue prejudice."). This is "because of the risk that Plaintiff may suffer harm 'that is not compensable by readily calculable money damages.'" *TPK Touch Solutions*, 2013 WL 6021324, at *6 (quoting *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. Iptronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011)). "Some courts require evidence to substantiate an argument that direct competition will result in prejudice to the non-moving party." *Masimo Corp.*, 2021 WL 321481, at *5 (quoting *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1037 (N.D. Cal. 2015)).

The record is unclear regarding whether the Parties are direct competitors. Defendant contends that there are numerous other, more prominent competitors in the market and has presented evidence of sixty-three pages of currently registered ELDs on the U.S. Department of Transportation's Federal Motor Safety Carrier Administration's

///

///

///

website.[1]  Further, Defendant provides evidence that Plaintiffs listed six competitors, including Defendant, as the "Competitive Landscape" during a presentation at an annual industry conference.  *See* Reply at 6–7.  Defendant contends that the top for-hire fleets in the market use as many as eleven different providers and argues that other market-driven considerations attributed to Plaintiffs' loss in market share.  *See id.* at 7.  Where the parties are not direct competitors but rather share the market with multiple players, undue prejudice as a result of the stay is less likely.  *See Inogen, Inc. v. Inova Labs*, *Inc.*, No. SACV 11-1692-JST ANX, 2012 WL 4748803, at *3 (C.D. Cal. Mar. 20, 2012) (finding undue prejudice was unlikely where the defendant provided evidence that the market had ten participants, "diluting the direct effect of [the defendant's] sales on [the plaintiff's] market share").

In response, Plaintiffs contend that Defendant "mischaracterizes the market" and inflates the number of market participants.  Sur-Reply at 3–4.  Plaintiffs argue that the relevant market should be limited to fleets of more than 1,000 vehicles.  *See* Declaration of Greg Nelson ("Nelson Decl.," ECF No. 52-1) ¶ 3.  Plaintiffs further assert that Defendant's own documentation includes only five enterprise competitors, including Plaintiffs, and that two of those competitors are "only partially in the enterprise market." Sur-Reply at 4; Ex. 7 (ECF No. 58-1) at 5.  The Court is persuaded by Plaintiffs' evidence of the relevant market landscape and finds that both Parties provide "enterprise-grade fleet-management solutions to customers with large fleets of vehicles."  Opp'n at 18; *see also* Sur-Reply Ex. 7 at 5.  The Court thus finds that there is a total of five to six competitors in

---

[1] These documents are available to the public and are certified and maintained by an official office.  Thus, their accuracy cannot be reasonably disputed.  Accordingly, the Court takes judicial notice of the sixty-three pages listing registered ELDs on the Federal Motor Carrier Safety Administration's website <https://eld.fmcsa.dot.gov/List>.  However, the Court does not at this time take notice of the truth of the facts asserted therein.  *See Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1084 n.1 (S.D. Cal. 2016) ("[T]he court can take judicial notice of 'public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies.'" (quoting *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1101, 1033 (C.D. Cal. 2015)); *Marsh v. Cnty. of San Diego*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006) ("[A] court may take judicial notice of the existence of matters of public record"; it should not, however, take notice of "the truth of the facts cited therein").

the relevant enterprise market, with Plaintiffs being the largest provider. *Compare* Sur-Reply Ex. 7 (ECF No. 58-1) at 5 *with* Reply at 2. While there are multiple players in the market, there are not enough market participants to make competition between the Parties unlikely. *See Masimo Corp.*, No. 19-CV-01100-BAS-NLS, 2021 WL 321481, at *5 (finding that eleven competitors in the market "limit[ed] the danger of loss of market share."). In light of the Parties' conflicting evidence, the Court finds it unclear whether Plaintiffs and Defendant are direct competitors.

Plaintiffs further contend they are suffering irreparable harm because Defendant has taken existing customers where "it is reasonable to expect that these customers would have continued partnering with [Plaintiffs] had [Defendant's] infringing products not been on the market." Opp'n at 12–13. Defendant contends that Plaintiffs failed to present evidence that the loss of these customers was due to products resting on the Patents-in-Suit. *See* Reply at 5. Defendant provides other factors as to why customers may have switched, including specific reasoning as to why one enterprise customer switched to Defendant's platform. *See* Reply at 3, 8; *see generally* Reply Ex. F (ECF No. 55-7). Plaintiff counters that Defendant would not exist in the enterprise market without the allegedly infringing technology, and the lost customers "were using or had available to them" Plaintiffs' comparable technology. Sur-Reply at 2. Without more, Plaintiffs have not persuaded the Court that there is a nexus between the loss in enterprise customers and Defendant's alleged infringement. Although Plaintiffs provide evidence regarding the amount of lost revenue due to the loss of these customers, whether the customers' moving of their business is attributable to the allegedly infringing technology is unclear, and therefore Plaintiffs' evidence does not support a finding of direct competition or irreparable injury. *See Neste Oil Oyj v. Dynamic Fuels, LLC*, No. CIV.A. 12-662-GMS, 2013 WL 424754, at *3 (D. Del. Jan. 31, 2013) ("Where the question of 'direct competition' remains unanswered, courts have sometimes considered whether the plaintiff sought a preliminary injunction.").

Ultimately, the Court finds that Plaintiffs' failure to pursue injunctive relief undermines their position that monetary relief is inadequate to compensate for any harm

incurred as a result of the stay. *Blast Motion v. Zepp Labs*, 2016 WL 5107678, at *5 (S.D. Cal. 2016) ("[T]he Court does find that Plaintiff's failure to pursue a preliminary injunction undermines its position that monetary damages are insufficient."). Some courts have found that a plaintiff's decision not to assert preliminary injunctive relief undercuts a party's argument that a stay would be prejudicial. *See Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*, No. 18-CV-06737-JST, 2019 WL 1905161, at *6 (N.D. Cal. Apr. 29, 2019) ("[That Plaintiff] did not seek injunctive relief further undercuts its prejudice argument."); *Pragmatus Telecom, LLC v. NETGEAR, Inc.*, No. C 12-6198 SBA, 2013 WL 2051636, at *3 (N.D. Cal. May 14, 2013) ("[The plaintiff] only seeks damages, not injunctive relief. As such, any delay resulting from a stay will not result in undue prejudice."); *Masimo Corp.*, 2021 WL 321481, at *6 ("Even if [the plaintiff] suffers some irreparable harm in the form of loss of market share, [the plaintiff's] failure to seek preliminary injunctive relief undercut [its] argument that [it] cannot be made whole by monetary damages.'") (citations omitted). However, the Court is somewhat persuaded by Plaintiffs' reasoning for not filing injunctive relief, including that these customers continued to migrate off of Plaintiffs' platforms after the case was filed. *See* Sur-Reply at 5.

Defendant's request to stay this action until the PTAB issues final written decisions on the pending IPRs is premature. However, as the last decision of whether to institute IPR will occur in June, the Court finds that there is not sufficient evidence to demonstrate that a limited stay for less than four months will cause Plaintiffs irreparable injury. The stay will be in place no longer than four months if the PTAB does not grant Defendant's IPR requests, which weighs against finding undue prejudice. *Blast Motion*, 2016 WL 5107678, at *5 ("[I]f the PTO does not grant Defendant's IPR requests, the stay will be in place no longer than five months, weighing against finding undue prejudice.") (citations omitted). Therefore, the Court finds this sub-factor weighs slightly in favor of a stay.

        4.     Totality of the Circumstances

Ultimately, "the totality of the circumstances governs," *Universal Elecs.*, 943 F. Supp. 2d at 1035 (quoting *Allergan*, 2009 WL 8591844, at *2) (internal quotation marks

omitted), and "the court must decide stay requests on a case-by-case basis," *TPK Touch Solutions*, 2013 WL 6021324, at *1. Taking into account the short time until the last decision whether to institute IPR and Defendant's lack of bad faith or delay, the Court finds this factor weighs slightly in favor of a limited stay.

### C.     *Simplification of Issues in Question*

With regards to IPR, "[s]ome of the advantages of a stay include the fact that the record of the reexamination may be entered at trial[;] that the PTO's expertise will govern[,] thus simplifying the case; that evidentiary and other issues will be further narrowed following a reexamination; and that costs will be reduced." *Spellbound Dev. Grp., Inc. v. Pac. Handy Cutter, Inc.*, No. SACV 09-951 DOC (Anx), 2011 WL 1810961, at *2 (C.D. Cal. May 12, 2011). IPR may also alleviate discovery problems and lead to settlement. *See Allergan*, 2009 WL 8591844, at *1.

Defendant asserts that the pending IPRs "have the potential to take these patents entirely out of the case (if determined to be invalid) and/or narrow the scope of invalidity challenges (by way of estoppel under 35 U.S.C. § 315(e)(2))." Mot. Mem. at 12. Further, Defendant contends "the Court and jury may benefit from the PTAB's analysis of the technology in this case." *Id.* Plaintiffs counter that, in view of the facts and statistics surrounding whether the PTAB will institute an IPR, any simplification from a stay is merely speculative. *See* Mot. at 17; *see also id.* at 16 ("The PTAB's overall institution rate is currently 53%. At this rate, even in the best case scenario, only 5 of the 9 petitions are expected to be instituted." (footnote and citation omitted)).

Here, Defendant filed the instant Motion to Stay prior to the PTAB electing whether to institute IPR proceedings. Some courts have found that any simplification of the issues in the pre-institution phase is merely speculative. *See TPK Touch Solutions,* 2013 WL 6021324, at *4 ("[T]he filing of an IPR request by itself does not simplify the issues in question and trial of the case. Ultimately, the PTO may not institute IPR proceedings."); *Overland Storage, Inc. v. BTD AG (Germany)*, No. 10-CV-1700 JLS (BLM), 2013 WL 12066130, at *3 (S.D. Cal. Dec. 10, 2013) ("Defendant['s] alleged harm is merely

theoretical given that the inter partes review has not yet been granted or denied."); *Security People Inc. v. Ojmar US, LLC*, 2015 WL 3453780, at *3 (N.D. Cal. May 29, 2015) ("[T]he uncertainty surrounding whether the PTO will elect to institute IPR proceedings weighs against a finding of likelihood of simplification of issues.").

Following the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, this factor in the pre-institution phase is less speculative now that the PTAB is statutorily required to address every contested claim if the PTAB grants review of an IPR petition. 138 S. Ct. 1348 (2018); *see also Wi-Lan Inc.*, 2018 WL 2392161, at *2 ("While review is not guaranteed and, therefore, the benefits of review are only speculative at this juncture, in light of the Supreme Court's mandate to review all contested claims upon a grant of IPR and the complexity of this case the Court finds this factor weighs in favor of a limited stay.").

In *Blast Motion*, the court found this factor weighed in favor of a stay where the PTAB's decision on whether to institute IPR proceedings were expected within five months, and the Defendant challenged all of the patents in the underlying suit. 2016 WL 5107678, at *6. Here, similar to *Blast Motion*, the last decision whether to institute IPR is expected within four months and Defendant has challenged all the Patents-in-Suit. *See* Mot. Mem. at 9 ("The [PTAB] will likely issue institution decisions on four of the IPRs . . . by April 2021, and remainder by June 2021.") (citations omitted). Because Defendant has filed IPR petitions on all of the seven Patents-in-Suit, it is likely that the PTAB's review would streamline the issues before the court. *See Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613-BLF, 2014 WL 6068407, at *2 (N.D. Cal. Nov. 13, 2014) (where the patents subject to IPR were a significant portion of the underlying action, finding this factor favored a stay in the pre-institution phase because "[a]t a minimum, instituting a brief, limited stay of approximately five months to see whether and how the PTAB will act on Defendant's IPR petitions will conserve judicial resources and avoid inconsistent results") (citation omitted). Therefore, the Court finds this factor weighs in favor of a stay.

///

### D. Totality of the Circumstances

Ultimately "the totality of the circumstances governs," *Universal Elecs.*, 943 F. Supp. 2d at 1035 (quoting *Allergan*, 2009 WL 8591844, at *2) (internal quotation marks omitted), and "the court must decide stay requests on a case-by-case basis," *TPK Touch Solutions*, 2013 WL 6021324, at *1. Although the Court finds Plaintiffs' loss of customers concerning, whether this loss is attributed to Defendant's alleged infringement is unclear. In addition, Plaintiffs' failure to seek preliminary injunctive relief undercuts their assertion of irreparable injury caused by a limited stay. The Court finds a limited stay of less than four months to prevent potentially unnecessary discovery and conserve judicial resources will not unduly prejudice Plaintiffs while the Court waits for the PTAB's institution decisions. *See Blast Motion*, 2016 WL 5107678, at *6 ("Although the Court harbors some concerns about Plaintiff's allegations of irreparable harm in the form of loss of market share and price erosion, the short duration of the stay and Plaintiff's failure to seek preliminary injunctive relief undercut Plaintiff's argument that Plaintiff cannot be made whole by monetary damages.").

On balance, the early stage in the litigation, Defendant's lack of dilatory tactics, and the short-term length of the stay ultimately outweigh Plaintiffs' attenuated allegations of undue prejudice. *See, e.g.*, *Sec. People, Inc. v. Ojmar US, LLC*, No. 14-CV-04968-HSG, 2015 WL 3453780, at *5 (N.D. Cal. May 29, 2015) (granting a stay prior to the PTO's institution of IPR despite finding that "the undue prejudice factor is either neutral or weighs slightly against a stay of this action"). Therefore, in light of the Court's interest in managing its docket efficiently, the Court **GRANTS IN PART** Defendant's Motion to Stay. *See Wi-LAN*, 2018 WL 2392161, at *2 ("Although, the PTO has not yet decided whether to grant review of [defendant's] petitions, the [c]ourt finds a limited stay would further promote the interests of justice and judicial economy."). The Court will revisit whether the stay should be lifted when the PTAB issues its last institution decision. Of course, should the PTAB decide not to institute review on any of the Patents-in-Suit, the Court will lift the stay.

# MOTION TO DISMISS

Also presently before the Court is Defendant's Motion to Dismiss (ECF No. 22). Among other claims that Plaintiffs' Complaint is legally deficient, Defendant specifically argues that "two of the asserted patents fail to claim patentable subject matter and should be found invalid under 35 U.S.C. § 101." MTD at 1. The Court acknowledges that the posture of the case may change depending on the PTAB's decisions of whether to institute IPRs. Additionally, if IPRs are instituted, the decision of the PTAB could simplify the issues presently before the Court in Defendant's Motion to Dismiss.

Accordingly, in the interest of judicial economy, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion to Dismiss (ECF No. 22) and its associated motion to seal (ECF No. 20). Defendant is granted leave to refile these motions, to the extent they are still relevant, when the stay is lifted.

# CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Plaintiffs' Unopposed *Ex Parte* Motion to File a Sur-Reply (ECF No. 59) is **GRANTED**.

2. Plaintiffs and Defendant's Motions to Seal filed in connection with the Motion to Stay (ECF Nos. 50, 53, 57) are **GRANTED**.

3. Defendant's Motion to Stay (ECF No. 39) is **GRANTED IN PART**. This action is **STAYED** pending the issuance of the last of the PTAB's institution decisions on the Patents-in-Suit. The parties **SHALL FILE** a joint status report within fourteen (14) days of the issuance of the last of the PTAB's decisions on whether to institute IPRs, informing the Court of the PTAB's decisions. At that time, the Court will issue an order addressing further proceedings in this case.

///
///
///

1   4.   Defendant's Motion to Dismiss and associated motion to seal (ECF Nos. 20,
2        22) are **DENIED WITHOUT PREJUDICE**.
3   **IT IS SO ORDERED.**
4   Dated: March 8, 2021

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge