UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC and XRS CORPORATION,<br><br>                                         Plaintiffs,<br><br>v.<br><br>PLATFORM SCIENCE, INC.,<br><br>                                         Defendant. | Case No.:  20-cv-958-CAB-DDL<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR ISSUANCE OF LETTER ROGATORY**<br><br>**[Dkt. No. 279]** |

Before the Court is Defendant Platform Science, Inc.'s ("Defendant") unopposed Motion for Issuance of Letters Rogatory to the Ontario Superior Court of Justice for Colin D. Warkentin (the "Motion").  Dkt. No. 279.  The Court held a hearing on the Motion on March 22, 2023, at which counsel for Plaintiffs Omnitracs, LLC and XRS Corporation ("Plaintiffs") and Defendant appeared.  The Court has considered the moving papers, the applicable law, and the arguments of counsel.  For the reasons stated below and at the hearing, the Motion is **GRANTED IN PART**.

Defendant seeks documents and testimony from Colin D. Warkentin, who is the first named inventor on two of the patents-in-suit (the '568 and '575 patents) and a former employee of XRS Corporation.  Dkt. No. 279 at 4.  According to Defendant, Mr. Warkentin possesses unique knowledge regarding the conception and reduction to practice regarding

the '568 and '575 patents.  *Id.* at 4-5, 11.  Defendant further asserts that Mr. Warkentin is uniquely knowledgeable about the "key prior art products" that were developed by XRS Corporation during his employment there.  *Id.* at 11.  Defendant also seek any documents that Mr. Warkentin has in his possession, custody and control related to the development of these products.  Plaintiffs do not oppose the Motion and indeed have identified Mr. Warkentin as a witness with relevant knowledge in their Rule 26 disclosures.  *See* Dkt. No. 279-9 at 9.  Defendants have tried to contact Mr. Warkentin to solicit his voluntary cooperation with their discovery efforts, but to no avail.  Dkt. No. 279 at 9.

"A letter rogatory is 'a formal written request sent by a court to a foreign court' for the purpose of obtaining evidence, including depositions and documents, in a pending action."  *Scalia v. Int'l Longshore & Warehouse Union*, 337 F.R.D. 281, 287 (N.D. Cal. 2020) (citation omitted).  The issuance of such a request is within the Court's inherent powers and is also implicitly authorized by 28 U.S.C. § 1781.  *See Asis Internet Servs. v. Optin Global, Inc.*, No. C-05-05124 JCS, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007); see also Fed. R. Civ. P. 28(b)(1)(B) (providing for the taking of foreign depositions by means of a letter rogatory).  Whether to do so is a matter of the Court's discretion.  *Scalia*, 337 F.R.D. at 288.  As with any other discovery request, discovery sought by means of a letter rogatory must be within the scope of discovery defined by Rule 26(b).  *See id.*

Defendant has provided the Court with its proposed letter rogatory setting forth the requested discovery, which consists of 11 document requests and 13 topics for examination at deposition.  See Dkt. No. 279-1.

Having reviewed Defendant's Motion and considered the information provided by counsel at the March 22 hearing, the Court finds that the deposition testimony and documents sought by Defendant are within the scope of Rule 26(b) with the exception of proposed deposition topic number 13.  Therefore, and for good cause shown, Defendant's Motion is **GRANTED IN PART**.  The Court hereby authorizes a request for discovery from Colin D. Warkentin consistent with the terms of this Order and as reflected in the attached Letter Rogatory.  It shall be the responsibility of the parties to deliver the Letter

Rogatory to the appropriate authorities in Canada.  A signed copy of the Letter Rogatory bearing the Court's seal is available to be picked up from the Clerk of the Court, whose address and business hours are available on the Court's website.

**IT IS SO ORDERED.**

Dated: March 24, 2023

_____
Hon. David D. Leshner
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC and XRS CORPORATION,<br><br>                                    Plaintiffs,<br><br>v.<br><br>PLATFORM SCIENCE, INC.,<br><br>                                    Defendant. | Case No.:  20-cv-958-CAB-DDL<br><br>**LETTER ROGATORY TO THE ONTARIO SUPERIOR COURT FOR JUSTICE** |

**TO  THE  APPROPRIATE  JUDICIAL  AUTHORITY  OF  THE  STATE  OF CANADA:**

The United States District Court for the Southern District of California (hereafter "United States District Court") presents its compliments to the Ontario Superior Court of Justice and respectfully requests international judicial assistance to obtain evidence to be used in the above-captioned civil action proceeding before this Court. The United States District Court has determined that it would further the interests of justice if the Ontario Superior Court of Justice utilizes its proper and usual process to summon Colin D. Warkentin to appear before a person empowered under Canadian law to administer oaths and take testimony forthwith, to give testimony under oath or affirmation by questions and answers upon oral examination in respect of the matters and issues identified in Schedule

1

B, and permit the parties to create a written transcript and video recording of such testimony. The United States District Court has also determined that it would further the interests of justice if the Ontario Superior Court of Justice utilizes its proper and usual process to summon Colin D. Warkentin to produce copies of the documents in his possession, custody, or control that are identified in Schedule A.

The applicant for this letter is Defendant Platform Science, Inc. Counsel is available to answer any questions the Ontario Superior Court of Justice may have.

This request is made pursuant to Rule 4(f)(2)(B) of the Federal Rules of Civil Procedure; the All Writs Act, 28 U.S.C. §1651, and 28 U.S.C. §1781 (permitting the transmittal of letters rogatory through the district courts and the Department of State); the Ontario Evidence Act, R.S.O. 1990, c. E. 23; and the Canada Evidence Act, R.S.C., 1985, c. C-5. The United States District Court is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the attendance of witnesses and production of documents both within and outside its jurisdiction. According to information provided by the parties in the above-captioned matter, Colin D. Warkentin resides in Canada, within the Province of Ontario, and has or is likely to have possession of the documents specified in Schedule A and knowledge of the subject matter specified in Schedule B herein.

The testimony and production of documents are intended for use at trial or directly in the preparation for trial in this case, and in the view of the United States District Court, will be relevant to claims and defenses in this case. This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would if the litigation were conducted in a Canadian court. The United States District Court is satisfied that the evidence sought to be obtained through this request is relevant and necessary and cannot reasonably be obtained by other methods. Because the United States District Court lacks authority to compel participation of Mr. Warkentin and, such participation being necessary in order that

justice be served in the above-captioned proceedings, the United States District Court respectfully requests assistance from the Ontario Superior Court of Justice.

1.   **SENDER**

Honorable David D. Leshner

United States Magistrate Judge

United States District Court for the Southern District of California

333 West Broadway

San Diego, CA 92101

2.   **CENTRAL AUTHORITY OF THE REQUESTED STATE**

Ontario Superior Court of Justice, St. Catharines Courthouse

59 Church Street

St. Catharines, ON

L2R 7N8

3.   **PERSON TO WHOM THE EXECUTED REQUEST IS TO BE RETURNED**

Brent P. Ray

bray@kslaw.com

KING & SPALDING LLP

110 N. Wacker Dr., Ste. 3800

Chicago, IL 60606

Tel: 312-764-6925

4.   **SPECIFICATION OF DATE BY WHICH REQUESTING AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTER OF REQUEST**

A response is requested as soon as possible, in order to ensure that the evidence may be obtained before the deadline for discovery in this case, currently set for June 23, 2023.

/ / /

/ / /

5.    **NAMES AND ADDRESS OF THE PARTIES AND THEIR**
      **REPRESENTATIONS OF THE CASE (ARTICLE 3(B))**

The evidence requested relates to the action *Omnitracs, LLC and XRS Corporation v. Platform Science, Inc.*, Case No. 3:20-cv-0958-CAB-DDL, pending in the United States District Court for the Southern District of California.

**The parties and their representatives are listed herein as follows:**

a.    Plaintiffs

Omnitracs, LLC and XRS Corporation

*Contact through counsel identified below:*

**Michael W. De Vries** (S.B.N. 211001)
michael.devries@kirkland.com
**Justin Singh** (S.B.N. 266279)
Justin.singh@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

**Adam R. Alper** (S.B.N. 196834)
adam.alper@kirkland.com
**Akshay S. Deoras** (S.B.N. 301962)
akshay.deoras@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

**Gianni Cutri** (Admitted Pro Hac Vice)
gianni.cutri@kirkland.com
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

/ / /
/ / /

**Leslie M. Schmidt** (Admitted Pro Hac Vice)
leslie.schmidt@kirkland.com
**Aaron D. Resetarits** (Admitted Pro Hac Vice)
aaron.resetarits@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

b.   Defendant

Platform Science, Inc.

*Contact through counsel identified below:*

**Brent P. Ray** (Admitted Pro Hac Vice)
bray@kslaw.com
KING & SPALDING LLP
110 N. Wacker Dr., Ste. 3800
Chicago, IL 60606
Tel: 312-764-6925

**Angela Tarasi** (Admitted Pro Hac Vice)
atarasi@kslaw.com
KING & SPALDING LLP
1401 Lawrence St., Ste. 1900
Denver, Co 80202
Tel: 720-535-2300

**6.    NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS**

**A.    NATURE AND PURPOSE OF THE CLAIMS**

Omnitracs, LLC and XRS Corporation ("Plaintiffs") filed this action against Platform Science, Inc. ("Defendant") alleging infringement of five United States patents including U.S. Patent Nos. 8,626,568 ("the '568 patent") and 10,255,575 ("the '575 patent"). Counsel for Defendant will provide copies of the U.S. Patents referenced herein for the Ontario Superior Court of Justice's review.  Defendant has asserted affirmative defenses and counterclaims of noninfringement and invalidity as to the asserted patents.

Plaintiff XRS Corporation ("XRS"), formerly known as XATA Corporation, is a provider of fleet management solutions to transportation and logistics companies. Their solutions include smartphone- and tablet-based systems that enable trucking companies to manage their fleets and comply with Department of Transportation (DOT) regulations promulgated by the Federal Motor Carrier Safety Administration (FMSCA).

Defendant is an enterprise-grade Internet of Things ("IoT") fleet management platform. Defendant offers an open platform upon which commercial fleets may freely develop, customize, and integrate telematics, applications and IoT solutions for their businesses and end-users. Its customers have the power to create or choose solutions and apps they need from among a variety of partners, which can be deployed in their vehicles.

### B.    COLIN D. WARKENTIN

Colin D. Warkentin is a former employee of XRS, but he is no longer employed by any party to this suit. During his employment at XRS, Mr. Warkentin served as Vice President of Development and Chief Operating Officer. Whether Mr. Warkentin is represented by counsel and, if so, the identity of his counsel, is unknown.

Mr. Warkentin is listed as the first named inventor on the '568 and '575 patents. Mr. Warkentin has also been identified by Plaintiffs as being knowledgeable of the work and invention that led to the '568 and '575 patents. Furthermore, documents provided by Plaintiffs evidencing the date of conception and reduction to practice of the asserted claims of the '528 and '575 patents explicitly show that Mr. Warkentin authored revisions in design documents for implementing key limitations found in the claims of the '568 and '575 patents.

### C.    EVIDENCE TO BE OBTAINED AND PURPOSE

The evidence to be obtained consists of documents for use at trial or in preparing for trial in this matter. Defendant has also requested oral testimony from Mr. Warkentin. Based on information provided by the parties to these proceedings, the United States District Court concludes that Mr. Warkentin may possess of information and documents relevant to the parties' claims and defenses and defenses pertaining the infringement and

validity of the '528 and '575 patents. The requested documents may therefore be needed for use in the trial or other adjudication of the action.

The United States District Court further concludes that it is in the interests of justice for Mr. Warkentin to be examined on the topics listed in Schedule B and to produce the documents listed in Schedule A.  Production of the documents in Schedule A is within the scope of permissible discovery in these proceedings.

To the extent that some of the documents in Schedule A, and the testimony sought in Schedule B, may call for confidential, or trade secret information. The United States District Court has issued a Protective Order [Dkt. 176] that governs this case, and extends to the document productions or testimony of third parties including Mr. Warkentin. Counsel for Defendant will provide a  copy of the governing Protective Order for the Ontario Superior Court of Justice's review.

Mr. Warkentin resides in Ontario, Canada, and the United States District Court has not been presented any evidence that he is domiciled or otherwise subject to process in the United States. Thus, the United States District Court cannot directly compel Mr. Warkentin to provide the requested documents and testimony.

The United States District Court therefore respectfully asks that the Ontario Superior Court of Justice compel Mr. Warkentin to produce documents responsive to the requests for production set forth in Schedule A to this Letter of Request, to the extent that they are in his possession, custody, or control, and are not privileged under the applicable laws of Canada or the United States.  The United States District Court also respectfully asks that the Ontario Superior Court of Justice compel the appearance of Mr. Warkentin to testify under oath, concerning the topics set forth in Schedule B to this Letter of Request.

/ / /

/ / /

/ / /

/ / /

/ / /

### D.      IDENTITY AND ADDRESS OF THE ENTITIES AND PERSON TO BE EXAMINED

The identity and address of the person to be examined is set forth below. The address provided is based on currently available information and may be supplemented.

Colin D. Warkentin
162 Martindale Rd, 810
St. Catharines, ON L2S 3S4
Canada

### E.      STATEMENTS OF THE SUBJECT MATTER ABOUT WHICH THE PERSON WILL BE EXAMINED

The United States District Court requests that the Ontario Superior Court of Justice summon Colin D. Warkentin to testify regarding the topics listed in Schedule B to this Letter of Request.

### F.      DOCUMENTS AND OTHER EVIDENCE TO BE EXAMINED

The United States District Court requests that the Ontario Superior Court of Justice summon Colin D. Warkentin to produce or make available for inspection the documents set forth in Schedule A to this Letter of Request.

### G.      REQUIREMENTS THAT THE EVIDENCE BE GIVEN ON OATH OR AFFIRMATION

The United States District Court requests that the Ontario Superior Court of Justice summon Colin D. Warkentin to appear before a person empowered under Canadian law to administer oaths and take testimony and give testimony under oath or affirmation on the topics listed in Schedule B by questions and answers upon oral examination at a convenient location in Ontario.

### H.      SPECIAL PROCEDURES AND METHODS TO BE FOLLOWED

The examinations shall be conducted pursuant to the discovery rules as provided for in the Federal Rules of Civil Procedure of the United States, except to the extent such procedure is incompatible with the laws of Canada. The United States District Court further

8

requests: (1) that the examination be taken orally; (2) that the examination be taken before a commercial stenographer and videographer selected by Plaintiffs; (3) that the videographer be permitted to record the examination by audiovisual means; (4) that the stenographer be allowed to record a verbatim transcript of the examination; (5) that the examination be conducted in English, or, if necessary, with the assistance of an interpreter selected by Plaintiffs; (6) that, if the examination is conducted through an interpreter, verbatim transcripts of the proceeding in both English and French be permitted; (7) that Mr. Warkentin be examined for no more than ten and a half (10.5) hours if he requires an interpreter or seven (7) hours if he does not require an interpreter; (8) that the time allotted for the examination be divided equally between Plaintiffs and Defendant; and (9) that Mr. Warkentin be examined as soon as possible.

In the event that the evidence cannot be taken according to some or all of the procedures described above, this Court requests that it be taken in such manner as provided by the laws of Canada for the formal taking of testimonial evidence.

## I.    REQUEST FOR NOTIFICATION

None.

## J.    REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF THE LETTER OF REQUEST

None.

## K.    SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE UNDER THE LAW OF THE STATE OF ORIGIN

Under the laws of the United States, a witness has a privilege to refuse to give evidence if to do so would disclose a confidential communication between the witness and his or her attorney that was communicated specifically for the purpose of obtaining legal advice and which privilege has not been waived. United States law also recognizes a privilege against criminal self-incrimination. Other limited privileges on grounds not

applicable here also exist, such as certain communications between doctors and patients, husband and wife, and clergy and penitent. Certain limited immunities are also recognized outside the strict definition of privilege, such as the limited protection of work product created by attorneys during or in anticipation of litigation.

## L.    REIMBURSEMENT

The fees and costs incurred in the execution of this Request which are reimbursable will be borne by the above-named Defendant. Defendant is willing to reimburse the reimbursable fees and costs incurred by Colin D. Warkentin complying with any order of the Ontario Superior Court of Justice giving effect to this Request for International Judicial Assistance.

## RECIPROCITY

The United States District Court also assures your authority that it will reciprocate with similar assistance in like cases and extends to the Judicial Authorities of Canada, including the Ontario Superior Court of Justice, the assurances of its highest consideration.

Date of Request: **March 24, 2023**

Signature and Seal of the Requesting Authority:

_____

Honorable David D. Leshner
United States Magistrate Judge

## SCHEDULE A

## I.   DEFINITIONS

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of California. In addition, the following terms shall have the meanings set forth below whenever used in any request:

1.      "Litigation" means *Omnitracs LLC and XRS Corporation v. Platform Science*, *Inc*. (No. 3:20-cv-00958-CAB-DDL), pending in the United States District Court for the Southern District of California.

2.      "You," "Your," or "Colin D. Warkentin" refer to Colin D. Warkentin.

3.      The "Patents-in-Suit" means U.S. Patent Nos. 8,626,568; 10,255,575; and 9,262,934.

4.      "2010 DOT Regulations" refers to 75 Fed. Reg. 17207 (April 5, 2010) (to be codified at 49 C.F.R. §§350, 385, 395, and 396), p. 17208.

5.      "Document" or "Documents" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a) and includes, without limitation, any written, printed, typed, stored, electronic, photostated, photographed, recorded, or otherwise reproduced communication or representation, including computer or electronically generated or stored information, data, or source code, whether assertedly privileged or not. "Document" specifically includes all forms of electronic data and tangible things. A draft or non-identical copy is a separate document within the meaning of the term.

6.      "Thing(s)" has the broadest meaning allowable under Fed. R. Civ. Proc. 34 and Commission Rule 210.30 and includes every tangible object other than a Document including, without limitation, objects of every kind and nature, as well as prototypes, models, or physical specimens thereof.

7.      "Person" or "Persons" means any natural person or any business, legal, or governmental entity or association or any other cognizable entity, including, without

limitation, corporations, proprietorships, partnerships, joint ventures, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies, and orders.

8.     "Vehicle Onboard Computing Product" means any device or component that may generate, receive, transmit, capture, or record information from one or more vehicle components (such as engine data, electronic control module (ECM) data, diagnostics, telematics, etc.) and includes but is not limited to onboard computers; display devices (e.g., connected physically or wirelessly); automatic onboard recording devices; and devices or components that (a) record, generate, process, store, or transmit hours of service information and/or driver logs, including devices in compliance with 49 C.F.R. §395.15, (b) generate, receive, or monitor trip schedules, (c) collect driver, route, and delivery information in real-time, (d) receive or interface navigation (GPS) information and geofencing; and/or (e) interface with any such device or component.

"Vehicle Onboard Computing Product" also includes any device or component that may be more commonly referred to as an electronic logging device (ELD), electronic on-board recorder (EOBR), electronic driver logs (EDLs), automatic on-board recording device (AOBRD), computer assisted logs (CALs), and digital tachograph.

"Vehicle Onboard Computing Product" also includes any software, application, or program designed to operate on or integrate with the above-mentioned onboard devices or components. This includes but is not limited to software, applications, or programs for vehicle routing, dispatch, customer service, and regulatory compliance.

"Vehicle Onboard Computing Product" includes but is not limited to XRS Corporation's Routetracker and Routetracker2 products as well as any related or substantially similar products.

This definition is limited to products, devices, and components that were made, used, sold, or offered for sale, prior to February 16, 2016.

9.     The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

20-cv-958-CAB-DDL

10.    "Time Period" means prior to February 16, 2016.

## II.    INSTRUCTIONS

1.    These Requests shall apply to all Documents in your possession, custody, or control at the present time or coming into your possession, custody, or control prior to the date of production.

2.    With respect to documents, communications, or information you contend are privileged, please provide the following information for any responsive document or thing withheld from production on the grounds that it is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other relevant privilege:

a.    The author of the document;

b.    The person(s) for whom the document was prepared, to whom it was sent, and who received copies;

c.    The date of the document;

d.    The subject matter of the document;

e.    The type of document (e.g., letter, memorandum, note, report, etc.);

f.    The number of pages and attachments; and

g.    The nature and the basis for the claim of privilege.

3.    Documents and things requested herein shall be produced in the same sequence as they are contained or found and with the file folders and other identifying documents or containers (e.g., copy of envelope, file cabinet market, binder tab) in which such documents were located when these requests were served. If you do not produce each document requested herein as kept in the usual course of business, you are requested to organize and label the documents or things produced to correspond with the particular document request to which the document or thing is responsive.

4.    Electronic and computerized materials must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit review of the material.

/ / /

5.     If you object to a request, or any part of a request, please produce all documents to which your objection does not apply.

## III.     DOCUMENTS AND THINGS TO BE PRODUCED

1.     Documents and Things related to the design, development, components, features, functionality, architecture, and operation of each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, made, used, sold, or offered for sale during the Time Period. This includes but is not limited to any design specifications, requirement documents, user manuals, installation manuals, architecture documents, reference manuals, data sheets, and programming instructions.

2.     Documents and Things related to how each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, recorded, generated, processed, displayed, stored, and transmitted hours of service (HOS) information and/or driver logs, including but not limited to which component(s) were involved in each process, which component(s) generated the HOS information or logs, what data was used in the process and from where the data was collected or provided, and how the HOS information and logs were transferred between components in the vehicle and to remote computers (such as an inspection agent).

3.     Documents and Things related to how each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, generated, modified, transmitted, received, displayed, and monitored trip schedules, including information such as the driver's current location; destinations for the trip; times when the vehicle is expected to reach its destination; a time remaining to complete route; a trip route; a trip map; a time for which the driver may remain on duty; and one or more safety graphics.

4.     Documents and Things related to how each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, collected, generated, transmitted, and displayed driver, route, communications (e.g., messages, such as emails or SMS), and delivery information, including whether any of these functions were performed in real-time.

5.    Documents and Things related to how each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, used or interfaced with navigation (GPS) systems, including how the information was used, transmitted, displayed, or presented to a driver, as well as any geofencing features.

6.    Documents and Things related to how each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, interfaced with or connected to vehicle systems or components (such as electronic control modules), including, for example, 1) whether it connected to a diagnostic port or was hardwired into the vehicle systems, 2) which vehicle protocols it was compatible with, 3) how it determined which vehicle protocol were in use in the vehicle; and 4) how it selected which protocol to transmit or receive data; and 5) how received data from each vehicle system or component.

7.    Documents related to the 2010 DOT Regulations, including how you used, relied on, and/or otherwise considered them during the design or development of any Vehicle Onboard Computing Product, including Routetracker and Routetracker2. This includes, for example, any documents related to whether any features of the Vehicle Onboard Computing Product were added to comply with, or based on, the 2010 DOT regulations, such as USB ports, the ability to transfer logs from the device out the USB port, file transfer from a mobile device to the device, and that the file transfer comprised HOS information.

8.    Documents related to the first offer for sale and first sale in the United States of each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, during the Time Period. This includes but is not limited to the date of the offer or sale, date of delivery, the buyer and seller, the quantity, and the sale price.

9.    Documents related to the first public use or display in the United States of each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, during the Time Period. This includes but is not limited to the date, location, parties involved, and the subject matter shown, used, or displayed.

20-cv-958-CAB-DDL

10.    Documents related to how each Vehicle Onboard Computing Product, including Routetracker and Routetracker2, was marketed to the public dated, published, or otherwise distributed during the Time Period.

11.    Documents related to the Patents-in-Suit, including any documents related to any search for prior art to the Patents-in-Suit.

**SCHEDULE B**

## I.    DEFINITIONS

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of California. In addition, the following terms shall have the meanings set forth below whenever used in any request:

1.      "Litigation" means *Omnitracs LLC and XRS Corporation*, *v. Platform Science*, *Inc*. (No. 3:20-cv-00958-CAB-DDL), pending in the Southern District of California.

2.      "You," "Your," or "Colin D. Warkentin" refer to Colin D. Warkentin.

3.      The "Patents-in-Suit" means U.S. Patent Nos. 8,626,568; 10,255,575; and 9,262,934.

4.      "2010 DOT Regulations" refers to 75 Fed. Reg. 17207 (April 5, 2010) (to be codified at 49 C.F.R. §§350, 385, 395, and 396), p. 17208.

5.      "Person" or "Persons" means any natural person or any business, legal, or governmental entity or association or any other cognizable entity, including, without limitation, corporations, proprietorships, partnerships, joint ventures, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, societies and orders.

6.      "Vehicle Onboard Computing Product" means any device or component that may generate, receive, transmit, capture, or record information from one or more vehicle components (such as engine data, electronic control module (ECM) data, diagnostics, telematics, etc.) and includes but is not limited to onboard computers; display devices (e.g., connected physically or wirelessly); automatic onboard recording devices; and devices or components that (a) record, generate, process, store, or transmit hours of service information and/or driver logs, including devices in compliance with 49 C.F.R. §395.15, (b) generate, receive, or monitor trip schedules, (c) collect driver, route, and delivery information in real-time, (d) receive or interface navigation (GPS) information and geofencing; and/or (e) interface with any such device or component.

"Vehicle Onboard Computing Product" also includes any device or component that may be more commonly referred to as an electronic logging device (ELD), electronic on-board recorder (EOBR), electronic driver logs (EDLs), automatic on-board recording device (AOBRD), computer assisted logs (CALs), and digital tachograph.

"Vehicle Onboard Computing Product" also includes any software, application, or program designed to operate on or integrate with the above-mentioned onboard devices or components. This includes but is not limited to software, applications, or programs for vehicle routing, dispatch, customer service, and regulatory compliance.

"Vehicle Onboard Computing Product" includes but is not limited to XRS Corporation's Routetracker and Routetracker2 products (with or without TP Mobile) as well as any related or substantially similar products.

This definition is limited to products, devices, and components that were made, used, sold, or offered for sale, prior to February 16, 2016.

7.    The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.

8.    "Time Period" means prior to February 16, 2016.

## II.    TOPICS FOR DEPOSITION

1.    The design, development, components, features, functionality, architecture, and operation of each Vehicle Onboard Computing Product made, used, sold, or offered for sale during the Time Period.

2.    The recording, generation, processing, display, storage, and transmission of hours of service (HOS) information and/or driver logs for each Vehicle Onboard Computing Product.

3.    The generation, modification, transmission, reception, display, and monitoring of trip schedules for each Vehicle Onboard Computing Product.

4.    The collection, generation, transmission, and display of driver, route, communication, and delivery information for each Vehicle Onboard Computing Product.

/ / /

5.      The use and interface of navigation (GPS) systems for each Vehicle Onboard Computing Product.

6.      The interface and connection to vehicle systems for each Vehicle Onboard Computing Product.

7.      The use, reliance upon, or otherwise consideration of the 2010 DOT Regulations in the design and development of each Vehicle Onboard Computing Product during the Time Period.

8.      The first offer for sale and first sale in the United States of each Vehicle Onboard Computing Product during the Time Period.

9.      The first public use or display in the United States of each Vehicle Onboard Computing Product during the Time Period.

10.     The marketing for each Vehicle Onboard Computing Product.

11.     The Patents-in-Suit and any search for prior art to the Patents-in-Suit.

12.     The authenticity of the documents and things produced in response to the Document Requests.

19