UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC AND XRS CORPORATION,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>PLATFORM SCIENCE, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.:  20-cv-958-CAB-DDL<br><br>**ORDER ON DEFENDANT PLATFORM SCIENCE'S MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. No. 385]** |

　　　　Plaintiffs Omnitracs LLC and XRS Corporation (jointly "Omnitracs") allege Defendant Platform Science, Inc. infringes five U.S. patents.[1]  Platform Science has moved for summary judgment [Doc. No. 385] of non-infringement on multiple claims of the asserted patents, invalidity of the '365 patent and '308 patent under 35 U.S.C. § 101, dismissal of the willful infringement allegation and dismissal of damages based on lost

---

[1] U.S. Patent No. 9,262,934 ('934 patent); U.S. Patent No. 7,043,365 ('365 patent); U.S. Patent No. 8,626,568 ('568 patent); U.S. Patent No. 10,255,575 ('575 patent); and U.S. Patent No. 6,925,308 ('308 patent).

1

profits.  Omnitracs filed its opposition. [Doc. No. 408]. Platform Science filed its reply. [Doc. No. 414.]  The Court held argument on March 19, 2024.

For reasons stated on the record and further discussed below, the Court rules as follows on the Platform Science motions.

**A.  Background**

The patents at issue are generally directed to telematics systems used to monitor a wide range of information relating to an individual vehicle or an entire fleet.  Telematics systems gather data such as vehicle location, driver behavior, engine diagnostics and vehicle activity, and visualize this data on software platforms that can be implemented to assist in the management of fleet resources.

Systems can be configured to provide real-time data regarding location and operation of vehicles to maximize resources.  They can also be configured to record and report driver information to comply with the Federal Motor Carrier Safety Administration's regulatory requirements. The accused system is the Platform Science Connect Vehicle Platform.

**B. The Non-Infringement Motions**

**1. Non-Infringement of the '308 Patent**

The asserted claims of the '308 patent, claims 1, 3-5, are directed at a system to receive a formatted message with a plurality of information fields.  If a response to the received formatted message is desired, the system identifies the format of the received message and its information fields.  It then creates a response message in part by automatically copying information from one or more of the received formatted message's fields into the corresponding field in the response message.

Asserted Claim 1 of the '308 claims:

A communication terminal, comprising:
    a receiver for receiving a formatted message out of a number of pre-defined formatted messages, comprising a message identification code and a plurality of information fields;

> an output device for presenting said formatted message to a user of said communication terminal;
> an input device for responding to said formatted message;
> a memory for storing said formatted message and for storing field-mapping information, said field-mapping information for indicating information to be copied from said formatted message to a response message based on which one of said pre-defined formatted messages was received;
> a processor for creating said response message in response to an indication from said input device of a request to respond to said formatted message, said response message comprising at least one response message information field, wherein information from at least one of said plurality of information fields of said formatted message is copied into a least one of said response message information fields based on said field-mapping information; and
> a transmitter for transmitting said information relating to said response message.

[Doc. No. 1-2, at 120, Col. 9:2-26.]

Omnitracs alleges that Platform Science's accused product forwards a Job description to the receiving communication terminal. That Job message lists Steps and Tasks. Omnitracs further alleges that the Tasks of a Job meet the limitation of pre-defined formatted messages with information fields. Content of the Task information fields are copied into corresponding information fields in a Form, which constitutes the response message limitation of the claim.

Platform Science disputes that this interpretation of how its accused product operates meets the limitations of the claim. The Court finds this to be a material factual dispute that precludes summary judgment. Platform Science's motion for summary judgment of non-infringement of the '308 patent is therefore **DENIED.**

Platform Science also moved to exclude Omintracs' expert Dr. Kevin Almeroth from amending the opinion contained in his expert report on infringement of the '308 patent to argue at trial that the Job, rather than the Tasks contained in a Job, is a pre-defined formatted message. Having reviewed Dr. Almeroth's report, issued in compliance with Federal Rule of Civil Procedure 26 and this Court's scheduling order, the Court does not find this theory sufficiently disclosed to provide proper notice to Platform Science that it

formed a basis of Dr. Almeroth's theory of infringement. Platform Science's motion to exclude Dr. Almeroth from advancing an opinion at trial that Job messages communicated by the accused system meet the limitation of a number of pre-defined formatted messages is **GRANTED**.

### 2. Non-Infringement of the '568 Patent and '575 Patent

The asserted claims of the '568 patent and the '575 patent are directed at a system to communicate fleet vehicle information. The '575 patent is a continuation of the '568 patent. The claim limitations at issue are in the asserted claims of each patent.

Claim 10 of the '568 patent, exemplary of the asserted claims of these related patents, claims:

> A system for communicating fleet vehicle information comprising:
> an electronic onboard recorder unit configured to mount inside a vehicle and provide a wired connection to the vehicle for gathering data during operation of the vehicle, the electronic onboard recorder unit being free of a user interface display and including a short-range wireless communication device to wirelessly communicate vehicle usage information to a second device when the second device is position inside the vehicle; and
> a portable wireless display unit comprising: a short-range wireless communication device to wirelessly communicate with the electronic onboard recorder unit when the electronic onboard recorder unit and the portable wireless display unit are both positioned inside the vehicle, a long-range communication device configured to provide a cellular or satellite communication link with a remote system, a computer-readable memory module to store a driver summary electronic report, the driver summary electronic report being generated by the portable wireless display unit in response to wirelessly receiving the vehicle usage information from the electronic onboard recorder unit mounted to the vehicle, the driver summary electronic report including driver identification information and driver hours of service information, and a user interface including a display device that displays the driver hours of service information,
> wherein the electronic onboard recorder unit and the portable wireless display unit provide two-way wireless communication such that the portable wireless display unit wirelessly receives vehicle usage information from the electronic onboard recorder unit and the electronic onboard recorder unit wirelessly receives the driver summary electronic report from the portable wireless display unit.

[Doc. No. 1-2, at 83, Col. 23:3-37.]

1   The Court construed "vehicle usage information" as data or information associated with a specific driver during the hours of operation. [Doc. No. 213.]

The Parties dispute whether in the accused system the component alleged to meet the electronic onboard recorder unit limitation wirelessly communicates vehicle usage information, as construed by the Court, to a second device, i.e., a portable wireless display unit. Omnitracs' expert opines that the accused system communicates vehicle telematics data associated with a Driver ID meeting the claim limitation. Platform Science disputes this interpretation of how its system works and asserts that data collected and sent from a vehicle's engine control module is vehicle data about engine events but is not associated with a specific driver.

The Court finds this to be a material factual dispute that precludes summary judgment.

The asserted claims in the '568 and '575 patents also require that the electronic onboard recorder unit wirelessly receive a driver summary electronic report, which includes driver identification information and driver hours of service information, from the portable wireless display unit. The Parties dispute whether there is a communication from the portable wireless display unit to the electronic onboard recorder unit that meets the driver hours of service information limitation. Again, the Court finds this to be a material factual dispute that precludes summary judgment.

Platform Science's motion for summary judgment of non-infringement of the '568 patent and the '575 patent is therefore **DENIED.**

### 3. Non-Infringement of the '934 Patent and '575 Patent

Claim 1 of the '934 patent claims:

> A portable wireless data transfer and display device comprising:
>   a user interface;
>   a display;
>   a processor; and
>   a short-range wireless communication module configured to wirelessly receive vehicle data, in real time, from a data acquisition device mounted inside a vehicle when in close proximity to the data acquisition device, the portable wireless

>    data transfer and display device being associated with a driver of the vehicle, wherein the data acquisition device is in communication with an engine control module of the vehicle and automatically adapts to a detected type of communication protocol employed by the engine control module,
>
>    wherein the portable wireless data transfer and display device is configured to receive an input of driver information and driver communications from the driver via the user interface,
>
>    wherein the portable wireless data transfer and display device is configured to communicate, in real-time, the driver communications to a remote network device via a long-range wireless network,
>
>    wherein the portable wireless data transfer and display device is configured to process into a trip schedule at least one of the vehicle data, the driver information, and the driver communications via the processor, and
>
>    wherein the portable wireless data transfer and display device if further configured to present the trip schedule and the driver communications to the driver via the display.
>
> [*Id.,* at 42-43, Col. 40:58 – 41:22.]

This Claim and Claim 1 of the '575 patent require that the short-range wireless communication module of the portable wireless data transfer and display device ("portable device") be in communication with a data acquisition device (identified in the '575 patent as the electronic onboard recorder). The data acquisition device communicates with the engine control module of the vehicle. This device has control circuitry configured to detect one or more protocols employed by the engine control module and automatically adapt to the detected protocol.

Platform Science contends that its accused system is preprogrammed before installation in a vehicle with the protocol specific to the engine control module of the vehicle in which it is to be installed. Platform Science further contends that the data acquisition device does not adapt automatically to the protocol of the vehicle's engine control module. If the data acquisition device is preprogrammed to a protocol that does not match the protocol of the vehicle's engine control module, it can be reconfigured to the different protocol. It does not, however, automatically adapt to the protocol of the vehicle's engine control module.

Omnitracs contends that the Platform Science system component that meets the data acquisition device limitation automatically adapts to the protocol of the vehicle's engine control module, as it is programmed to detect which connecting cable is employed and then adapt to the correct protocol associated with that cable. Further Omnitracs contends that the accused data acquisition device component can detect the signal (or "heartbeat" of the bus signal) from the engine control module and select the appropriate protocol to receive that signal.

Again, the Court finds this to be a material factual dispute that precludes summary judgment.

Platform Science's motion for summary judgment of non-infringement of the '934 patent and the '575 patent on these grounds is therefore **DENIED.**

### 4. Non-Infringement of the '934 Patent

As set forth above, Claim 1 of the '934 patent also requires that a short-range wireless communication module of the portable wireless data transfer and display device be configured to wirelessly receive vehicle data, in real time, from a data acquisition device mounted inside a vehicle when in close proximity to the data acquisition device.

The Court construed "real time" as "receiving, communicating, and displaying with *unintentional* delay of one second or less." [Doc. No. 295, at 5] (emphasis added).

The specification discloses that communication among the network devices, the data acquisition devices, the portable wireless display and transfer units, and other communication devices may be configured to occur at predetermined times. Such predetermined times may include consistent periodic intervals, real-time communication, and times corresponding to particular events. [Doc. No. 1-2, at 29, Col. 13:40-49.]

The portable device has a short-range wireless communication module configured to communicate with the corresponding data acquisition device. [*Id.,* at 27, Col. 10:1-11.] When the portable device is in close proximity to the data acquisition device, vehicle data gathered by the data acquisition device is pushed to the portable device over the wireless connection. [*Id.,* at 29, Col. 32-41.]

The Defendant's accused system gathers and communicates vehicle data to the portable device at predetermined, periodic intervals of one second or more. [Doc. No. 386, at 26.] This transmission of data does not meet the Court's definition of "real time," as it is a periodic interval with an *intentional* delay of at least one second.

The Parties dispute whether the communication module of the portable device is configured to received vehicle data in "real time" as required by the claim if the data is communicated to it in intentional periodic intervals. Plaintiff argues that once the connection is made and the data is pushed from the data acquisition device to the portable device, the portable device is configured to receive that data in real time, without intentional delay, as construed by the Court and therefore the claim limitation is met. Defendant contends that if the data is sent in periodic intervals from the data acquisition device to its paired portable device, the portable device is not configured to receive data in real time.

The Defendant's motion for summary judgment as to non-infringement of the '934 patent is **DENIED.** At the very least there is a disputed issue of fact as to whether a paired portable device and data acquisition device are configured to communicate at the same intervals for transmission and reception.

**C. Invalidity under Section 101**

Platform Science moves to invalidate the '365 patent and the '308 patent as claiming unpatentable subject matter. The Court applies the two-step test for patent eligibility: 1) whether the claims are directed to a patent ineligible concept, an abstract idea; and 2) if so, whether the elements of the claim provide inventive concept sufficient to transform the nature of claim into a patent-eligible application. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).

**1. The '365 Patent**

The '365 patent is directed at a method to determine the location of a "mobile client" in relation to a predefined location. [Doc. No. 1-2, at 55, Col. 3:25-28.]

Claim 1 of the '365 patent claims:

> A method of monitoring, comprising:
> receiving position information related to a notification point;
> determining a position of a mobile client by said mobile client;
> comparing said position with an area encompassing said notification point;
> transmitting a message in response to said position being within said area encompassing said notification point; and
> setting a state of an entrance flag by said client to a value representing that said entrance flag is set in response to said position being within said area encompassing said notification point.

[*Id.,* at 58, Col. 9:15-29.]

Platform Science contends that monitoring the location of a mobile client and providing notification that has reached a location is an abstract concept ineligible for patent protection. Omnitracs contends this claim includes specific technical requirements that produce a tangible and useful result and therefore does not claim a patent-ineligible concept.

"Patent eligibility turns on the content of the claims." *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020). Although the specification discloses systems, devices, networks, and modules that may be employed to perform the steps of the claimed method, the claim itself is at a high level of generality stated in functional terms – a mobile client (i.e., anything from a wireless phone, to a truck, to a plane, etc.) determines its location relative to a predefined point, sends a message letting someone know it has arrived and marks its arrival. The claim itself provides no limitations as to how any of these functions are achieved.

While the Court is wary of challenges to patentability that are phrased by simply highlighting the verbs of a claim—receiving, determining, comparing, transmitting, setting—in this case, there is little beyond the functional language. The claim is a generic recitation of the functions with no limitations as to how information is received, compared, transmitted, to whom the information is distributed, or to how presence in the location is marked.

Conventional methods of determining one has arrived at a location and letting someone else know existed prior to this patent. The patent specification addresses the

usefulness of having systems for obtaining such location information for trucking dispatchers. Claim 1 however includes no architecture, system, or modules for performing its steps. The Court concludes that Claim 1 is directed to an abstract idea.

Further, the elements of the claim do not satisfy the second step of the patent eligibility test, they do not provide any inventive concept sufficient to transform the claim into a patent-eligible application. The claim itself recites no components for achieving the steps, much less components alone or in combination that improve computer capabilities. The specification enables the practice of the claimed method with reference to known components, mechanisms, networks, implemented by hardware, software, or combinations thereof. It references generalized schematic illustrations of architecture and components noting that they came be removed or modified without departing from the scope of the invention. It refers to a "monitor module" and "proximity module" for communicating to a host system, but these modules and systems are not recited in the claim.

The claim only entails practicing a longstanding function, and the specification references using generic computer components and technology to do so. It is ineligible under § 101. The Court also finds that asserted Claim 6 (dependent from Claim 1) and independent Claims 15 and 20 of the '365 patent are ineligible under the same analysis.

Platform Science's motion for summary judgment of patent ineligibility of the '365 patent is **GRANTED**.

    **2. The '308 Patent**

Claim 1 of the '308 patent, *supra*, is for an apparatus for automatically entering information into a formatted message. Platform Science asserts that this is an abstract concept being performed by generic components without identification of improvement to a technological process. The patent claims automation of a conventional activity—manual insertion of information into a response message—by generic technology that may improve the user experience but does not improve the functions of the computer.

Platform Science contends that the '308 patent is more than replacing manual insertion of information in a response message. The claim requires a number of pre-defined

formatted messages with identification codes and information fields. The processor of the communication terminal that receives a formatted message, can create a response message by recognizing the format of the received message and the information fields relative to that formatted message. Content from the information fields of the identified formatted message is automatically copied into corresponding information fields in the response message.

This system is a technical improvement in the communications systems described in the specification. The claims provide a specific solution for accomplishing the goal of achieving more reliable, efficient, and cost-effective communications. While it automates a task previously done by humans, the automation provides an improvement to the human operation minimizing human-error. *See EcoServices, LLC v. Certified Aviation Servs., LLC,* 830 F. App'x 634, 642 (Fed. Cir. 2000) (considered as a whole, the claimed system was a patentable technical improvement over prior art human-operated systems). The Court finds that the '308 patent is not directed at unpatentable subject matter.

Platform Science's motion for summary judgment of patent ineligibility of the '308 patent is **DENIED.**

### D. Prior Art to '934 Patent

Platform Science moved for summary adjudication that the '568 patent qualifies as prior art to the '934 patent, under Section 102(e). This motion was unopposed and is therefore **GRANTED.**

### E. Summary Judgment Dismissing Omnitracs Willful Infringement Claim

As stated at the hearing, the Court is denying this motion without prejudice. Platform Science may renew the motion at the close of Omnitracs' case-in-chief.

### F. Summary Adjudication Dismissing Omnitracs Lost Profits Claim

As stated at the hearing, the Court is denying this motion without prejudice. The Court intends to hear further evidence regarding Omnitracs' market share analysis in support of its lost profits claim before this theory can be presented to the jury.

### G. Conclusion

For the reasons stated above and at the hearing,

1. Platform Science's motion for summary judgment of non-infringement of the '308 patent is **DENIED.**
2. Platform Science's motion for summary judgment of non-infringement of the '568 and '575 patents is **DENIED.**
3. Platform Science's motion for summary judgment of non-infringement of the '934 and '575 patent is **DENIED.**
4. Platform Science's motion for summary judgment of non-infringement of the '934 patent is **DENIED.**
5. Platform Science's motion for summary judgment of patent ineligibility of the '365 patent is **GRANTED.**
6. Platform Science's motion for summary judgment of patent ineligibility of the '308 patent is **DENIED.**
7. Platform Science's motion for summary adjudication that the '568 patent is prior art to the '934 patent is **GRANTED.**
8. Platform Science's motion for summary judgment dismissing of Omnitracs' willful infringement claim is **DENIED.**
9. Platform Science's motion for summary adjudication dismissing of Omnitracs' lost profits claim is **DENIED.**

**IT IS SO ORDERED.**

Dated: April 8, 2024

_____
Hon. Cathy Ann Bencivengo
United States District Judge