1
2
3
4
5
6
7
8
9
10
11
12
13
14

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC AND XRS CORPORATION, | Case No. 3:20-cv-0958-CAB-DDL |
| Plaintiffs, | **PROPOSED FINAL JURY INSTRUCTIONS** |
| v. | District Judge: Hon. Cathy Ann Bencivengo<br>Magistrate Judge: Hon. David D. Leshner |
| PLATFORM SCIENCE, INC., | Trial Date: July 8, 2024 |
| Defendant. | |

**COURT'S INSTRUCTION NO. 1 – FINAL JURY CHARGE**

Members of the Jury: now that you have heard all of the evidence it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 2 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 2 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 2 – PARTY CONTENTIONS**

As I did at the start of the case, I will give you a summary of each side's contentions in this case. Then I will provide detailed instructions on what each side must prove to establish its contentions.

Omnitracs and XRS allege patent infringement by Platform Science. As I go through these instructions with you, I will refer to the plaintiffs jointly as [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs[1]].

[**Omnitracs' Proposed Language:** Omnitracs seeks] [**Platform Science Proposed Language:** Plaintiffs seek] money damages from Platform Science for allegedly infringing U.S. Patent No. 6,925,308, U.S. Patent No. 8,626,568, U.S. Patent No. 10,255,575, and U.S. Patent No. 9,262,934 by making, importing, using, selling or offering for sale systems and methods that [**Omnitracs' Proposed Language:** Omnitracs argues] [**Platform Science Proposed Language:** Plaintiffs argue] are covered by Claims 1 and 5 of the '308 Patent; Claims 11 and 23 of the '568 Patent; Claims 1 and 11 of the '575 Patent; and Claims 16 and 23 of the '934 Patent. Collectively, the patents may be referred to as the Asserted Patents and the claims as the Asserted Claims.

The products and services that are alleged to infringe one or more of the Asserted Claims are:
1. Platform Science's Connected Vehicle Platform software, including
   a. Platform Core;
   b. Mobile Core; [**Omnitracs' Proposed Language:**]
   c. Virtual Vehicle Fleet; and
   d. Virtual Vehicle Edge][2]

---

[1]**Omnitracs**: Platform Science's proposal to globally change reference to "Omnitracs" as "Plaintiffs" is unnecessary. XRS is an Omnitracs subsidiary, products embodying the XRS patents are identified as "Omnitracs" products, and the testimony at trial will refer to them both as "Omnitracs" collectively. And in comparison to referring to itself as "Platform Science" and not "Defendant," Platform Science's proposal to refer to Omnitracs and XRS as "Plaintiffs" appears to be a thinly-veiled attempt to further their desire to paint them with similar labels as "shakedown artists" and "patent trolls," and nonpracticing entities, a notion which the court rejected at the Pretrial Conference. 6-27-2024 Hr'g at 44-46. Where Omnitracs refers to Omnitracs or XRS individually, Omnitracs' proposal makes that distinction clear in the jury instructions.
**Platform Science:** This is a global dispute throughout the jury instructions, and Platform Science's comments apply to any instance referring to Plaintiffs except where otherwise noted. Plaintiffs are two distinct parties Omnitracs LLC, and XRS Corp., and it is not accurate to refer to both parties as "Omnitracs" throughout the jury instructions. One of the asserted patents still in the case, the '308 patent, is owned by Omnitracs (previously owned by Qualcomm), and the other three asserted patents still in the case are owned by XRS. The difference is significant for at least willfulness for notice, as well as the history of the two entities (e.g., Omnitracs was formerly a division of and was spun out of Qualcomm, XRS was acquired by Omnitracs later, and has distinct products). To avoid confusion, the parties should be referred to jointly as Plaintiffs when appropriate and separately as Omnitracs or XRS where appropriate.
[2]**Omnitracs**: Omnitracs disagrees with Platform Science's assertions and believe that inclusion of these products is proper—Platform Science is making, selling, and offering for sale the Virtual Vehicle software, which is accused of infringement. As the Court noted at the Pretrial Conference, to the extent that Platform Science disagrees that

2.  Platform Science's Driver Messaging application
3.  Platform Science's Hours of Service application
4.  Platform Science's Workflow application
5.  Platform Science's Navigation application
6.  Platform Science's Connected Vehicle Device (CVD)
7.  Platform Science's in-vehicle mobile display (tablet)

Platform Science denies that it infringes the Asserted Claims of the Asserted Patents, and it further contends that the Asserted Claims are invalid.

Your job is to decide whether each of the accused products and/or services infringed an Asserted Claim and whether any of the Asserted Claims are invalid.

If you decide that any of the Asserted Claims was infringed and is not invalid, and not subject to any other defense, you will then need to decide monetary damages to be awarded to [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] to compensate for the infringement.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, o 1014 at 11 (S.D. Cal. Sep. 2023)

---

Omnitracs can prove infringement for that software, then Platform Science can raise this issue at the close of Omnitracs' case in chief.  *See* June 27 Hr'g Tr. at 81:11-13. **Platform Science:**  At the June 27 Pretrial Conference, Plaintiffs represented that they were not going to allege infringement on the basis of the Daimler CTP2 product, and Platform Science clarified on the record that the Daimler CTP2 product was the only product that would run Virtual Vehicle Fleet and Virtual Vehicle Edge software.  Thus, Virtual Vehicle Fleet and Virtual Vehicle Edge software are not properly included in the list of accused products and services. *See* June 27 Hr'g Tr. at 77:22-81:13.

**COURT'S INSTRUCTION NO. 3 – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 3 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 4 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 4 – CLEAR & CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 4 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 5 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 5 – EVIDENCE**

The evidence that you are to consider in deciding what the facts are consists of:

1. The sworn testimony of any witness (either by live witnesses or by previously recorded testimony);

2. the exhibits that are admitted into evidence;

3. any facts to which the parties have agreed; and

4. any facts that I instruct you to accept as proved.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 5 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 6 (S.D. Cal. Mar. 2022)

## COURT'S INSTRUCTION NO. 6 – NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you must not consider them in deciding the facts of this case:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements, will say in their closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Any testimony that is excluded or stricken, or that you were instructed to disregard, is not evidence and must not be considered.

4. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 6 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 7 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 7 – TYPES OF EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 7 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 8 (S.D. Cal. Mar. 2022)

# COURT'S INSTRUCTION NO. 8 – WITNESS TESTIMONY

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. the opportunity and ability of the witness to see or hear or know the things testified to;

2. the witness's memory;

3. the witness's manner while testifying;

4. the witness's interest in the outcome of the case, if any;

5. the witness's bias or prejudice, if any;

6. whether other evidence contradicted the witness's testimony;

7. the reasonableness of the witness's testimony in light of all the evidence; and

8. any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 8 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 9-10 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 9 – DEPOSITION TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Portions of the deposition testimony of a number of witnesses were presented a trial. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**Source:** *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 9 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 11 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 10 – EXPERT TESTIMONY**

You have heard testimony from Dr. Kevin Almeroth, Evan Kovanis, Thomas Britven, Dr. William Michaelson, Joel Beal, Dr. Christopher Wilson, and Carrie Distler, who testified to opinions and the reasons for those opinions. This opinion testimony is allowed because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 10 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 12 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 11 – PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim. When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of certain claim terms and I will provide to you my definitions of those terms. You must accept my definitions of these terms as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion, also known as the preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an Accused Product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For any words in the claims for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definitions of the terms as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are for you to decide.

I will now explain to you the meaning of some of the words of the claims in this case.

When deciding the issues you are being asked to decide, you must apply my definitions of the following claim terms:

The term **"driver summary electronic report,"** as it appears in the '568 Patent, means "an electronic collection of driver information that includes at least driver identification information and driver hours of service information."

The term **"hours of service information,"** as it appears in the '568 and '575 Patents, means "a calculation of driver's hours of operation, e.g., driving time, off-duty time, on-duty time, driving time with respect to a predetermined limit or second predetermined limit, and driving time with respect to consecutive days, with one or more of these calculated values having limits in accordance with the Hours of Service Rule."

The term **"trip schedule,"** as it appears in the '934 Patent, means "the driver's timing, route, and/or location information."

The term **"vehicle usage data/information,"** as it appears in the '575 Patent, means "data/information associated with a specific driver during the hours of operation."

The term **"automatically,"** as it appears in the '575 and '934 Patents, means "a self-acting response to the identification of the particular protocol."

The term **"real time receiving, communicating, and displaying information,"** as it appears in the '934 Patent, means "receiving, communicating, and displaying with unintentional delay of one second or less."

The terms **"based on which one of said pre-defined formatted messages was received"** and **"based on said message identification code,"** as they appear in the '308 Patent, mean "the pre-defined formatted message, which consists of a message identification code and information fields, is used to determine wat information is a received message is copied into a response message."

**[Omnitracs' Proposed Language:** The term **"transfer,"** as it is appears in the '575 and '568 Patents, means "to move something from one place to another."][3]

There are five other terms I must define for you. These terms are what we call means-plus-function limitations. I will now explain means-plus-function limitations in greater detail and instruct you on the definitions for the five remaining terms.

*Source*: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 12-13 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 13 (S.D. Cal. Mar. 2022) (modified); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 15-16 (S.D. Cal. Mar. 2022) (modified)

---

[3] **Omnitracs**: The Court construed the term transfer in its April 15, 2024 Order on Plaintiff's Motion to Exclude Testimony of William Michalson. *See* Dkt. 454 at 2 ("'Transfer' is hereby construed as 'to move something from one place to another.'"). The term appears in both the '568 and '575 Patent. Therefore, it is appropriate to include this construction in the jury instructions.
**Platform Science:** This definition of "transfer" is not a Court construed or agreed upon construction and is therefore inappropriate to include in the jury instructions. Plaintiffs have not alleged there is any further claim construction dispute to be resolved by the Court.

# COURT'S INSTRUCTION NO. 12 – MEANS-PLUS-FUNCTION ELEMENTS

Claim 16 of the '934 Patent uses the phrase "means for." This "means for" phrase has a special meaning in patent law. It is called a "means-plus-function" requirement. It does not cover all of the structures that could perform the function set forth in the claim. Instead, it covers a structure or a set of structures that performs that function and that is either identical or "equivalent" to at least one of the sets of structures described in the '934 Patent for performing that function. The issue of whether two structures are identical or equivalent is for you to decide. I will explain to you later how to determine whether two structures or two sets of structures are "equivalent" to one another. For purposes of this case, I have identified the sets of structures described in the '934 Patent that perform each function described in Claim 16. I will now identify the structures described in the '934 Patent for performing the relevant functions.

Claim 16 of the '934 Patent includes five terms that I have determined are means-plus-function elements:

1. The term "a means for wirelessly receiving vehicle data from a data acquisition device mounted inside a vehicle when in close proximity to the data acquisition device," has the following function: **"the receipt of vehicle data by the portable wireless data transfer and display device from a data acquisition device when the data acquisition device is nearby."** I have also determined that the term has the following structure, or an equivalent of the following structure: **Described in the specification at 10:59-67 (Structures for performing this function are described in the specification as short-range wireless communications links, such as Bluetooth, wireless Ethernet (WiFi) including WiFi 802.11, ZigBee, near-field communications (NFC), infrared (IrDA), block linear turbo equalization (BLTE) or any other suitable short-range wireless communication link utilized by the short-range wireless communication modules utilized by the data acquisition devices and portable wireless data transfer and display devices).**

2. The term "a means for sending driver information, the vehicle data, and the driver communications through the communication module to a remote network device via a long-range wireless network," has the following function: **"the sending of information via a long-range wireless network from the portable wireless data transfer and display device to a remote network."** I have also determined that the term has the following structure, or an equivalent of the following structure: **Described in the specification at 11:67-12:6 (Structures for performing this function are described in the '934 Patent specification as cellular communication links, satellite communication links, WiMAX links, long term evolution (LTE) links, or any other suitable form of long-range wireless link that may communicate data among portable wireless data transfer and display devices and [a] control center).**

3. The term "a means for processing, into a trip schedule, at least one of: the vehicle data, the driver information, and the driver communications," has the following function: **"the processing into a trip schedule certain information by the portable wireless data transfer and display device."** I have also determined that the term has the following structure, or an equivalent of the following structure: **Described in the specification**

**at 27:42-47, 37:50-53 (The structure disclosed in the patent for performing this function is a processor in the portable device executing software that generates the trip schedule).**

4. The term "means for presenting, in real time, a trip schedule and the driver communication to the driver," has the following function: **"the display of certain information to a driver on the claimed portable wireless data transfer and display device."** I have also determined that the term has the following structure, or an equivalent of the following structure: **Described in the specification at 8:60-67, 9:46-59, 13:40-56, 14:39-49, 24:64-67, 37:16-30, 53-55 (Structures for performing this function are described in the '934 patent specification as the user interface of the disclosed forms of such portable devices, i.e., personal digital assistants, cellular telephones, smartphones, tablets, laptops and other similar computing devices. Further the specification provides adequate structure to inform a person of skill in the art how to present information in real-time).**

5. The term "a means for communicating, at predetermined times, with the data acquisition device when the data acquisition device is mounted in the vehicle and the device is in close proximity to the vehicle," has the following function: **"communicating between the claimed portable wireless data transfer and display device and the data acquisition device when the data acquisition device is near the portable device."** I have also determined that the term has the following structure, or an equivalent of the following structure: **Described in the specification at 9:46-59, 10:59-67, 13:40-56 (Structures for performing this function are described in the specification as short-range wireless communications links, such as Bluetooth, wireless Ethernet (WiFi) including WiFi 802.11, ZigBee, near-field communications (NFC), infrared (IrDA), block linear turbo equalization (BLTE) or any other suitable short-range wireless communication link utilized by the short-range wireless communication modules utilized by the data acquisition devices and portable wireless data transfer and display devices. Further the specification provides adequate structure to inform a person of skill in the art how to communicate at predetermined times).**

You should apply my definition of the function and the structures described in the '934 Patent for performing it as you would apply my definition of any other claim term.

***Source***: Federal Circuit Bar Association Model Jury Instructions § B.2, 2.3a (2020) (modified)

**COURT'S INSTRUCTION NO. 13 – TYPES OF PATENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

In this case, Claim 1 of the '308 Patent, Claims 23 of the '568 Patent, Claim 1 of the '575 Patent, and Claims 16 of the '934 Patent are each independent claims.

The remaining Asserted Claims, Claim 5 of the '308 Patent, Claim 11 of the '568 Patent, Claim 11 of the '575 Patent, and Claim 23 of the '934 Patent are "dependent claims."

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 14 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 14 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 14 – INFRINGEMENT OVERVIEW**

I will now instruct you how to decide whether or not [**Omnitracs' Proposed Language:** Omnitracs has] [**Platform Science Proposed Language:** Plaintiffs have] proven that Platform Science has infringed the Asserted Claims of the Asserted Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, [**Omnitracs' Proposed Language:** Omnitracs has] [**Platform Science Proposed Language:** Plaintiffs have] alleged that Platform Science directly infringed the Asserted Claims of the Asserted Patents.

[**Omnitracs' Proposed Language:** Omnitracs has] [**Platform Science Proposed Language:** Plaintiffs have] alleged that Platform Science also indirectly infringed the Asserted Claims of the Asserted Patents.

In order to prove infringement, [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] must prove that the requirements for infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of infringement have been proved.

***Source:*** *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 15 (S.D. Cal. Sep. 2023) (modified)

**[OMNITRACS' PROPOSED INSTRUCTION: COURT'S INSTRUCTION NO. 15 – DEFENDANT'S PATENTS**

You have heard that Platform Science also owns patents. The fact that Platform Science has its own patents does not constitute a defense to infringement of Omnitracs' patents. A patent grants only the right to exclude others from practicing the patent—it does not confer a right on its holder to make, use, or sell the invention in the patent.][4]

**Source**: *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 879, n. 4 (Fed. Cir. 1991); *Bio-Tech. Gen. Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1559 (Fed. Cir. 1996)

---

[4]**Omnitracs:** Platform Science does not dispute that this instruction is correct as a matter of law.  That Platform Science refuses to agree to this instruction confirms why it is necessary: to dispel any suggestion or misunderstanding that Platform Science's own patents are not relevant to the question of infringement. While Omnitracs maintains its position that Platform Science's patents are not relevant to any issue to be tried, those patents are undisputedly not a defense to infringement, and the jury should be instructed accordingly.

**Platform Science:** Platform Science objects to the inclusion of this instruction as a premature curative instruction for which there is no basis. It is also not part of the FCBA model.

**[PLAINTIFFS PROPOSED ADDITIONAL INSTRUCTION: COURT'S INSTRUCTION NO. 16 – COMPARING PRODUCTS**

You have heard evidence about other commercial products comparing them to the Accused Products. However, in deciding the issues of infringement you may not compare the Accused Products to any other products, or to the drawing or other descriptions in the Asserted Patents. Infringement is only properly analyzed by comparing the Accused Products to the requirements of the Asserted Claims of the Asserted Patents. If all requirements of an Asserted Claim are not present, you should find the product does not infringe. The inclusion of additional elements or features in the Accused Products does not make a product non-infringing if you find that all the requirements of the claim are present.

As an example, if the patent claimed a chair with four legs, a seat, and a back, if the accused product had all of those elements but also had arms, it would still infringe. The addition of the arms would not make the chair non-infringing. If the accused device however only had three legs, and the patent specifically required four, it would not infringe. All the requirements would not be present.][5]

***Source: Rembrandt Diagnostics v. Alere, Inc., 16-CV-698-CAB-NLS, Dkt. 340 at 18 (S.D. Cal Nov. 29, 2018***

---

[5]**Omnitracs:** Omnitracs expects to offer evidence that Platform Science copied certain Omnitracs products embodying the asserted patents. Copying is relevant to key issues in the case, including willful infringement and secondary considerations of non-obviousness. *See, e.g., Apple Inc. v. Int'l Trade Comm'n*, 725 F.3d 1356, 1366-67 (Fed. Cir. 2013) (error not to consider copying evidence for secondary considerations); *see also Liqwd, Inc. v. L'Oréal USA, Inc.*, 941 F.3d 1133, 1136, 1138 (Fed. Cir. 2019) ("[W]here there is evidence of actual copying efforts, that evidence is always relevant.")5; *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1028 (S.D. Cal. 2023) ("Evidence of copying is relevant to the determination of willful infringement"); *Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, No. C 08-04990 JW, 2012 WL 2339762, at *4 (N.D. Cal. June 7, 2012) ("evidence of copying is relevant to an obviousness determination," and therefore, "insofar as Defendants allege that the patent at issue is invalid on grounds, inter alia, of obviousness, . . . Plaintiff's evidence of copying is relevant"). Indeed, the Court already denied Platform Science Motion in Limine to exclude evidence of copying. *See* 6-27-2024 Hr'g Tr. at 49. Therefore, it is neither inappropriate nor premature to include this instruction given the evidence that is expected to be presented at trial.
**Platform Science:** Platform Science objects to the inclusion of this instruction as a premature curative instruction for which there is no basis. It is also not part of the FCBA model.

# COURT'S INSTRUCTION NO. 17 – DIRECT INFRINGEMENT

In order to prove direct infringement, [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Platform Science made, used, sold, offered for sale within, or imported into the United States, a system or method that met all the limitations of an Asserted Claim, and did so without the permission of [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] during the time the Asserted Patent in which the Asserted Claim appears was in force. You must compare the Accused Products with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met by an Accused Product.

You must determine, separately for each Asserted Claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the Accused Product meets the additional requirement(s) of any claim that depends from the independent claim to determine whether the dependent claim has also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers, plus additional requirement(s) of its own.

**Source:** *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 16 (S.D. Cal. Sep. 2023)

## COURT'S INSTRUCTION NO. 18 – DIRECT INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIM

As I have previously explained, claim 16 of the '934 Patent includes requirements that are in means-plus-function form. A product meets a means-plus-function requirement of a claim if: (1) it includes a structure or a set of structures that perform the identical function recited in the claim, and (2) that structure or set of structures is either identical or "equivalent" to one or more of the described sets of structures in the '934 Patent that I defined earlier as performing the corresponding function. If the product does not perform the specific function recited in the claim, the "means-plus-function" requirement is not met, and the product does not literally infringe the claim. Alternatively, even if the product has a structure or a set of structures that performs the function recited in the claim but the structure or set of structures is neither identical nor "equivalent" to one or more of the sets of structures that I defined to you as being described in the '934 Patent and performing this function, the product does not literally infringe the asserted claim.

A structure or a set of structures may be found to be "equivalent" to one of the sets of structures I have defined as being described in the '934 Patent if a person having ordinary skill in the field of technology of the '934 Patent either would have considered the differences between them to be insubstantial at the time the '934 Patent issued or if that person would have found the structures performed the function in substantially the same way to accomplish substantially the same result. In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known of the interchangeability of the two structures or sets of structures at the time the patent issued. The fact that a structure or a set of structures is known to be "equivalent" today is not enough. The structure or set of structures must also have been available at the time the '934 Patent issued.

In this case, you will have to decide issues regarding the field of technology and level of ordinary skill in the art. I will instruct you later how to decide this.

In order to prove direct infringement of a means-plus-function limitation, [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] must prove the above requirements are met by a preponderance of the evidence.

***Source***: Federal Circuit Bar Association Model Jury Instructions § B.3, 3.1b (2020) (modified)

# COURT'S INSTRUCTION NO. 19 – ACTIVE INDUCEMENT

[**Omnitracs' Proposed Language:** Omnitracs argues] [**<u>Platform Science Proposed Language:</u>** Plaintiffs argue] that Platform Science has actively induced another to infringe the Asserted Patents. In order for Platform Science to have induced infringement, Platform Science must have induced another to directly infringe a claim of an Asserted Patent; if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis. In order to be liable for inducing infringement, Platform Science must:

    (1) have intentionally taken action that actually induced direct infringement;

    (2) have been aware of the Asserted Patent; and

    (3) have known that the acts it was causing would infringe the patent.

Platform Science may be considered to have known that the acts it was causing would infringe the Asserted Patents if it subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

***Source***: North District of California Model Patent Jury Instructions § B.3, 3.7

**COURT'S INSTRUCTION NO. 20 – CONTRIBUTORY INFRINGEMENT**

[**Omnitracs' Proposed Language:** Omnitracs argues] [**Platform Science Proposed Language**: Plaintiffs] that Platform Science is liable for contributory infringement by contributing to the direct infringement of the Asserted Patents by [**Omnitracs' Proposed Language:** Platform Science's customers] [**Platform Science Proposed Language**: <mark>Plaintiffs need to insert specific name of direct infringer</mark>(s)]]]. As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Platform Science is liable for contributory infringement of a claim if [**Omnitracs' Proposed Language:** Omnitracs proves] [**Platform Science Proposed Language**: Plaintiffs prove] by a preponderance of the evidence:

(1) Platform Science sells, offers to sell, or imports within the United States a component of a product, material, or apparatus for use in a process, during the time the Asserted Patents are in force;

(2) the component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

(3) the component, material, or apparatus constitutes a material part of the invention;

(4) Platform Science is aware of the Asserted Patents and knows that the component, material, or apparatus is especially made or adapted for use as an infringement of the claim; and

(5) [**Omnitracs' Proposed Language:** Platform Science's customers] [**Platform Science Proposed Language**: <mark>Plaintiffs need to insert specific name of direct infringer</mark>(s)]][6] use the component, material, or apparatus to directly infringe a claim.

***Source***: Federal Circuit Bar Association Model Jury Instructions § B.3, 3.3 (2020)

---

[6] **Omnitracs:** Omnitracs' proposal is clearer for the jury and the evidence at trial will establish which specific customers are at issue.
**Platform Science**: Plaintiffs insertion of "Platform Science's customers" is insufficient to prove direct infringement. It would be improper under the law to let Plaintiffs satisfy their burden with such non-specific and generalized allegations of direct infringement. Certain customers do not use Platform Science's accused Workflow application or Platform Science's accused hardware, for example.

**[PLAINTIFFS' PROPOSED INSTRUCTION: COURT'S INSTRUCTION NO. 21 – WILLFUL INFRINGEMENT**

In this case, Omnitracs also argues that Platform Science willfully infringed each of Omnitracs' Asserted Patents. Therefore, if you decide that Platform Science has infringed, either directly or indirectly, you must then go on to address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine whether Omnitracs proved that it was more likely than not that Platform Science knew of Omnitracs' patents and that Platform Science intentionally ignored or recklessly disregarded Omnitracs' patents. You may not determine that the infringement was willful just because Platform Science was aware of the patent and infringed it. Instead, you must also find that Platform Science engaged in additional conduct evidencing deliberate or reckless disregard of Omnitracs' patent rights.

To determine whether Platform Science acted willfully, consider all facts and assess Platform Science's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

1. Whether or not Platform Science acted consistently with the standards of behavior for its industry;

2. Whether or not Platform Science intentionally copied an Omnitracs product that was covered by an Asserted Patent;

3. Whether or not Platform Science reasonably believed that it did not infringe or that the Asserted Patents were invalid;

4. Whether or not Platform Science made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Platform Science attempted to design around the Asserted Patents; and

5. Whether or not Platform Science tried to cover up its infringement.][7]

---

[7] **Omnitracs:** It is proper to instruct the jury on willful infringement before validity. First, this is consistent with the Court's prior instructions in *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Dkt. 401 at 19 (S.D. Cal. Mar. 2022). Second, instructing the jury on willful infringement before validity is the common practice in this jurisdiction. *See, e.g., Whitewater West Industries, Ltd v. Pacific Surf Designs, Inc.*, 3-17-cv-01118, Dkt. 355 (S.D. Cal. Dec. 18, 2019); *Presidio Components, Inc. v. American Technical Ceramics*, 3-14-cv-02061, Dkt. 327 (S.D. Cal. Apr. 18, 2016). Third, willful infringement, as the name suggests, is related to infringement. As such, it makes the most logical sense to instruct the jury on willful infringement immediately after instructing the jury on infringement. Indeed, Platform Science's argument that the Court should instruct the jury on willful infringement after validly because "it is impossible to infringe an invalid patent," and therefore, "equally impossible to *willfully* infringe an invalid patent," is counterintuitive because Platform Science does not argue that all infringement instructions should come after validity. As such, it is proper to instruct the jury on willful infringement before validity.

In terms of content, Omnitracs' proposal follows the Court's instruction in *NuVasive, Inc. v. Alphatec Holdings, Inc.,* 18-cv-347-CAB-MDD, Dkt. 401 at 19 (S.D. Cal. Mar. 2022), modifying the instruction only to include the relevant factors the jury should consider in deciding whether Platform Science's infringement was willful—which are

**Source:** *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Dkt. 401 at 19 (S.D. Cal. Mar. 2022) (modified); Federal Circuit Bar Association Model Jury Instructions § B.3, 3.10 (2020) (modified); Northern District California Model Patent Jury Instructions § B.3, 3.8 (2019); *Halo Elecs., Inc. v. Pulse Elecs. Inc.*, 579 U.S. 93 (2016).

---

pulled directly from the FCBA model instruction—and to accurately reflect the standard to prove willful infringement, which includes willful blindness. *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs. Inc.*, 579 U.S. 93 (2016); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 837 (E.D. Tex. 2019) ("willful blindness is also a substitute for actual knowledge with respect to willful infringement").

**Platform Science:** Platform Science objects not only to the content of Plaintiffs proposed willfulness instruction but also the order in which it is presented to the jury. Platform Science proposes its own willfulness instruction after validity, below, as instruction 20. Because it is impossible to infringe an invalid patent, it is equally impossible to *willfully* infringe an invalid patent. *E.g.*, *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1323 (Fed. Cir. 2001) ("an invalid claim can not be infringed"). Willfulness should therefore be placed after validity and made conditional on it. Platform Science's proposal of making willfulness conditional on validity is common in this Court and others. *E.g, Carl Zeiss v. Nikon Corp.*, Dkt. 512 at question 5 (with instruction after question 2 to skip willfulness if the jury finds invalidity), Case 2:17-cv-07083-RGK-MRW (C.D. Cal. Dec. 17, 2018); *The Hillman Group, Inc. v. KeyMe, LLC*, Dkt. 294 at question 3, Case 2:19-cv-00209-JRG (E.D. Tex. April 12, 2021). Further, the Court should consider what happens if the jury first finds willfulness and then finds invalidity. The result would be facially inconsistent and would also create a host of problems on appeal. Finally, asking the jury to reach a conclusion on willfulness before even thinking about validity is unfairly prejudicial to Platform Science because the parties agree that validity is relevant to willfulness.

In terms of content, Platform Science's proposed instruction follows the FCBA model instructions without additional edits except for filling in bracketed language. ***Willfulness requires knowledge.*** The FCBA instruction includes this basic and well established knowledge requirement for willfulness. Plaintiffs' proposed instruction, on the other hand, takes liberties with established law and includes standards that have not been endorsed by the Federal Circuit. For example, contrary to being "black letter" law as Plaintiffs represented at the pretrial conference (PTC Tr. at 67:15), the Federal Circuit has never endorsed the proposition that willful blindness satisfies the standard for willful infringement. *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 757, cited by Plaintiffs at the pretrial conference, is a case involved the standard for induced infringement, and neither Supreme Court nor the Federal Circuit have ever extended that standard to apply for willful infringement, and it is not a given that they will ever do so. The Supreme Court specifically declined to extend concepts from *Global Tech* in *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 925 (2014) ("While we have drawn on criminal law concepts in the past in interpreting § 271(b), *see Global–Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. ——, ——, 131 S.Ct. 2060, 2068–2070, 179 L.Ed.2d 1167 (2011), we think it unlikely that Congress had this particular doctrine in mind when it enacted the Patent Act of 1952, given the doctrine's inconsistency with the Act's cornerstone principle that patentees have a right only to the set of elements claimed in their patents and nothing further.").

## COURT'S INSTRUCTION NO. 22 – INVALIDITY OVERVIEW

I will now instruct you on the rules you must follow in deciding whether or not Platform Science has proven that any of the Asserted Claims are invalid.  To prove that any claim of a patent is invalid, Platform Science must persuade you by clear and convincing evidence, i.e., Platform Science must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Source**: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 18 (S.D. Cal. Sep. 2023)

**COURT'S INSTRUCTION NO. 23 – PRIOR ART OVERVIEW**

Platform Science contends that each claim of each Asserted Patent is invalid. Specifically, Platform Science claims that the following claims are invalid:

- **[Platform Science to fill in]**[8]

I will now instruct you on the rules you must follow in deciding whether or not Platform Science has proven that one or more of these claims in invalid.

Platform Science must persuade you by clear and convincing evidence that [Omnitracs' Proposed Language: it is highly probable that][9] the claim is invalid—this is, you must be left with a clear conviction that the claim is invalid.

***Source:*** *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 20 (S.D. Cal. Mar. 2022)

---

[8] Platform Science will fill this in ahead of the charge conference.

[9] **Omnitracs:** This language comes directly from the Court's previous instruction in *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 20 (S.D. Cal. Mar. 2022).

**Platform Science**: Platform Science objects to Plaintiffs proposed additional language. It is extraneous, redundant, and likely to cause confusion.

## COURT'S INSTRUCTION NO. 24 – ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." Platform Science contends that the Asserted Claims of the Asserted Patents are invalid because the claimed inventions are anticipated. Platform Science must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Platform Science contends that the following pieces of prior art anticipate the Asserted Claims of the '308 Patent: **[Platform Science to fill in relevant prior art].**[10]

Platform Science contends that the following pieces of prior art anticipate the Asserted Claims of the '568 Patent: **[Platform Science to fill in relevant prior art].**[11]

Platform Science contends that the following pieces of prior art anticipate the Asserted Claims of the '575 Patent: **[Platform Science to fill in relevant prior art].**[12]

Platform Science contends that the following pieces of prior art anticipate the Asserted Claims of the '934 Patent: **[Platform Science to fill in relevant prior art].**[13]

Anticipation must be determined on a claim-by-claim basis. Platform Science must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the Asserted Claim. The Asserted Claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Platform Science is relying on prior art that was not considered by the Patent and Trademark Office ("PTO") during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claim from which it depends is necessarily anticipated as well.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 21 (S.D. Cal. Sep. 2023)

---

[10] Platform Science will fill this in ahead of the charge conference.
[11] Platform Science will fill this in ahead of the charge conference.
[12] Platform Science will fill this in ahead of the charge conference.
[13] Platform Science will fill this in ahead of the charge conference.

# COURT'S INSTRUCTION NO. 25 – PUBLIC USE PRIOR ART

Platform Science contends that certain products are prior art to the inventions recited in the Asserted Claims because those products were publicly used in the United States more than one year before the earliest effective filing date of the claimed invention.

If an embodiment of the claimed invention was both (1) accessible to the public or commercially exploited in the United States and (2) ready for patenting more than one year before the effective filing date of the patent, it will be prior art to the claimed invention.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. Factors relevant to determining whether a claimed invention was accessible to the public include: the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding any testing and experimentation. The absence of affirmative steps to conceal the use of the invention is evidence of a public use. However, secret use by a third party is not public, unless members of the public or employees of the third party have access to the invention.

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use. The invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention sufficient to allow a person of ordinary skill in the art to make or use the invention. An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

Platform Science must show by clear and convincing evidence that the alleged products using the claimed invention were publicly used, i.e., sold or offered for sale in the United States, where there were no confidentiality restrictions, and that the alleged products using the claimed invention were ready for patenting (e.g., reduced to practice) before the earliest effective filing date of the claimed invention.

A manual is not itself evidence of the public accessibility of a product. Oral testimony by an interested party on its own will generally not suffice as clear and convincing evidence. Rather, such oral testimony must be corroborated by some other evidence, including documents and testimonial evidence of disinterested parties.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 22-23 (S.D. Cal. Sep. 2023)

## COURT'S INSTRUCTION NO. 26 – OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Platform Science may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of vehicle telematics systems or onboard fleet monitoring and data collection systems.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of **[Omnitracs' Proposed Language:** or onboard fleet monitoring and data collection systems] [**Platform Science Proposed Language**: message systems for the '308 Patent and] vehicle telematics systems [**Platform Science Proposed Language**: for the XRS Patents][14] that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention, and, if present, so-called secondary considerations of non-obviousness, which I will describe shortly. Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:

1. whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

2. whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3. whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

---

[14] **Omnitracs:** Omnitracs objects to Platform Science's proposed field of skill in the art for the '308 Patent because it was raised for the first time in these instructions and is not supported by any expert report or brief filed in this case. Indeed, in his expert report on validity, Platform Science's own expert, Dr. Michalson, defined the relevant field of the '308 Patent as "communication devices (wired and wireless), telematics and positioning systems, and associated technologies." *See* Michalson Rpt. ¶ 80. Similarly, during claim construction, Court defined the relevant field of the Asserted Patents as requiring "experience in the field of vehicle telematics or onboard fleet monitoring and data collections." *See* 10/27/2022 Claim Const. Hr. Tr. at 4:12-24. Moreover, because all Asserted Patents relate to the field of vehicle telematics systems, as Platform Science's expert reports acknowledge, it is appropriate to include only one instruction on the relevant field.
**Platform Science**: Platform Science's proposed language reflects the different subject matters between the '308 patent owned by Omnitracs and the three patents owned by XRS. The person of ordinary skill in the art is not identical between the two areas of technology.

4. whether the prior art teaches away from combining elements in the claimed invention;

5. whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find that the prior art rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a) Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b) Whether the claimed invention satisfied a long-felt need;

c) Whether others had tried and failed to make the claimed invention;

d) Whether others invented the claimed invention at roughly the same time;

e) Whether others copied the claimed invention;

f) Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g) Whether the claimed invention achieved unexpected results;

h) Whether others in the field praised the claimed invention;

i) Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j) Whether others sought or obtained rights to the patent from the patent holder; and

k) Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

Platform Science contends that the following pieces of prior art alone or in combination render the Asserted Claims obvious and therefore invalid:

- For the '308 Patent: **[Platform Science to fill in relevant prior art].**[15]

---

[15] Platform Science will fill this in ahead of the charge conference.

- For the '568 Patent: **[Platform Science to fill in relevant prior art].**[16]

- For the '575 Patent: **[Platform Science to fill in relevant prior art].**[17]

- For the '934 Patent: **[Platform Science to fill in relevant prior art].**[18]

***Source*:** *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 24-25 (S.D. Cal. Sep. 2023)

---

[16] Platform Science will fill this in ahead of the charge conference.
[17] Platform Science will fill this in ahead of the charge conference.
[18] Platform Science will fill this in ahead of the charge conference.

# COURT'S INSTRUCTION NO. 27 – PRIOR ART CONSIDERED BY PTO

Where Platform Science is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity. In weighting the prior art references Platform Science relies on, you may also consider whether the prior art Platform Science is relying on is similar to or the same as the prior art considered by the PTO.

**Source**: Federal Circuit Bar Association Model Patent Jury Instructions § 4.3c(ii); *CAP-XX, Ltd. v. Maxwell Technologies, Inc.*, No. 19-cv-01733, D.I. 314 (D. Del. Dec. 15, 2023), at 32–33 (modified); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 111 (2011)

**COURT'S INSTRUCTION NO. 28 – PERSON OF SKILL IN THE ART**

In deciding what the level of ordinary skill in the field of vehicle telematics systems or onboard fleet monitoring and data collection systems is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

In this case, the Court instructs that the level of ordinary skill in the field was a person having at least a bachelor's degree in electrical engineering, physics, computer engineering, computer science or related technical field, or equivalent training and experience, and at least two to three years of experience in the field of vehicle telematics systems or onboard fleet monitoring and data collection systems.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 27 (S.D. Cal. Sep. 2023)

**COURT'S INSTRUCTION NO. 29 – SCOPE & WEIGHT OF PRIOR ART**

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Where Platform Science is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether Platform Science has carried its clear-and-convincing burden of proving invalidity.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 28 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 26 (S.D. Cal. Mar. 2022)

**[PLATFORM SCIENCE PROPOSED INSTRUCTION: COURT'S INSTRUCTION NO. 20 – WILLFUL INFRINGEMENT**

In this case, Plaintiffs also argue that Platform Science willfully infringed each of their Asserted Patents. Therefore, if you decide that Platform Science has infringed, either directly or indirectly, you must then go on to address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine whether Plaintiffs proved that it was more likely than not that Platform Science knew of Plaintiffs' Asserted Patents and that Platform Science deliberately infringed Plaintiffs' Asserted patents. You may not determine that the infringement was willful just because Platform Science was aware of the patent and infringed it. Instead, you must also find that Platform Science deliberately infringed Plaintiffs' Asserted Patents.

To determine whether Platform Science acted willfully, consider all facts and assess Platform Science's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited to:

1. Whether or not Platform Science acted consistently with the standards of behavior for its industry;

2. Whether or not Platform Science intentionally copied Plaintiffs' product that was covered by an Asserted Patent;

3. Whether or not Platform Science reasonably believed that it did not infringe or it reasonably believed that the Asserted Patents were invalid;

4. Whether or not Platform Science made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Platform Science attempted to design around the Asserted Patents; and

5. Whether or not Platform Science tried to cover up its infringement.][19]

***Source:*** *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 19 (S.D. Cal. Mar. 2022) (modified); Federal Circuit Bar Association Model Jury Instructions § B.3, 3.10 (2020); Northern District California Model Patent Jury Instructions § B.3, 3.8 (2019); *Halo Elecs., Inc. v. Pulse Elecs. Inc.*, 579 U.S. 93 (2016).
**30 – DAMAGES OVERVIEW**

If you find that Platform Science infringed any valid Asserted Claim of the Asserted Patents, you must then consider what amount of damages to award to [**Platform Science Proposed Language:**Plaintiffs]. [**Omnitracs' Proposed Language:** Omnitracs for alleged infringement during the period of May 26, 2020 through trial.]  I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If

---

[19] **Omnitracs:** For the reasons explained above with respect to Omnitracs' proposed willfulness instruction, Omnitracs' proposed instruction should be adopted.
**Platform Science**: Platform Science's proposed instruction follows the FCBA model instructions without additional edits except for filling in bracketed language. For the reasons explained in Platform Science's objections to Plaintiffs proposed willfulness instruction, Platform Science's proposed instruction should be adopted.

you find that Platform Science has not infringed any valid claim of the Asserted Patents, then Omnitracs is not entitled to any damages.

The damages you award must be adequate to compensate Omnitracs for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] in approximately the same financial position that it would have been in had the infringement not occurred.

[**Omnitracs' Proposed Language:** Omnitracs has] [**Platform Science Proposed Language:** Plaintiffs have] the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] establishes that it more likely than not suffered. While [**Omnitracs' Proposed Language:** Omnitracs is] [**Platform Science Proposed Language:** Plaintiffs are] not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] may be entitled to recover. In this case, Omnitracs seeks lost profits from some sales related to the '308 patent and a reasonable royalty for the remainder. Lost profits consists of any actual reduction in business profits Omnitracs suffered as a result of Platform Science's infringement. A reasonable royalty is defined as the money amount [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] and Platform Science would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that [**Omnitracs' Proposed Language:** Omnitracs is] [**Platform Science Proposed Language:** Plaintiffs are] entitled to recover no less than a reasonable royalty for each infringing sale[**Platform Science Proposed Language:** , if you find infringement][20].

***Source***: *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 27 (S.D. Cal. Mar. 2022) (modified); *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 31 (S.D. Cal. Sep. 2023) (modified); Federal Circuit Bar Association Model Jury Instructions § B.5, 5.1 (2020).

---

[20]**Omnitracs:** The phrase proposed by Platform Science is redundant because royalties are only awarded on infringing sales.
**Platform Science**: Omitting the phrase proposed by Platform Science causes the instruction to be misleading and suggests the Court has already found infringement. There can be no infringing sales if the jury does not first find infringement.

## COURT'S INSTRUCTION NO. 31 – LOST PROFITS: CAUSATION

To recover lost profits for any act of infringement of the '308 patent, Omnitracs must show a causal relationship between the infringement and Omnitracs' lost profit. In other words, Omnitracs must show that, "but for" the infringement, there is a reasonable probability that Omnitracs would have [**Omnitracs' Proposed Language:** made all or] [**Platform Science Proposed Language**: earned higher profits. To show this, Omnitracs must prove that, if there had been no infringement, it would have made][21] some portion of the sales that Platform Science made of the [**Platform Science Proposed Language**: allegedly]infringing product.

Omnitracs is entitled to lost profits if it establishes each of the following:

1. that there was a demand for the patented product;

2. that there were no available, acceptable non-infringing substitutes for the products for which Omnitracs seeks lost profits, or, if there were, the number of sales made by Platform Science that Omnitracs would have made despite the availability of any acceptable non-infringing substitutes;

3. that Omnitracs had the manufacturing and marketing capacity to make any infringing sales actually made by Platform Science and for which Omnitracs seeks an award of lost profits—in other words, that Omnitracs was capable of satisfying the demand; and

4. the amount of profit Omnitracs would have made if Platform Science had not infringed.

**Source:** *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 28-29 (S.D. Cal. Mar. 2022); Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.2 (2020).

---

[21] **Omnitracs:** Omnitracs' proposal mirrors the instruction this Court gave in *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD and is more clear.
Platform Science: Plaintiffs' proposal selectively omits language from the FCBA model instructions, which Platform Science proposes including.

## COURT'S INSTRUCTION NO. 32 – LOST PROFITS: DEMAND

Demand for the patented product can be proven by significant sales of a patent holder's patented product or significant sales of an infringing product containing the patented features.

***Source:*** *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 30 (S.D. Cal. Mar. 2022)

# COURT'S INSTRUCTION NO. 33 – NON-INFRINGING SUBSTITUTES – ACCEPTABILITY

To be an "acceptable, non-infringing substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. If purchasers of an alleged infringer's product were motivated to buy that product because of features available only from that product and a patent holder's product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent holder's and an alleged infringer's products. On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales. [**Omnitracs' Proposed Language**: Non-infringing alternatives are determined on a customer-by-customer basis.

Omnitracs may prove entitlement to lost profits for some of its sales but not others.][22]

*Source*: Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.2 (2020); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017).

---

[22] **Omnitracs:** This proposed addition is an accurate recitation of the law and is necessary under the facts of this case.
**Platform Science**: Plaintiffs proposed additions are not found in the FCBA model instructions and should be omitted.

**[Platform Science Proposed Instruction: COURT'S INSTRUCTION NO. 34 – NON-INFRINGING SUBSTITUTES – AVAILABILITY**

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. Factors suggesting the potential substitute was available include whether the material, experience, and know-how to make or use the alleged substitute were readily available at the time of the infringement. Factors suggesting the potential substitute was not available include whether the material was of such high cost as to render the alternative unavailable and whether the alleged infringer had to design or invent around the patented technology to develop the alleged substitute.][23]

**Source**: *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 32 (S.D. Cal. Mar. 2022) (modified); *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 35 (S.D. Cal. Sep. 2023) (modified); Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.2 (2020).

**[Plaintiffs Proposed Instruction: COURT'S INSTRUCTION NO. 34 NON-INFRINGING SUBSTITUTES – AVAILABILITY**

An acceptable non-infringing substitute must also have been "available" during the period when the allegedly infringing product was sold. If a potential substitute was not actually on sale during the infringement period, it is Platform Science's burden to establish that the potential substitute was still "available." Factors suggesting the potential substitute was available include whether the necessary equipment, materials, experience, and know-how to make or use the alleged substitute were readily available at the time of the infringement. Factors suggesting the potential substitute was not available include whether the material was of such high cost as to render the alternative unavailable and whether the alleged infringer had to design or invent around the patented technology to develop the alleged substitute.

Platform Science bears the burden to prove that a supposed non-infringing alternative is both technically and economically feasible at the time when the infringement first began.]

**Source**: *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Dkt. 401 at 32 (S.D. Cal. Mar. 2022) (modified); *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Dkt. 1014 at 35 (S.D. Cal. Sep. 2023) (modified)

---

[23] **Omnitracs:** Omnitracs' proposed instruction largely tracks the instructions the Court previously gave in *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD and *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, and the added burden of proof language is an accurate recitation of law.
**Platform Science**: Platform Science's proposed instruction is from the FCBA model. Plaintiffs have selectively rewritten the FCBA's model instruction.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COURT'S INSTRUCTION NO. 35 – LOST PROFITS – CAPACITY**

A patent holder is only entitled to lost profits for sales it could have actually made. In other words, Omnitracs must show that it had the manufacturing and marketing capability to make the sales it said it lost. This means Omnitracs must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

***Source***: Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.2 (2020).

**[Platform Science Proposed Instruction: COURT'S INSTRUCTION NO. 36 – LOST PROFITS: MARKET SHARE**

If Omnitracs establishes it would have made some, but not all, of Platform Science's sales but for the alleged infringement of the '308 patent, the amount of sales that Omnitracs lost may be shown by proving Omnitracs' share of the relevant market, excluding infringing products.  In determining Omnitracs' market share, the market must be established first, which requires determining which products are in that market. Products are considered in the same market if they are "sufficiently similar" to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.][24]

***Source***: *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 33 (S.D. Cal. Mar. 2022) (modified); Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.2 (2020)

**[Plaintiffs Proposed Instruction: COURT'S INSTRUCTION NO. 36 – LOST PROFITS: MARKET SHARE**

Omnitracs may prove the number of sales it would have made if the infringement had not happened by proving its share of the relevant market excluding infringing products. You may award Omnitracs a share of profits equal to that market share. Omnitracs may be awarded a share of profits equal to its market share even if there were non-infringing alternatives available. In deciding Omnitracs' market share, you must decide which products are in the same market as Omnitracs' products and the accused products. Products are in the same market if they are sufficiently similar to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than or possess characteristics significantly different than the other.

***Source***: *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 33 (S.D. Cal. Mar. 2022) (modified); Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.2 (2020)

---

[24]**Omnitracs:** Platform Science's proposed instructions omits important language from the FCBA model and the instruction the Court previously gave in *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD.
**Platform Science:** Platform Science's proposed instruction is from the FCBA model. Plaintiffs have selectively rewritten the FCBA's model instruction.

1  **COURT'S INSTRUCTION NO. 37 – LOST PROFITS: LOST SALES**

2  Omnitracs may calculate its lost profits on lost sales by computing the lost
3  revenue for sales it claims it would have made but for the [**Platform Science Proposed**
   **Language**: alleged][25]infringement of the '308 patent and subtracting from that figure
   the amount of additional costs or expenses it would have incurred in making those lost
4  sales [**Platform Science Proposed Language**: .][26]

5  *Source*: *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No.
   401 at 34 (S.D. Cal. Mar. 2022) Federal Circuit Bar Association Model Patent Jury
6  Instructions, § B.5, 5.2 (2020)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

---

24  [25]**Omnitracs:** Platform Science's proposal is not included in the instructions previously
    given by this Court and is unnecessary.
25  **Platform Science:** Platform Science proposes including "alleged" before instances of
    infringement to avoid confusion and the implication that the Court has found
26  infringement.
    [26]**Omnitracs:** Omnitracs' proposal mirrors the instruction this Court gave in *NuVasive,*
27  *Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD and is more clear.
     **Platform Science**: Platform Science's proposed language is included in the FCBA
28  model instructions. Plaintiffs selectively omitted this language.

**[Platform Science Proposed Instruction: COURT'S INSTRUCTION NO. 38 – LOST PROFITS: COLLATERAL SALES**

In this case, Omnitracs is seeking lost profits from sales of data plans and ancillary hardware, such as cables and mounts, which Omnitracs contends it would have sold along with the product it sells that competes with the products alleged to infringe the '308 patent. These products sold along with the competitive product are called collateral products.

To recover lost profits on sales of such collateral products, Omnitracs must establish two things. First, Omnitracs must establish it is more likely than not that Omnitracs would have sold the collateral products but for the infringement. Second, a collateral product and the competitive product together must be analogous to components of a single assembly or parts of a complete machine, or, in other words, they must constitute a single functional unit.

Recovery for lost profits on sales of collateral products must not include items that essentially have no functional relationship to the competitive product and that have been sold with the competitive product only as a matter of convenience or business advantage.][27]

***Source***: Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.3 (2020).

**[Plaintiffs Proposed Instruction: COURT'S INSTRUCTION NO. 38 – LOST PROFITS: COLLATERAL SALES**

This this case, Omnitracs is seeking profits from sales of data plans and ancillary hardware, such as cables and mounts, which it contends it would have sold along with the Accused Products. These products are called collateral products.

To recover lost profits on sales of such collateral product Omnitracs must prove two things. First, that is more likely than not that Omnitracs would have sold the collateral products but for the infringement. Second, a collateral product and the patented product together must be analogous to components of a single assembly or parts of a complete machine, or they must constitute a functional unit.

]

***Source***: North District of California Model Patent Jury Instructions § B.5, 5.4

---

[27] **Omnitracs:** Omnitracs contends that the N.D. Cal. Model is more clear with respect to this instruction.
**Platform Science**: Platform Science's proposed instruction is from the FCBA model instructions. Plaintiffs have selectively rewritten the FCBA's model instruction.

## COURT'S INSTRUCTION NO. 39 – REASONABLE ROYALTY

If you find that an Asserted Claim is infringed and not invalid, [**Omnitracs' Proposed Language:** Omnitracs is] [**Platform Science Proposed Language:** Plaintiffs are] entitled to at least a reasonable royalty to compensate it for that infringement. If you find that [**Omnitracs' Proposed Language:** Omnitracs has] [**Platform Science Proposed Language:** Plaintiffs have] not proven its claim for lost profits, or that it has proven its claim for lost profits for only a portion of the infringing sales, then you must award [**Omnitracs' Proposed Language:** Omnitracs] [**Platform Science Proposed Language:** Plaintiffs] a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

***Source***: *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 36 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 40 – REASONABLE ROYALTY OVERVIEW**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 32 (S.D. Cal. Sep. 2023)

**[Platform Science Proposed Instruction: COURT'S INSTRUCTION NO. 41 – REASONABLE ROYALTY FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)  The value that the claimed invention contributes to the accused product.

(2)  The value that factors other than the claimed invention contributes to the accused product.

(3)  Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent businesspeople.][28]

*Source*: Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.8 (2020).

---

[28]**Omnitracs:** Both damages experts in the case discuss all 15 *Georgia-Pacific* factors in their expert reports. To the extent any of these factors or evidence related to these factors are not presented at trial, the list of factors can be modified accordingly at the charge conference.

**Platform Science**: Platform Science's proposed instruction tracks the language from the FCBA model instruction. The Federal Circuit has made it clear that the *Georgia Pacific* factors are not mandatory, and it may be error to include factors about which there is no evidene. *See, e.g., Energy Transp. Group, Inc. v. William Demant Holding A/S/*, 697 F.3d 1342, 1357 (Fed. Cir. 2012) ("[T]his court does not endorse Georgia-Pacific as setting forth a test for royalty calculations, but only as a list of admissible factors informing a reliable economic analysis."). If the factors are used, the jury should be instructed only on the factors that are relevant to the evidence before the jury. *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1231 (Fed. Cir. 2014) (stating that "the district court erred by instructing the jury on multiple *Georgia-Pacific* factors that are not relevant, or are misleading, on the record before it"); *Uniloc USA, Inc. v. Microsoft Corp.*, 632, F.3d 1292 (Fed. Cir. 2011) (25% "rule of thumb" inadmissible); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam) (licenses must be related to patent at issue to be relevant to a reasonable royalty); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009), cert. denied, 130 S. Ct. 3324 (2010) (vacating and rewarding jury award as excessive); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**[Plaintiffs Proposed Instruction: COURT'S INSTRUCTION NO. 41 – REASONABLE ROYALTY FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

1. The royalties received by the patentee (Omnitracs) for the licensing of the patents-in-suit, proving or tending to prove an established royalty.
2. The rates paid by the licensee (Platform Science) for the use of other patents comparable to the patents-in-suit.
3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured products may be sold.
4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.
6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
7. The duration of the patents and the term of the license.
8. The established profitability of the product made under the patent; its commercial success; and its current popularity.
9. The extent to which Platform Science has made use of the invention, and any evidence probative of the value of that use.
10. The utility and advantages of the patent property over the old modes or devices if any, that had been used for working out similar results.
11. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the Licensor; and the benefits to those who have used the invention.
12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.
14. The opinion testimony of qualified experts.
15. The amount that a licensor (such as Omnitracs) and a licensee (such as Platform Science) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the

1    alleged infringer would have been willing to pay and the patent holder would have been

2    willing to accept, acting as normally prudent businesspeople.][29]

3    **Source:** *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 33 (S.D.

4    Cal. Sep. 2023) (modified); *Georgia Pacific Corp. v. United States Plywood Corp.*, 318
     F. Supp. 1116 (S.D.N.Y 1970)

---

[29] **Omnitracs:** Omnitracs proposes updating this instruction after the conclusion of evidence to include the relevant factors.

## COURT'S INSTRUCTION NO. 42 – APPORTIONMENT

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or [**Omnitracs' Proposed Language:** Omnitracs'] [**Platform Science Proposed Language:** Plaintiffs'] size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

If the claimed patented features are not the sole driving factor for customer demand for the accused infringing product, then you must perform what is called apportionment. When damages must be apportioned, the amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or [**Omnitracs' Proposed Language:** Omnitracs'] [**Platform Science Proposed Language:** Plaintiffs'] size or market position. Put differently, when apportionment is required, a royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.

On the other hand, if demand for the entire accused product depends only on the claimed feature(s), then apportionment is not necessary even though the accused product includes non-patented features.

*Source*: Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.12 (2020)

**COURT'S INSTRUCTION NO. 43 – COMPARABLE LICENSES**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award [**Platform Science Proposed Language:** similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.][30]

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement. When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 34 (S.D. Cal. Sep. 2023) (modified); Federal Circuit Bar Association Model Patent Jury Instructions, § B.5, 5.9 (2020)

---

[30] **Platform Science**: Platform Science's proposed instruction tracks the language from the FCBA model instruction. Plaintiff have selectively omitted the language proposed by Platform Science.

[**Platform Science Proposed Instruction:** COURT'S INSTRUCTION NO. 44 – COMPARABLE LICENSES

You have heard argument that a company called Solera, which is owned by Vista Equity, purchased Plaintiffs Omnitracs and XRS for $2.1 billion.  Plaintiffs Omnitracs and XRS are also owned by Vista which means this was a transaction between two companies owned by the same parent company, Vista.  A payment made by one company to another when both companies are owned by the same parent company is not an arms-length transaction and does not provide a market-based indication of the value of a company.  In addition, this $2.1 billion figure has no relevance to damages in this case and should be disregarded if you determine that Platform Science is liable and that Plaintiffs should receive damages.][31]

---

[31] Omnitracs objects to this instruction.  First, Platform Science did not propose the inclusion of this instruction until 1:45 AM, nearly two hours *after* the parties' joint proposed jury instructions were due.  Second, there is no basis or legal authority for this instruction, which merely rehashes the arguments in Platform Science's Motion in Limine that were rejected by the Court. 6-27-2024 Hr'g Tr. at 81-83.  Third, the instruction improperly (and inaccurately) characterizes facts instead of instructing the jury on the law.  Fourth, this proposed instruction is an improper curative instruction given that Omnitracs does not rely on these acquisitions for calculating damages or as a comparative license.  Finally, this addition is unnecessary, as the proposed instructions above adequately inform the jury on what should be considered in assessing damages.

**COURT'S INSTRUCTION NO. 45 – SELECTING A PRESIDING JUROR**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

***Source*:** *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 36 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 38 (S.D. Cal. Mar. 2022)

1

**COURT'S INSTRUCTION NO. 46 – NOTES**

2

3

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

4

5

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 37 (S.D. Cal. Sep. 2023)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COURT'S INSTRUCTION NO. 47 – JURY CONDUCT

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 38-39 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 39-40 (S.D. Cal. Mar. 2022)

## COURT'S INSTRUCTION NO. 48 – COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you.

No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.

If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question.

Remember that you are not to tell anyone, including the court, how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 40 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 41 (S.D. Cal. Mar. 2022)

**COURT'S INSTRUCTION NO. 49 – RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

***Source***: *Finjan LLC v. ESET LLC*, 17-cv-183-CAB-BGS, Doc. No. 1014 at 41 (S.D. Cal. Sep. 2023); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 18-cv-347-CAB-MDD, Doc. No. 401 at 42 (S.D. Cal. Mar. 2022)

1    Dated:  July 2, 2024                KIRKLAND & ELLIS LLP.

2
                                         By: */s/ Akshay S. Deoras*
3                                        Michael W. De Vries (SBN 211001)
                                         michael.devries@kirkland.com
4                                        Justin Singh (SBN 266279)
                                         Justin.singh@kirkland.com
5                                        KIRKLAND & ELLIS LLP
                                         555 South Flower Street, Suite 3700
6                                        Los Angeles, CA 90071
                                         Telephone: (213) 680-8400
7
                                         Adam R. Alper (SBN 196834)
8                                        adam.alper@kirkland.com
                                         Akshay S. Deoras (SBN 301962)
9                                        akshay.deoras@kirkland.com
                                         Natalie Sinzig (SBN 300515)
10                                       natalie.sinzig@kirkland.com
                                         Jenny Quang (SBN 345742)
11                                       Jenny.quang@kirkland.com
                                         KIRKLAND & ELLIS LLP
12                                       555 California Street
                                         San Francisco, CA 94104
13                                       Telephone: (415) 439-1400

14
                                         Gianni Cutri (*Admitted Pro Hac Vice*)
15                                       gianni.cutri@kirkland.com
                                         Jeremy Roux (Admitted *Pro Hac Vice*)
16                                       Jeremy.roux@kirkland.com
                                         Christian Huehns (admitted *Pro Hac Vice*)
17                                       christian.huehns@kirkland.com
                                         KIRKLAND & ELLIS LLP
18                                       300 North LaSalle
                                         Chicago, IL 60654
19                                       Telephone: (312) 862-2000

20                                       Leslie M. Schmidt (*Admitted Pro Hac Vice*)
                                         leslie.schmidt@kirkland.com
21                                       KIRKLAND & ELLIS LLP
                                         601 Lexington Avenue
22                                       New York, NY 10022
                                         Telephone: (212) 446-4800
23

24                                       Laura Kelley Uhlenhuth (SBN 330678)

25                                       laura.uhlenhuth@kirkland.com

                                         KIRKLAND & ELLIS LLP
26
                                         60 East South Temple, Suite 700
27                                       Salt Lake City, Utah 84111
                                         Telephone: (801) 877-8100
28

|   |   |
|---|---|
| 1 | Counsel for Plaintiffs Omnitracs, LLC and XRS Corporation |
| 2 |   |
| 3 | Dated:  July 2, 2024   FISH & RICHARDSON P.C. |
| 4 |   |
| 5 | By: */s/ Tim Rawson* |
| 6 | Christopher S. Marchese (SBN 170239) marchese@fr.com |
| 7 | Jason W. Wolff (SBN 215819) wolff@fr.com |
| 8 | Seth M. Sproul (SBN 217711) sproul@fr.com |
| 9 | John W. Thornburgh (SBN 154627) thornburgh@fr.com |
| 10 | Ryan P. O'Connor (SBN 253596) oconnor@fr.com |
| 11 | Tim Rawson (SBN 304755) rawson@fr.com |
| 12 | Cheryl Wang (SBN 323305) cwang@fr.com |
| 13 | Jeff Burton (SBN 328305) jburton@fr.com |
| 14 | Yun Dong (SBN 346210) dong@fr.com |
| 15 | FISH & RICHARDSON P.C. |

Dated:  July 2, 2024

FISH & RICHARDSON P.C.

By: */s/ Tim Rawson*
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Jason W. Wolff (SBN 215819)
wolff@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
John W. Thornburgh (SBN 154627)
thornburgh@fr.com
Ryan P. O'Connor (SBN 253596)
oconnor@fr.com
Tim Rawson (SBN 304755)
rawson@fr.com
Cheryl Wang (SBN 323305)
cwang@fr.com
Jeff Burton (SBN 328305)
jburton@fr.com
Yun Dong (SBN 346210)
dong@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Brent P. Ray (Admitted Pro Hac Vice)
bray@kslaw.com
Nicholas Sieger *(Admitted Pro Hac Vice)*
nsieger@kslaw.com
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Tel: (312) 764-6925

Angela Tarasi (Admitted Pro Hac Vice)
atarasi@kslaw.com
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Tel: (720) 535-2300 / Fax: (720) 535-2400

Patrick Lafferty (*Admitted Pro Hac Vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

King & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Tel: (202) 626-9603

Counsel for Defendant Platform Science, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FILER'S ATTESTATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court of the Southern District of California, I certify that authorization for the filing of this document has been obtained from the other signatory shown above and that said signatory has authorized placement of his electronic signature on this document.

Executed on July 2, 2024.

*/s/ Akshay S. Deoras*
Akshay S. Deoras

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 2, 2024, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Akshay S. Deoras*
Akshay S. Deoras