Christopher S. Marchese (SBN 170239)
marchese@fr.com
Jason W. Wolff (SBN 215819)
wolff@fr.com
Seth M. Sproul (SBN 217711)
sproul@fr.com
Tim Rawson (SBN 304755)
rawson@fr.com
Cheryl Wang (SBN 323305)
cwang@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070 / Fax: (858) 678-5099

Brent P. Ray (Admitted Pro Hac Vice)
bray@kslaw.com
KING & SPALDING LLP
110 N. Wacker Drive, Suite 3800
Chicago, IL 60606
Tel: (312) 764-6925

*[Additional Counsel Listed on Signature Page]*

Attorneys for Defendant Platform Science, Inc.

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC AND XRS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>PLATFORM SCIENCE, INC.<br><br>Defendant. | Case No. 3:20-cv-0958-CAB-DDL<br><br>**DEFENDANT PLATFORM SCIENCE, INC.'S PROPOSED CURATIVE JURY INSTRUCTIONS**<br><br>District Judge: Hon. Cathy Ann Bencivengo<br>Magistrate Judge: David D. Leshner<br><br>Trial Date:    July 8, 2024<br>Trial Time:    9:00 a.m.<br>Courtroom:    15A |

**JURY INSTRUCTION NO. ____ [PLATFORM SCIENCE'S PROPOSAL]**

You have seen documents and heard argument and testimony alleging copying by Platform Science. This includes assertions in questions and testimony that information belonged to Plaintiffs and was received by Platform Science or individuals associated with Platform Science. This evidence includes 2014 and 2015 emails involving Michael Bray, Jake Fields, and Jack Kennedy regarding public hours of service information, federal government rules, YouTube links, economic models, and market information; and emails between Schneider and Platform Science concerning Schneider information and data. You have also heard generic assertions by Plaintiffs and their witnesses that Platform Science copied "core technologies," "patented inventions," and other similar statements without analysis. This is not evidence of copying and you may not use it as such and may not be used for purposes of alleged willful infringement.

Further, that one company was founded before another, or that the two companies compete in the same market, or that former employees now work for Platform Science, without more, may also not be used to establish copying for any purpose.

I.  **ARGUMENT**

Throughout this trial, Plaintiffs introduced evidence and made arguments about alleged copying that turned out to be legally irrelevant and highly prejudicial. This purported copying evidence included 2014 and 2015 emails involving Michael Bray, Jack Kennedy, and Jake Fields concerning public HOS information, federal regulations, YouTube links, economic models, and marketing information. Plaintiffs did the same thing with emails from Schneider to Treeline, which contained Schneider's data, not Omnitracs' data. Plaintiffs and their witnesses also made generic allegations that Platform Science copied things such as "core technologies" and "patented inventions," without analysis to back it up. This is not evidence of copying and has a potentially dangerous prejudicial effect. A curative instruction is warranted.

Copying does not create a wide-open door through which evidence may be entered to impugn a party. Rightfully, it is a narrow doctrine under which the evidence must be tied to the patented features. This was the message sent by Judge Bryson: "[T]he Court agrees with [the defendant] that evidence of copying that is unconnected to the commercial embodiments of the patent—such as marketing, branding, and websites—has little probative value and carries a significant risk of distracting the jury from the issue of patent infringement." *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 5633204, at *3 (D. Del. Nov. 21, 2017). The *Sonos* court quoted *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed.Cir.2001), in which the Federal Circuit stated: "evidence of copying [the patentee's product] is legally irrelevant unless the [product] is shown to be an embodiment of the claims."

A.  **2014-2015 Emails Involving Michael Bray, Jack Kennedy, and Jake Fields**

Plaintiffs introduced several exhibits related to a series of emails and attachments containing non-patented evidence sent to Platform Science employees or people who would later become Platform Science employees. *See* Exhibit Nos. 623,

859 (excerpted below), 961, 981, 1165, 1168, 1169, 1173, 1176, 1181. As an example, the following email that contains links to public documents—HOS regulations, FMCSA web site, and Omnitracs web site—was shown multiple times during the trial. This document is emblematic of Plaintiffs' approach to this case: show the jury emails conveying public information that is unrelated to their patented products, and insinuate that Platform Science conspired to copy Plaintiffs' outdated technology that the market had rejected:

> From: Jake Fields [jake@treelineinteractive.com]
> Sent: 5/13/2014 11:54:43 PM
> To: Ros Bulych [ros@lemberg.co.uk]
> CC: Scott Kopchinsky [scott@treelineinteractive.com]
> Subject: Fwd: HOS
> Attachments: FMCSA_HOS Final Rule.pdf; Untitled attachment 00010.htm; HOS_Brochure.pdf; Untitled attachment 00013.htm
>
> So this is all a bunch of information about hours of service (HOS) application. We are researching on our side but if someone is available to start reviewing to consider scope and challenges that would help this move forward faster.
>
> Seems there are some basic rules, then some more details stuff.
>
> -Jake
>
> - PDF of the current HOS regulations (commonly referred to as the Final Rule)
> - Link to the Federal Motor Carriers Safety Administration (FMCSA) website describing the rule
>   - http://www.fmcsa.dot.gov/regulations/hours-of-service
> - Link to the Omnitracs website detailing their HOS offering
>   - http://www.omnitracs.com/hours-service
>
> These guys are the leaders in this market :)
>
> - https://www.youtube.com/watch?v=0OwGsu_gN7M

The first group of exhibits (859, 961, 981, 1168, and 1181) relate to Plaintiffs' MCP product, either by reference to Plaintiffs' hours-of-service offering (e.g., Ex. 981.0002) or relationship with Schneider (e.g., Ex. 1181.0012). Because the parties do not dispute that the MCP is a non-practicing product, its reference in these documents is legally irrelevant to show copying. *See Amazon.com*, 239 F.3d at 1366.

1  The second group of exhibits (1165, 1169, and 1176) relate to business and/or financial plans, which are clearly non-technical and have no relation to the patented features. The third group of exhibits (623 and 1173) relate to Plaintiffs' acquisition of XRS, and again, have no relation to the patented features.

Plaintiffs' sole purpose for discussing these exhibits was so confuse and mislead the jury into believing Platform Science is a copyist or willful infringer. Such non-patented evidence or information is not probative of any issue in this case, including alleged willful infringement or alleged copying, and it is unfairly prejudicial as it has nothing to do with patents or patent infringement. *See Masimo Corp. v. Philips Elec. N. Am. Corp.,* 2014 WL 4652333, at *1 (D. Del. Sept. 12, 2014) ("[Plaintiff] may only present evidence of 'copying' by [defendant] if [plaintiff] is able to establish a nexus between the evidence of copying and the patents-in-suit.").

### B.  Emails from Schneider to Treeline

Plaintiffs used at least two other exhibits to insinuate Schneider improperly shared its information. *See* Ex. 840 and 1142. Yet, Plaintiffs' counsel told the jury that "this case is not about what's Schneider data and what's not": Trial Tr. 1197:16-20 ("Q. You talked a lot about what's Schneider data and what's not Schneider data. But you understand that this case is not about what's Schneider data and what's not; it's about whether Platform Science infringes Omnitracs' patents, right? A. Yes, I understand that, yes."). Ex. 840 is a document from October 2016 where Schneider is discussing "Omnitracs messages" with Treeline for the purpose of testing whether Shneider's backend could accept them. However, its undisputed that the only products used by Schneider during this timeframe were Plaintiffs' MCP product, which is a non-practicing product as discussed previously. Accordingly, there was no testimony tying this document to "embodied patented aspects" and this document is legally irrelevant. *See* Trial Tr. 601:15-21 ("[T]he overarching sort of theme here is that there was some nefarious thing going on between Schneider and Platform Science to use Omnitracs' secret, confidential, proprietary information. And again, this is not a trade

secret case. So it's really disturbing to me that that seems to be a theme here, and I think it's going over the line for your copying argument.");

Similarly, Ex. 1142 is a document from December 2016 the references "macros" that Plaintiffs claimed was tied to the '308 patent. Again, it is undisputed that the only Plaintiffs' products used by Schneider during this timeframe were Plaintiffs' non-practicing MCP products.

### C.   "Core patented technologies," "patented features," "core features"

During trial, the Court warned Plaintiffs on several occasions about making general allegations or assertions of copying without reference to or analysis of what was copied, when it was copied, and how it is the same as the claimed invention. *See, e.g.,* Trial Tr. at 389:10-390:6; 398:23-400:4; 600:23-602:6; 874:25-884:10; 398:23-400:2 ("[T]he concern the Court is having is this generic sort of inference given to the jury using expressions like 'core patent technologies' and 'key features,' neither of which are real. They are just broad statements."). Statements like these taint the jury and are unfairly prejudicial to Platform Science as it has nothing to do with patents and was never tied to the embodied patented aspects. *See* Trial Tr. at 389:11-13 ("You keep talking about 'core patented features.' That means nothing. That means nothing. I don't know what that's talking about."); 398:23-400:2 ("[T]he concern the Court is having is this generic sort of inference given to the jury using expressions like 'core patent technologies' and 'key features,' neither of which are real. They are just broad statements."); 400:15-18 ("But I am just not comfortable with this sort of generic, 'Well, they are the core features, the pioneered features.' That's not telling the jury anything except creating an impression that you own any sort of telematics procedures.").

The Court made clear when deciding Platform Science's MIL No. 2 and MIL No. 4 that Plaintiffs must tie any evidence of copying to the patented features. PTC Tr. 58:16-59:1; 63:7-20; *see also* 4/25/2022 Mot. to Dismiss Hearing Tr. at 7:10-18 ("I think the facts that they have alleged, if the Court must accept them as I must at

this point in time as true, are sufficient to plausibly allege that the infringement resulted from knowledge of the patents and some intent to copy that technology. That may not play out. And if, in fact, your allegations ultimately show that there was no good faith factual basis for it, that's something the Court may consider down the road, but I'm not going to strike the willfulness charge and so that part of the motion is denied.").

The case law makes clear that Plaintiff's burden to show copying is significant: not only does it have to demonstrate access, analysis, and similarity between the Accused Products and Plaintiffs' product, but Plaintiffs must also establish that allegedly copied product embodied the claimed inventions of which Defendant is accused of infringing. *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015) ("[T]here is significant prejudice associated with this evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products infringe the patents-in-suit."); *Amazon.com*, 239 F.3d at 1366 (Fed. Cir. 2001); *Sonos*, 2017 WL 5633204, at *3. Plaintiffs have failed to do so here. Their sole purpose for discussing this non-patented evidence was to confuse and mislead the jury into believing Platform Science is a copyist or willful infringer.

Accordingly, Platform Science hereby files the accompanying curative jury instruction to avoid unfair prejudice to Platform Science.

| | | |
|---|---|---|
| 1 | Dated: July 18, 2024 | FISH & RICHARDSON P.C. |
| 2 | | |
| 3 | | By: /s/ Seth M. Sproul |
| 4 | | Christopher S. Marchese (SBN 170239) |
| | | marchese@fr.com |
| 5 | | Jason W. Wolff (SBN 215819) |
| | | wolff@fr.com |
| 6 | | Seth M. Sproul (SBN 217711) |
| | | sproul@fr.com |
| 7 | | John W. Thornburgh (SBN 154627) |
| | | thornburgh@fr.com |
| 8 | | Tim Rawson (SBN 304755) |
| 9 | | rawson@fr.com |
| | | Cheryl Wang (SBN 323305) |
| 10 | | cwang@fr.com |
| | | Jeff Burton (SBN 328305) |
| 11 | | jburton@fr.com |
| 12 | | Lucien Wang (SBN 326534) |
| | | lwang@fr.com |
| 13 | | Tyler R. Train (SBN 318998) |
| | | Train@fr.com |
| 14 | | FISH & RICHARDSON P.C. |
| 15 | | 12860 El Camino Real, Suite 400 |
| | | San Diego, CA 92130 |
| 16 | | Tel: (858) 678-5070 |
| 17 | | Brent P. Ray (*Admitted Pro Hac Vice*) |
| 18 | | bray@kslaw.com |
| | | Nicholas Sieger *(Admitted Pro Hac Vice)* |
| 19 | | nsieger@kslaw.com |
| 20 | | KING & SPALDING LLP |
| 21 | | 110 N. Wacker Drive, Suite 3800 |
| | | Chicago, IL 60606 |
| 22 | | Tel: (312) 764-6925 |
| 23 | | Angela Tarasi (*Admitted Pro Hac Vice*) |
| 24 | | atarasi@kslaw.com |
| | | KING & SPALDING LLP |
| 25 | | 1401 Lawrence Street, Suite 1900 |
| | | Denver, CO 80202 |
| 26 | | Tel: (720) 535-2300 / Fax: (720) 535-2400 |
| 27 | | |
| 28 | | Patrick Lafferty (*Admitted Pro Hac Vice)* |
| | | King & SPALDING LLP |

7
DEFENDANT'S PROPOSED CURATIVE JURY INSTRUCTIONS
Case No. 3:20-cv-0958-CAB-DDL

1   1700 Pennsylvania Avenue, NW
    Suite 900
2   Washington, DC 20006
    Tel: (202) 626-9603
3
4   Attorneys for Defendant PLATFORM
    SCIENCE, INC.
5