UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNITRACS, LLC AND XRS CORPORATION,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>PLATFORM SCIENCE, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 20-cv-958-CAB-DDL<br><br>**ORDER ON PLAINTIFF'S MOTION FOR RENEWED JMOL OR NEW TRIAL**<br><br>**[Doc. No. 605]** |

## I.  Background

At trial, Plaintiffs Omnitracs, LLC and XRS Corporation (jointly Omnitracs) alleged that defendant Platform Science, Inc. infringed various claims of four patents in this litigation: U.S. Patent No. 6,925,308 claims 1 and 5; U.S. Patent No. 9,262,934 claim 23; U.S. Patent No. 10,255,575 claims 1 and 11; and U.S. Patent No. 8,626,568 claims 11 and 23. [Doc. No. 513.][1]  Before the case went to the jury, Omnitracs moved for Judgment as a Matter of Law (JMOL), pursuant to Fed.R.Civ.P. 50(a), on its allegations of direct and indirect infringement of each of the asserted claims, a finding of willful infringement of each asserted claim, validity of the asserted claims,[2] and its claims for lost profits and a reasonable royalty. [Doc. No. 557.]

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.
[2] Platform Science withdrew its affirmative defenses of invalidity as to the '934, '575, and '568 patents on the first day of trial.  [Doc. No. 571, Trial Transcript, at 4-5.] Only the validity of the '308 patent was at issue, thereby mooting Omnitracs' JMOL motion as to the abandoned affirmative defenses.

The Court denied Omnitracs' motions for a finding of infringement as to the asserted claims of the '308 patent, the '934 patent and the '575 patent, for a finding of validity of the '308 patent, for a finding of willful infringement, and on the claims for damages. Those issues were all sent to the jury. The Court however entered Platform Science's motion for JMOL [Doc. No. 555] on the asserted claims of the '568 patent and removed that patent from the case.

The jury returned a verdict finding willful infringement of claims 1 and 5 of the '308 patent and non-infringement of the claims of the '934 patent and the '575 patent. The jury found that Platform Science did not establish it claims of invalidity of the '308 patent. Finally, the jury awarded Omnitracs lost profits and a reasonable royalty for the infringement of the '308 patent. [Doc. No. 564.]

## II. Omnitracs' Renewed Motion for JMOL and for New Trial

Omnitracs now moves for renewed JMOL under Fed.R.Civ.P. 50(b), or in the alternative a new trial, under Fed.R.Civ.P. 59. [Doc. No. 605.]

Omnitracs' motion for JMOL seeks to set aside the jury's verdicts of non-infringement of the asserted claims of the '934 patent and the asserted claims of '575 patent. Omnitracs also seeks a new trial, pursuant to Fed.R.Civ.P. 59(1)(a), on the '568 patent and a new trial on damages.

### A. Legal Standard for JMOL

At the close of evidence in this case, Omnitracs moved pursuant to Fed.R.Civ.P. 50(a) for JMOL on its claim of infringement of the asserted claims of the '934 and '575 patents. [Doc. No. 557.] The Court did not grant the motion and submitted these claims to the jury. The jury found that Omnitracs did not prove infringement of these two patents. [Doc. No. 564.]

Omnitracs now renews its motion for JMOL pursuant to Fed.R.Civ.P. 50(b). A renewed motion for JMOL is properly granted "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Escriba v. Foster Poultry Farms, Inc.,* 743

F.3d 1236, 1242 (9th Cir. 2014), *quoting Pavao v. Pagay,* 307 F.3d 915, 918 (9th Cir. 2002). A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).

> Reviewing a renewed motion for JMOL requires scrutiny of the entire evidentiary record, but the court must not weigh the evidence, and instead should simply ask whether the nonmoving party has presented sufficient evidence to support the jury's conclusion. In so doing, the court must draw all reasonable inferences in favor of the nonmoving party and disregard all evidence favorable to the moving party that the jury is not required to believe.

*Escriba*, 743 F.3d at 1242-43 (internal cites omitted.)

**B. Sufficient Evidence Supports the Jury's Verdicts of Noninfringement.**

Omnitracs asserted dependent claim 23[3] of the '934 patent which included the following limitation:

> the data acquisition device is in communication with an engine control module of the vehicle and **automatically adapts** to a detected type of communication protocol employed by the engine control module.

[Doc. No. 1-2, at 43, Col. 41:1-5, emphasis added.]

Omnitracs also asserted independent claim 1 and dependent claim 11 of the '575 patent, which included the following limitation:

> An electronic onboard recorder mounted to a vehicle and comprising:
> control circuitry to detect one or more protocols and to **automatically adapt** to the detected one or more protocols to communicate with an engine control module of the vehicle.

[Doc. No. 1-2, at 108, Col. 22:31-36, emphasis added.]

---

[3] Claim 23 is dependent on independent Claim 1 of the '934 patent.

The Court construed "automatically" which modifies "adapt" in these claims as "a self-acting response" to the identification of the particular protocol. [Doc. No. 295, at 3-4.]

In a vehicle, the Engine Control Module (ECM) collects data from the vehicle such as speed, rpm, odometer readings. [Doc. No. 581, Trial Transcript ("TT"), at 87.] The electronic onboard recorder (EOBR) of the '575's claim 1, or data acquisition device of the '934's claim 23, communicates with the ECM to obtain that vehicle data. ECMs however communicate in more than one language or protocol. [Doc. No. 596, TT, at 72; Doc. No. 675, TT, at 66.] For the EOBR to obtain data from the ECM it must be able to read the language or protocol the ECM uses. This required providing an EOBR that can read the particular protocol used by the ECM. [Doc. No. 581, TT, at 89.]

Christopher Sekula, an Omnitracs engineer and inventor on the '934 and '575 patents, testified that the patents introduced a feature for automatic adaptation to ECM communication protocols. [Id., at 88.] The claimed EOBR detects the protocol of the vehicle's ECM and automatically adapts to that protocol thereby eliminating the need to stock different types of EOBRs to communicate with different ECM protocols. "You could plug into Truck A, be able to read the data, or you can take the same box without reprogramming it and put it into Truck B and read the data from that other protocol." [Id., at 89.]

Omnitracs identified the Connected Vehicle Device (CVD) of Platform Science's telematics system as the EOBR component and contended that the CVD automatically adapts to whatever protocol is detected when connected to an ECM, thereby meeting the '934 and '575 claim limitation.

It was undisputed that the CVD communicates with the ECM of the vehicle in which it is installed. Scott Kopchinsky, Vice President of Engineering for Platform Science, [Doc. No. 596, TT, at 41], however testified that the CVD does not automatically adapt to a detected ECM protocol. [Id., at 70.] He testified that each CVD is manually configured to read the protocol of the kind of truck it is going into. [Id.] He identified a machine

1  called a "provisioning rig" that manually configures the devices before installation. [Id.,
2  at 71; Ex. 2802.] Customers provide vehicle identification numbers (VIN) and Platform
3  Science prepares the CVDs depending on the kind of truck associated with the VIN so the
4  CVD matches the vehicle's ECM protocol. [Id.]

5      Mr. Kopchinsky testified that approximately 99 percent of the ECMs in trucks using
6  their system employ the J1939 protocol, so that is the default protocol configuration for
7  Platform Science's CVDs. Less than one percent of the vehicles using their system have
8  ECM's using OBD-II or J1708 protocols.  Depending on a customer's need, Platform
9  Science configures the CVD to communicate with the OBD-II or J1708 protocol, instead
10 of the default J1939 protocol. [Id., at 72.] A CVD configured in the non-default protocol,
11 i.e., OBD-II or J1708, is identified with a physical sticker on the CVD indicating its
12 configuration to assist installers. [Id., at 78-79; Ex. 2986; Ex. 2984.]

13     Mr. Kopchinsky further testified that a CVD configured for a specific protocol if
14 installed in a vehicle with an ECM communicating in another protocol will not work. [Doc.
15 No. 596, TT, at 71.] The CVDs do not detect and automatically adapt to the ECM's
16 protocol, and he described it as a "pain point" for Platform Science. [Id., at 77.] If a CVD
17 is installed with a protocol that does not match the ECM protocol, it requires a customer
18 support call to push a manual configuration to correct the problem. [Id.] Mr. Kopchinsky
19 supported his testimony with customer support records that illustrated instances when a
20 CVD configured to a protocol that did not correspond to the ECM of the vehicle failed.
21 The CVD was reconfigured manually to match the ECM protocol. [Id., at 74-77; Ex. 3090.]

22     Platform Science also offered expert testimony of Dr. William Michalson on this
23 infringement contention.  Dr. Michalson testified that the Platform Science CVD cannot
24 be installed into any vehicle and automatically communicate with that vehicle's ECM if
25 the protocols, or languages, of the CVD and ECM do not match. [Doc. No. 576, TT, at 66-
26 69.] The CVD will not automatically adapt to the ECM's protocol. [Id. at 67.]

27
28

This testimony and documentary evidence was sufficient to support the jury's verdict that the Platform Science CVD does not operate in a manner that meets the "automatically adapt" limitation of the '934 and '575 patents.

Omnitracs argues that this evidence does not comport with the Court's construction of the claim limitation and therefore cannot support a verdict of non-infringement. The Court disagrees. At the claim construction hearings, the plaintiffs agreed with the Court's construction that the EOBR of the claim upon detecting whatever ECM protocol the vehicle used would self-adapt to the detected protocol. [Doc. No. 188 at 86-87; and Doc. No. 298 at 11-12.]

The claims require that the EOBR detect the communication protocol of the ECM and that the EOBR automatically, i.e., a self-acting response, adapt to the detected protocol. There was more than sufficient evidence that the CVD of the Platform Science system does not automatically adapt itself to a detected ECM protocol. If the CVD programmed protocol does not match the ECM's protocol, the CVD will not self-adapt to the ECM's different protocol; it will not communicate.

Omnitracs' renewed motion for JMOL on its claims of infringement of the '934 and '575 patents is therefore DENIED.

**C. Motion for New Trial on the '528 Patent and '308 Patent**

Omnitracs moves for a new trial pursuant to Fed.R.Civ.P. 59 on the basis that the Court's construction of two claim limitations of the '528 patent during trial and the denial of Omnitracs' request to revive an abandoned claim was unfair. Further Omnitracs contends that the Court erroneously excluded certain expert testimony against the weight of the evidence on the '308 patent.

### 1. New Trial on '528 Patent

Omnitracs elected to proceed to trial on assertions of direct and indirect infringement[4] of only two claims of the '568 patent, dependent claim 11 and independent claim 23, as reflected in the Pretrial Order. [Doc. No. 513, at 2.] This was Omnitracs' strategic decision.

### a. Claims 10 and 11 of the '528 Patent

Omnitracs was not precluded from pursuing independent claim 10 of the '568 patent, from which claim 11 depends; however, Omnitracs decided not to do so.[5] Omnitracs identified in the Pretrial Order the following products, alone or in combination, as the products that it asserted infringed claim 11 (the Accused Products):

- Platform Science's Connected Vehicle Platform software, including Platform Core, Mobile Core;
- Platform Science's Virtual Vehicle Fleet and Virtual Vehicle Edge features;
- Platform Science's Hours of Serve application software;
- Platform Science's Connected Vehicle Device (CVD);
- **Platform Science's in-vehicle mobile display device (tablet)**

[Id., at 4, emphasis added.] There was no identification of cellular or satellite telephones being provided by Platform Science or being used by third parties with the Platform Science system.

Independent claim 10 requires that the system have a portable wireless display unit. [Doc. No. 1-2, at 83, Col. 23:13-29.] The specification describes various devices that can constitute the portable wireless display unit, or mobile communications device, that could be used in the claimed system: "cellular telephones, satellite telephones, portable

---

[4] Omnitracs only advanced allegations of literal infringement. There was no doctrine of equivalents analysis on any of the asserted patent claims.

[5] The parties were given a time allotment for the presentation of their cases. By choosing to pursue dependent claim 11, Omnitracs still had to put on all the evidence of infringement of independent claim 10, and then the additional evidence of the limitation in claim 11. Consequently, there was no time issue that deterred Omnitracs from pursuing independent claim 10 alone or in combination with dependent claim 11; it was just Omnitracs' election not to.

computers, tablet computers, personal digital assistants (PDAs), or another mobile computing device that is programmed to wirelessly communicate with one or more of the electronic onboard recorder units." [Id., at 75, Col. 7:20-26.]

Independent claim 10 broadly claims a "portable wireless display unit" and in accordance with the specification such units may include cellular telephones, satellite telephones, portable computers, tablets, and PDAs. Dependent claim 11 however, the asserted claim in the case, specifies that "the portable wireless display unit comprises a cellular or satellite phone device," thereby limiting the type of hardware component of the claimed system. [Id., Col. 23:38-43.]

At trial Omnitracs offered the expert testimony of Dr. Kevin Almeroth to establish infringement of the '568 patent. Dr. Almeroth's direct testimony identified a tablet as a portable wireless display unit covered by the claim. [Doc. No. 583, TT, at 70-71.] His infringement analysis was based on Platform Science providing a tablet as the portable wireless display unit of the system. This is in accord with the Pretrial Order in which Omnitracs only identified a tablet as the Platform Science in-vehicle mobile display device. [Doc. No. 513, at 4, highlighted above.] There was no disclosure in the Pretrial Order or in the initial direct testimony of Dr. Almeroth that a cellular or satellite telephone was supplied by Platform Science. During a jury break, the Court advised Omnitracs that the testimony at that point did not appear sufficient to demonstrate direct infringement of claim 11. [Doc. No. 583, TT, at 72.]

Initially in response to this deficiency of evidence, Omnitracs argued that the limitation "cellular or satellite phone device" of claim 11 should be construed as "a cellular device" or "satellite phone device" and argued that a tablet is a cellular device thereby meeting the claim limitation. [Id., at 72-73.] The Court rejected this proposed construction of claim 11 as contrary to the specification or how a person of ordinary skill at the time the

patent was filed would have understood the phrase at issue.[6] Omnitracs was given the opportunity to present evidence that Platform Science provided a cellular or satellite phone device to its customers as part of its system. It did not do so.[7]

Alternatively, Omnitracs argued that the Platform Science system supports the use of a cellular phone as the mobile communication device by its customers, and therefore Platform Science indirectly infringes claim 11. Dr. Almeroth testified that, based on two Platform Science non-technical documents, he understood a customer could use any Android device, such as a smart phone, to complete the system and establish direct infringement. [Doc. No. 574, TT, at 5-8, Exs. 202 and 157.] He did not however provide any evidence of such cellular phone use by a third party to complete the Platform Science system, nor did he perform any analysis himself using a cellular phone as the accused system's mobile communication device.[8] "Hypothetical instances of direct infringement are insufficient to establish indirect infringement." *Acco Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007). Without evidence of direct infringement by Platform Science or a third party, the Court concluded no reasonable jury could find Platform Science liable for infringement of claim 11 and granted Platform Science's

---

[6] The Court also rejects Omnitracs' argument that it was improper for the Court to construe the claim limitation during trial *sua sponte*. The issue arose when Omnitracs' expert attempted to testify to a claim construction for the limitation "cellular or satellite phone device" as a "cellular device" or a "satellite phone device" to support his opinion that a tablet with cellular communication capability is a cellular device meeting the claim limitation. The Court had previously rejected this proposed reading of the claim language and therefore provided a construction of the limitation. [Doc. No. 583, TT, at 121-124; Doc. No. 575, TT, at 3-4.] Claim construction is for the court and the court has considerable latitude in determining when to resolve issues of claim construction, particularly when an expert is attempting to offer a disputed construction to the jury. *Cyto Logix Corp. v. Ventana Med. Sys. Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005).

[7] Omnitracs failed to demonstrate, in response to Platform Science's objection, that Dr. Almeroth offered an opinion in his Rule 26 expert report that Platform Science provided anything other than tablets with its system.

[8] Omnitracs also failed to demonstrate, in response to Platform Science's objection, that Dr. Almeroth offered an opinion in his Rule 26 expert report that any customers of Platform Science were using the system with devices other than tablets.

motion for JMOL of non-infringement of claim 11 of the '568 patent. [Doc. No. 599, TT, at 13-16.]

Omnitracs then requested to be able to revive independent claim 10 with its broader limitation for the "portable wireless display unit." The Court noted that Omnitracs did not assert claim 10 in the Pretrial Order and found it would be prejudicial to Platform Science to permit Omnitracs to amend its allegations at that late date in the trial. [Doc. No. 574, TT, at 3-4; Doc. No. 575, TT, at 3-4.] The request was denied.

Omnitracs contends it was prejudiced by the Court's unanticipated construction of claim 11 and therefore should have had an opportunity to reinstate claim 10. Having been denied that request at trial, Omnitracs now moves pursuant to Fed.R.Civ.P. 59 for a new trial on infringement of the '568 patent.

With regard to the claim construction during trial, although the Court considered the plain language of the limitation at issue unambiguous, Omnitracs was given an opportunity to be heard on its proposed construction. The Court found Omnitracs' proposed construction was not supported by the plain language of the claim or the specification. Prior to trial, Omnitracs had every opportunity to proceed on claim 10 at trial and elected to abandon that claim. Omnitracs could have developed a record for trial that at least one Platform Science customer operated the accused system using a cellular phone but only focused on the tablet provided by Platform Science with its system.

The authority to grant a new trial is almost entirely an exercise of discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.* 449 U.S. 33, 36 (1980). Omnitracs made litigation decisions that resulted in judgment as a matter of law for Platform Science on the allegation of infringement of claim 11 of the '568 patent. Omnitracs may regret those choices, but that does not constitute grounds for giving Omnitracs an opportunity to revive and reassert the claim it voluntarily abandoned. The motion for new trial is DENIED.

### b. Claim 23 of the '528 Patent

Omnitracs also asserted claim 23 of the '528 patent. Claim 23 is a method claim for generating and providing a driver summary electronic report. [Doc. No. 1-2, at Col 25:18 to Col. 26:5.] The claimed method comprises:

> wirelessly receiving, at a portable wireless display unit, vehicle usage information from an electronic onboard recorder unit mounted to a vehicle and having a wired connection to the vehicle;
>
> generating a driver summary electronic report at the portable wireless display unit in response to wirelessly receiving the vehicle usage information from the electronic onboard recorder unit mounted to the vehicle, the driver summary electronic report including identification information for a driver and hours of service information for a driver;
>
> storing the driver summary electronic report in a computer-readable memory module of the portable wireless display unit, the portable wireless display unit being configured to wirelessly communicate with the electronic onboard recorder unit mounted to the vehicle;
>
> receiving user input on the portable wireless display unit indicative of a request to export the driver summary electronic report from the electronic onboard record unit mounted to the vehicle; and
>
> wirelessly transferring the driver summary electronic report from the portable wireless display unit to the electronic onboard recorder unit mounted to the vehicle for exporting the driver summary electronic report via a removable data cable to a remote computer device.

The final step in the method requires exporting the driver summary report from the electronic onboard recorder unit to a remote computer device via a removable data cable. [Id. at Col 26:2-5.] The parties did not seek a construction of "via a removable data cable" prior to trial.

Dr. Almeroth testified for Omnitracs that the Platform Science system performs this final step of the method – exporting a driver summary report from the CVD (i.e., the EOBR) to a remote computer wirelessly by an antenna attached to the CVD. He opined

1  that the antenna that transmits the report has a removable cable attaching it to the CVD,
2  thereby meeting the claim limitation. [Doc. No. 574, TT, at 13.]

3  Dr. Michalson testified for Platform Science that the all-in-one antenna used in the
4  Platform Science system, while it has a cable attaching it to the CVD, is not a removable
5  data cable connecting to the remote computer device as required by the claim language.
6  He opined that a person of skill in the art at the time the patent was filed would not consider
7  a transmission by wireless radio signal to be exporting data via a removable data cable as
8  required by the claim. [Doc. No. 576, TT, at 63-64; Doc. No. 598, TT, at 49-53.]

9  The Court again became concerned with experts construing claims from the stand.
10 [Id., at 54-55.] Dr. Almeroth contended that exporting the report from the CVD to a remote
11 computer "via a data cable" included wireless transmission by an antenna as long as that
12 antenna is attached by a removable cable to the CVD. Dr. Michalson contended that the
13 plain language of the claim requires a direct connection between the CVD and remote
14 computer by a data cable. Omnitracs argued it was a factual issue for the jury as to whether
15 exporting data by an antenna met the claim limitation; however, the Court considered it a
16 matter of claim construction, and requested the parties brief the construction of "via a data
17 cable." [Id., at 70.]

18 The parties submitted briefs with their proposed constructions of "via a removable
19 data cable." [Doc. Nos. 550, 551.] The Court heard argument [Doc. No. 599, TT, at 4-13]
20 and having considered the submissions of the parties, the arguments, and based on the plain
21 language of the claim and the specification, the Court construed the claim "via a removable
22 data cable to a remote computer device" as a hard wired direct connection between the
23 EOBR and the remote device, not a connection from the EOBR to some other device that
24 will wirelessly transmit the data. [Id., at 13.] Based on that construction, the Court
25 concluded that no reasonable jury could find Platform Science liable for infringement of
26 claim 23 and granted Platform Science's motion for JMOL of non-infringement of claim
27 23 of the '568 patent. [Id.]
28

Claim construction is for the court and it is error to allow experts to offer competing constructions and have the jury decide which is correct. In this instance the facts were not in dispute as to how the Platform Science system performs the exporting of data.[9] Whether the accused system practiced the claimed method was disputed based on the interpretation of the claim limitation. Omnitracs and Platform Science were both given the opportunity to brief and argue their proposed constructions. The Court adopted Platform Science's construction. This did not make the trial unfair for Omnitracs such that this Court should grant a new trial on the infringement of claim 23 of the '598 patent. The motion for new trial is DENIED.

### 2. Motion for New Trial on '308 Patent

At trial Omnitracs alleged that a non-party Schneider, a national trucking company, uses a software program to manage workflow with its drivers that infringes the '308 patent. Schneider is a customer of Platform Science and licenses components of the Platform Science telematics system on which Schneider operates its workflow software program. Omnitracs sought as part of its damages for infringement of the '308 patent to include as indirect infringement[10] Platform Science's sales of its system to Schneider based on its assertion that Schneider directly infringed the '308 patent.

Platform Science challenged the introduction of this theory of indirect infringement for a lack of foundation. There was testimony that Schneider, a former customer of

---

[9] The Court declines to reach Platform Science's alternate contention that it does not practice the claimed method because the data transmitted from the portable wireless display unit (i.e., tablet) to the CVD does not constitute a "driver summary electronic report" as construed by the Court but is a collection of data points ("ERODS") from which the summary can be constructed in the cloud. [Doc. No. 614, at 15-16.]

[10] There was a lack of clarity as to which theory of indirect infringement Omnitracs was asserting. The Pretrial order does not state whether Omnitracs alleges contributory infringement based on the provision of something that would otherwise have no substantially non-infringing use or inducing Schneider's alleged direct infringement of the '308 patent by supporting Schneider's workflow application. Having excluded the opinion of direct infringement the Court did not seek clarification of the actual indirect infringement theory Omnitracs was intending to offer to the jury and what Platform Science sales specifically related to the induced or contributory infringement.

Omnitracs, collaborated with Platform Science's predecessor Treeline in 2015 to develop, among other things, a new software program to replace the Omnitracs workflow program. James Brewster, a Schneider representative, testified that in about 2018 Schneider took control of the development of certain software applications for its "productivity suite" that included the workflow application. Mr. Brewster testified that Schneider's productivity suite is owned, run, defined, and programmed by Schneider and Platform Science is not involved in it. [Doc. No. 607-2, at 6-7.] Mr. Brewster testified that Schneider's workflow application had been "transformed and is quite different from a technology standpoint compared to what it was, you know, obviously seven years ago." [Id., at 7.]

Omnitracs' expert Dr. Almeroth opined that the Schneider workflow application infringed the '308 patent. The Court found the opinion had insufficient foundation to go to the jury as there was no analysis or evidence of how the Schneider workflow application actually operates compared to the claims of the patent. The opinion was largely based on the evidence that Schneider had initially collaborated with Treeline to develop an application and that the Schneider application provides driver messaging functions that Dr. Almeroth concluded were similar to Platform Science's application. Dr. Almeroth did not provide an element by element comparison of the Schneider software program to the claims of the patent. *See Amhil Enterprises LTD v. Wawa, Inc.,* 81 F.3d 1554, 1562 (Fed.Cir. 1996) ("Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly."); *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005)("To prove infringement a patentee must show that an accused product or method meets every claim limitation. …"). Comparing the functions of Schneider program to the functions of the Platform Science program and opining that if the Platform Science application infringes the '308 patent, the Schneider program with similar functionality must also infringe, was not a sufficient basis to present this opinion to the jury.

After a lengthy hearing on Platform Science's renewed motion at trial to exclude Omnitracs from offering an opinion to the jury that Schneider infringes the '308 patent, the

Court excluded Dr. Almeroth from providing an opinion that Schneider's workflow application infringed the '308 patent. [Doc. No. 574, TT, at 51-71.] Having excluded Omnitracs from offering an opinion of direct infringement, the Court therefore excluded Omnitracs' allegation of indirect infringement of the '308 patent and its claims for damages from sales by Platform Science to Schneider.

Omnitracs asserts that the Court erroneously excluded Dr. Almeroth's opinion and should have allowed the testimony and let the jury determine if Omnitracs proved that Schneider infringed the '308 patent; which therefore entitled Omnitracs to damages from Platform Science for indirect infringement. The Court disagrees. Dr. Almeroth's opinions were conclusory and not supported by an element by element analysis of the actual functioning of the Schneider application. The motion for new trial on this issue is DENIED.

### III.  Conclusion

For the reasons set forth above, Omnitracs' motion for renewed JMOL or New Trial is DENIED in its entirety.

**IT IS SO ORDERED.**

Dated:  December 23, 2024

Hon. Cathy Ann Bencivengo
United States District Judge